# EXHIBIT A

Case 1:12-cv-04686-WFK-SMA Document 1-2 Filed 09/19/12 Page 2 of 217 PageID #: 12

Philip R. Berwish, Esq.
*Of Counsel*
The Resolution Law Group, P.C.
100 Park Avenue - Suite 1600
New York, NY 10017
Tel: 866-553-0747
Fax: 866-513-6306
PhilipB@TheResolutionLawGroup.com

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF KINGS

Leela ABRAHAM, Jeffrey ACKER, Judette ADAMS,  :
Tim ADOLPH, Henry AINSWORTH, Arnold ALDOS,  :
Coreen ALDOSA, Zaheer ALI, Steven ALLAFI,  :
Kenneth ALONSO, Sophia ALSTON, Alma AMES,  :
Alan ANDERSON, Beryl ANDERSON,  :
Claude ANDERSON, Janet ANDERSON,  :
Peter ANTHONY, Robert ASHBY, Lawrence ATUANA,  :      Index No. 501015/2012
Morton AVIGDOR, Daniel BABCOCK,  :
Ronald BARBER, Curtis BARCLIFF,  :
Sabrina L. BARNES, Edwin BARRERA,  :      Date Purchased:
Brian BARSUMIAN, Cathy BAUER, Marta BAYRON,  :
Michael D. BEAN, Camille BELL, JOSEPH BELLINI,  :
Walter BENN, Matt BERNTHAL, Thomas J. BESHKE,  :      **FIRST AMENDED**
Daniel BIGGS, Terry Bishop WILLIAMS,  :      **COMPLAINT**
Donald BLACK, Tchad BLAIR, Millard BLAKE,  :
Marcia BOBO, Martin BOWMAN, Edwin BOYD,  :
Catherine BRADFORD, John BRECKER,  :      The basis of this venue is:
Gabriel BUCUR, Brigitte BROWN, Soak Lee BROWN,  :      NY CPLR §301, and § 509
Tadusz BUDAK, B. CALICO-HICKY, Rose CALISE,  :
Christopher CALLAHAN, Leonard CALVARUSO,  :
Solomon CAMPBELL, Young CANTAVE,  :      *PLAINTIFFS DEMAND*
Darren CARBONE, David CHAMPEAU,  :      *TRIAL BY JURY ON ALL*
Harry CHANDLER, Frederick CHAPMAN III,  :      *COUNTS SO TRIABLE*
Betty CHARLOCK, Gloria CHARLTON,  :
John CHRISTADORE, Shirleen CHURCH,  :
Brian CIAMBRA, Richard CICCOTTO, Donald CILA,  :
Diane CITRONE, Jerry CLARK,  :
Crystal and Henry CLARKE, Donald CLOUSER,  :
Floyd CODRINGTON, June CODRINGTON-KOLE,  :
Deborah COLEMAN, Gary COLLINS,  :
Marcus COLLINS, Aja COOKE, Wayne COOKE,  :
Cristobal CORREA JR., Richard CORRIGAN,  :
Nichelle CROMWELL, Dominic D'AMICO,  :
Jerry DARDEN, Laverne DARMANIE, Sam DAVIS,  :
Christopher DAVIS, Delpilar DEBROSSE,  :
David DEJONG, Daniel DELISA JR.,  :

Melissa DELOACH, David DELUCA, Helen DEMANN,   :
Robert DEMARY, Peter DEMPSEY, Mike DIFFER,   :
Donavon DILLING, Richard DIMAS, John and Linda   :
DISTEFANO, Gerald DOMBECKI, Dawn DORAN,   :
Joseph DORISCA, Nicholas DOURA, Robert DUNCAN,   :
Diane DUNN,  Elizabeth DURFEE, Michael EARLY,   :
Allen ECKER, Vicki  EDWARDS, Kimberly ENGLISH,   :
Marvin ERSKINE, Edwin ESCAMILLA,   :
Stephanie ESTES, Thomas FADDEN, Philip FALZONE,   :
Loretta FARINO, Edward FASULO JR., Robert FEDUS,   :
Mesfin FELLEKE, Karin FINNEGAN,   :
Richard FINNEGAN, Joshua FISHER, Carlos FONTES,   :
Craig FOSTER, Doris FOSTER, Jessica FOTI,   :
Joseph FOX, Norlene FUENTES, Stephen FURMAN,   :
Daniel GARCIA, Santos GARCIA,  Davis GASPAR,   :
Azeez GBEDE, Anthony GIACALONE,   :
Donald GILMORE, Anthony GIUFFRE,   :
Juan Carlos GODINEZ, Frank GORSUCH,   :
Lydia GONZALEZ, Raul GONZALEZ,   :
Raymond GONZALEZ, Sylvia GONZALEZ,   :
Shelby GREEN, Rosalina GRIJALVA,   :
Nadine GUIENDON,  Catherine Clark GUMBS,   :
Rodney HAMPTON,  Dan HARRISON,   :
Geraldine HAWKINS, Betty HAWTHORNE,   :
Scott HEMBROFF, Christopher HOCKENSMITH,   :
Sandra HODGE, Barry HOLIHAN,  Jyrell HOLLAND,   :
Victor HOPPER, Cecil HOSKINSON,   :
Adriaenne HOWARD, Caroline HOWARD,   :
David HUBBARD II, Linda HUFFMAN,   :
Dawn HUMPHRIES, Deborah and William HUNTER,   :
Anna HUNTER-MILLER, Coleen HUTCHISON,   :
Miles IYAMU, Jemmie JEMISON, Danielle JODISON,   :
Richard JOHNSON, Felicia JOHNSON, Dale JOEL,   :
Ernest JOHNSON, Angela JONES, Millicent JONES,   :
Eric JOSEY, Uma JOTHY, Sewnarain KALLICA,   :
Jack KELLAM, Debra KELLEY, Rachel KEYSER,   :
Masele KIBASSA, George KUHLOW, Anna KULA,   :
James KUNKEL, Justin KUPIEC, Douglas LACEY,   :
George LACHER, Dominick LAGANA, Jeffery LANE,   :
Michael LANE, Sonia LAVALLE, Charles LAZO,   :
Jeffrey LEE, Laurence LEGALL, Gregg LEHMANN,   :
Edward LEBLOND, Lisa LEWIS, Jeffrey LEWIS,   :
John LEWIS, William LEWIS, Michael LICATA,   :
Alex LITVINOV, Montell LOCEY,   :
Belinda LYLES-OCKIMEY, Norbert MACIOROWSKI,   :
Kevin MACKEY, Mark MAGUIRE, Michael MAIONE,   :

Stephen MACHOLZ, Nicholas MANCINO,                        :
Jason MANGINE, David MANN, Donald MARTIN,                 :
Michael MARTIN, JR., John MARTINS,                        :
Dr. Roger MASON, Melanie MASSEY,                          :
Robert MASSIMI, William MATCHLER,                         :
Jack MATHES, Barry MAXSON, Carl MAZZELLA,                 :
Eva MCCARRON, Carlton MCCLEASE, Jesse MCLIN,              :
James MCGURN, Jessica MCKEEVER,                           :
Anthony MCKINNEY, Cheryl MCMILLAN,                        :
Dan MEDEIROS, Bernadette MELE, Robert MELIA,              :
Jimmy MENUEL, Miguel MERCADO,                             :
Patricia MEZZACAPPA, Raymon MILLER,                       :
Robert MILLER, Terrance MILLER,                           :
Gary MILLSTEIN, Elyse MILLS FLETCHER,                     :
Katherine MILONAS, Jose MIRASOL,                          :
Robert MIROWSKI, Louise MITCHELL,                         :
Preston MONAHAN, Jose MONTANEZ, Shea MORRIS, :
Richard MURPHY, John MUSCAT, Dawn MUTH,                   :
Daniel NAJJAR, Dominic NAPOLI, Kristene NEAL,             :
Jaquer NETO, Gail NEUBE, Richard NEUHEISEL,               :
Timothy NEUMANN, Hoa NGUYEN,                              :
Hoang NGUYEN, Rose NOAH, Michael NOVITCH,                 :
Elaine NURSE, Charlotte O'BRIEN,                          :
Alexander OBUOBISA, Miguel OCHOA,                         :
Samuel OHENE, Marsha OSBORN, James OWUSU,                 :
Magaly Cruz OZAWA, Lisa PALLADINO,                        :
Eithne PASALIC, Robert PAWLIK, Arnetta PAYLINGS, :
Darryl PECK, Terry PETEETE, Alvin PETERS,                 :
Thi PETERSON, Melanie PETTERSON,                          :
John PETZINGER, Kevin PFAU,                               :
Souphahn PHONXANASINH,                                    :
Louis and JoAnne PICCONE, Daryl PIESTO,                   :
Nancy PIROEFF, Jeannie POGI, Marcel POLIQUIN,             :
Marianne POLLARD-BOWERS, Linda POWELL,                    :
Janet POWELL, Kimberly QUEISSER,                          :
Cyrus QUINN, James QUINN, Frank REAGAN,                   :
Wallingford REID, Lincoln RESAULADIN,                     :
Jodi RICHARDSON, Cynthia ROBERTS,                         :
Larry ROBLES, Antoinetta RODRIGUEZ,                       :
Ernest RODRIGUEZ, Geronimo RODRIGUEZ,                     :
Milagros RODRIGUEZ, Russell ROOD,                         :
Roberta ROSDEITCHER, Diane ROWDEN,                        :
Stephen RYDER, Michael SANDERS,                           :
Martin SANTANA, Claude C. SCARBOROUGH JR.,                :
Linda SCHMIDT, Steve SCHUSTER,                            :
Vincent SCHWARTZ, Gerald SCIASCIA,                        :

Timothy SEEBERGER, Jane SFORZA,                          :
Shaneisa SHELTON, Michele SHEPHERD,                      :
Annette SHERMAN, Lawrence SHOMBERT,                      :
Allan SILVERMAN, Karen SIMPSON,                          :
Tyrone SIMPSON, Amarnauth SINGH,                         :
Bouasy SISATTANALAY, Sandford SKOLNIK,                   :
Dolores SLINSKI, Cliff SMITH, Jaime SMITH,               :
Louis SMITH, Sheila SMITH, Earline SMITH,                :
Darell SMITH, Elizaveta SMOLOVIK,                        :
Shelley SOKOLOWSKI, Joseph SOMMA, Jesus SOSA,            :
Mara SPADE, Elizabeth SPANGLER,                          :
Carson STELTZ, James STEVENSON, Tony STEWARD,            :
Allison STOVEKEN, Kathryn SULLIVAN,                      :
Pamela SWABY, Calvin SWEARINGIN, Jean TANIS,             :
Sanford TAVELLI, Jim TAYLOR, Michael TAYLOR,             :
Karma THARCHIN, Jean THOMPSON,                           :
John THORKILDSON, Eugene TORRES,                         :
Gary TRAINER, Carolyn TRAUB, Anthony TRISTANO,           :
Janell TSCHOSIK, John TURMAN,                            :
Steven TURNQUIST, Danuta TYLINSKA,                       :
Keith TYRER, Allan VANNATTA, Juan VELEZ,                 :
James A. VIGIL, Stacey VITALE, Thuy VO,                  :
Michael VOGRIN, Reynold WALBROOK,                        :
Lewis WAGONER, Kevin WAKEMAN, William                    :
WATKINS, Anthony WEDO, Stephen WEISS,                    :
Kestner WHITE, Angelette WHITE-GREEN,                    :
Wendy WICKS, Kathy WILSON, Sheldon WILSON,               :
Linda WOLCOTT, Eric WRIGHT, Randy ZEBENDON,              :
and JOHN ROES 1-1,000,                                   :
                                                         :
          Plaintiffs,                                    :
                                                         :
     vs.                                                 :
                                                         :
AMERICAN HOME MORTGAGE SERVICING, INC.,                  :
COUNTRYWIDE FINANCIAL CORPORATION,                       :
a Delaware corporation d/b/a BAC HOME LOANS              :
SERVICING, COUNTRYWIDE HOME LOANS, INC.,                 :
BANK OF AMERICA, N.A., ONE MAIN FINANCIAL,               :
MERRILL LYNCH & CO., INC.,                               :
SAXON MORTGAGE, EQUIFIRST,                               :
GREEN TREE SERVICING, LLC,                               :
FLAGSTAR MORTGAGE CORPORATION,                           :
d/b/a FLAGSTAR BANK, THE BANK OF NEW YORK,               :
JPMORGAN CHASE & CO., FIRST MARINER BANK,                :
AMERICAN SERVICING COMPANY, WELLS                        :

- 4 -

FARGO BANK, AURORA, BAYVIEW,                          :
BB&T CORPORATION, COLDWELL BANKER,                    :
HSBC MORTGAGE SERVICES, CENLAR,                       :
CITIMORTGAGE, INC., EQUIFIRST,                        :
FREEMONT MORTGAGE,                                    :
WELLS FARGO, LITTON LOAN SERVICING,                   :
EMIGRANT BANK, INDYMAC (ONE WEST BANK),               :
LOAN CARE SERVICING CENTER, INC.,                     :
M&T BANK, MGC MORTGAGE, INC., BEAL BANK,              :
NATIONSTAR, OCWEN, PNC BANK,                          :
REGIONS MORTGAGE, SLS MORTGAGE, INC.,                 :
SELECT PORTFOLIO SERVICING, INC.,                     :
SOVEREIGN, STATE FARM BANK, US BANK,                  :
VERIQUEST, WEALTHBRIDGE,                              :
CARRINGTON MORTGAGE SERVICES, LLC,                    :
SUNTRUST BANKS, INC., HFB BENEFICIAL,                 :
GMAC d/b/a ALLY FINANCIAL,                            :
MERSCORP, Inc., and JOHN DOES 1-100,                  :
                                                     :
       Defendants.                                :
_____              :

     The Plaintiffs in the above entitled action, complaining of the Defendants in the above

entitled action, by their attorneys, Philip R. Bernwish, Esq., *Of Counsel* to The Resolution Law

Group, P.C., located at 100 Park Avenue, Suite 1600, New York, NY, 10017, upon information

and belief, allege as follows:

### A. **JURISDICTION**

1. This action is brought pursuant to the original and exclusive jurisdiction of the Superior Court of

   the State of New York, pursuant to the fact that Defendants are incorporated, licensed, and/or

   registered to do business by and within the State of New York.

2. This lawsuit arises from, without limitation, among other things:

     a. Deception, whereby Defendants' induced Plaintiffs to enter into loans from

       approximately 2001 through 2009, and which were acquired or are serviced by

       Defendants;

b. Fraudulent and illegal use of MERS, in connection with those loans and mortgages;

c. Breach of contract by MERS, its members and subscribers, causing damage to the Plaintiffs;

d. Defendants' failure to perform their obligations required upon their acceptance of TARP funds, pursuant to written agreements, and for which the Plaintiffs' were third party beneficiaries;

e. Defendants' breach of Plaintiffs' statutorily protected rights;

f. Defendants' breach and willful violation of numerous consumer and homeowner protection statutes, and willful violations of unfair business practices statues, by, among other things, processing money from unknown sources, in contravention of the Patriot Act;

g. accepting money, transferring alleged assets and foreclosing upon alleged assets in instances where the alleged assets do not exist, and to which these Defendants have no right, title, or interest upon which they can act;  and

h. Defendants' continuing tortuous conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts, described below.

3. Defendants, among other things, violated laws, breached contracts, and repeatedly and intentionally failed to honor its agreements with borrowers.

4. Moreover, Defendants, and each of them, wrongfully acted and continue to act as if they are either the owner, beneficiary, successor, assignee, servicer, or have some right, title, or interest in Plaintiffs' notes, mortgages, or deeds of trust. In reality, the Defendants, and each of them, are committing and continuing a fraud, by utilizing and foreclosing upon assets that do not exist.

5. This action seeks remedies for the Defendants improper activities, jointly and severally, including a massive fraud perpetrated upon Plaintiffs and other borrowers by the Defendants' business that devastated the values of their residences, in most cases resulting in Plaintiffs' loss of all or substantially all of their net worth.

## B. PARTIES

6. Plaintiff Leela Abraham is an individual and a citizen of the State of New York, with a domicile located at 10 Herbert Drive, New Hyde Park, New York, 11040, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

7. Plaintiff Jeffrey Acker is an individual and a citizen of the State of Pennsylvania, with a domicile located at 8717 Brown Street, Slatington, Pennsylvania, 90713, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

8. Plaintiff Judette Adams is an individual and a citizen of the State of Maryland, with a domicile located at 10311 Cleary Lane, Mitchellville, Maryland, 20721, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

9. Plaintiff Tim Adolph is an individual and a citizen of the State of North Carolina, with a domicile located at 895 Hwy 32, Corapeake, North Carolina, 27926, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

10. Plaintiff Henry Ainsworth is an individual and a citizen of the State of Maryland, with a domicile located at 12222 Westview, Upper Marlboro, Maryland, 20722, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

11. Plaintiff Arnold Aldos is an individual and a citizen of the State of Washington, with a domicile located at 708 Leda Lane, Granite Falls, Washington, 98252, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom

they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage

12. Plaintiff Coreen Aldosa is an individual and a citizen of the State of Hawaii, with a domicile located at 8-5 904 Niihau, Waianae, Hawaii, 96792, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

13. Plaintiff Zaheer Ali is an individual and a citizen of the State of New Jersey, with a domicile located at 179 Fulton Avenue, Jersey City, New Jersey, 07305, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

14. Plaintiff Steven Allafi is an individual and a citizen of the State of Maryland, with a domicile located at 1794 Aberdeen Circle, Croston, Maryland, 21114, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

15. Plaintiff Kenneth Alonso is an individual and a citizen of the State of New Jersey, with a
    domicile located at 1126 Minnesiak Road, Wall, New Jersey, 08736, who executed a Promissory
    Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January
    1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real
    estate. At all times material hereto, Defendants, their agents, servants, employees, or others with
    whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or
    capacity over processing the loan, Promissory Note and Mortgage.

16. Plaintiff Sophia Alston is an individual and a citizen of the State of Pennsylvania, with a
    domicile located at 109 Terrace Drive, Saylorsburg, Pennsylvania, 18353, who executed a
    Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,
    between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a
    Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,
    employees, or others with whom they acted in concert, have acted as Originator, Lender, or
    Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

17. Plaintiff Alma Ames is an individual and a citizen of the State of Maryland, with a domicile
    located at 2809 Lumar Drive, Fort Washington, Maryland, 20744, who executed a Promissory
    Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January
    1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real
    estate. At all times material hereto, Defendants, their agents, servants, employees, or others with
    whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or
    capacity over processing the loan, Promissory Note and Mortgage.

18. Plaintiff Alan Anderson is an individual and a citizen of the State of Arizona, with a domicile
    located at 10685 E. Topaz Drive, Scottsdale Arizona, 85258, who executed a Promissory Note in

favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

19. Plaintiff Beryl Anderson is an individual and a citizen of the State of New York, with a domicile located at 62 E. 57th Street, Brooklyn, New York, 11203, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

20. Plaintiff Claude Anderson is an individual and a citizen of the State of New Jersey, with a domicile located at 505 Leonard Lane, Mullica Hill, New Jersey, 08062, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

21. Plaintiff Janet Anderson is an individual and a citizen of the State of Washington, with a domicile located at 5011 81st Street S.W., Lake Wood, Washington, 96706, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

- 11 -

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

22. Plaintiff Peter Anthony is an individual and a citizen of the State of New York, with a domicile located at 24 Elmbank Street, Staten Island, New York, 10312, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

23. Plaintiff Robert Ashby is an individual and a citizen of the State of Nevada, with a domicile located at 5096 Palo Alto Circle, Sparks, Nevada, 89436, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

24. Plaintiff Lawrence Atuana is an individual and citizen of the State of New York, with a domicile located at 168 Miller Avenue, Brooklyn, New York, 11207, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom

they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

25. Plaintiff Morton Avigdor is an individual and citizen of the State of New York, with a domicile located at 884 71st Street, Brooklyn, New York, 1128, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

26. Plaintiff Daniel Babcock is an individual and citizen of the State of New Jersey, with a domicile located at 208 Spelko Avenue, Phillipsburg, New Jersey, 08865, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

27. Plaintiff Ronald Barber is an individual and a citizen of the State of Pennsylvania, with a domicile located at 806 Austin Drive, Fairless Hills, Pennsylvania, 19030, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

28. Plaintiff Curtis Barcliff is an individual and a citizen of the State of Virginia, with a domicile located at 2031 Indian Point Road, Suffolk, Virginia, 23434, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

29. Plaintiff Sabrina L. Barnes is an individual and a citizen of the State of Maryland, with a domicile located at 2902 East Avenue, District Heights, Maryland, 20747, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

30. Plaintiff Edwin Barrera is an individual and a citizen of the State of New York, with a domicile located at 225 Travis Avenue, Elmont, New York, 11003, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

31. Plaintiff Brian Barsumian is an individual and a citizen of the State of Florida, with a domicile located at 1201 Finland Drive, Spring Hill, Florida, 34609, who executed a Promissory Note in

favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

32. Plaintiff Cathy Bauer is an individual and a citizen of the State of Kentucky, with a domicile located at 3541 Hwy 26, Corbin, Kentucky, 40701, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

33. Plaintiff Marta Bayron is an individual and a citizen of the State of New York, with a domicile located at 121 Euclid Avenue, Brooklyn, New York, 11208, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

34. Plaintiff Michael D. Bean is an individual and a citizen of the State of Oklahoma, with a domicile located at 4004 CR 2706, Bartlesville, Oklahoma, 74003, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

35. Plaintiff Camille Bell is an individual and a citizen of the State of Maryland, with a domicile of 10810 Sherwood Hill Road, Owings Mill, Maryland, 21117, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

36. Plaintiff Joseph Bellini is an individual and a citizen of the State of Pennsylvania, with a domicile located at 2049 Bedfordshire Road, Furlong, Pennsylvania, 18925, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

37. Plaintiff Walter Benn is an individual and a citizen of the State of Pennsylvania, with a domicile located at 383 Charles Street, Coatesville, Pennsylvania, 19320, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

38. Plaintiff Matt Bernthal is an individual and a citizen of the State of Illinois, with a domicile located at 1095 Sterling #214, Palatine, Illinois, 60067, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

39. Plaintiff Thomas J. Beshke is an individual and a citizen of the State of Michigan, with a domicile located at 3034 Quail Ridge Circle, Rochester Hills, Michigan, 48309, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

40. Plaintiff Daniel Biggs is an individual and a citizen of the State of New Jersey, with a domicile located at 40 Adams Street, Irvington, New Jersey, 07111, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

41. Plaintiff Terry Bishop Williams is an individual and a citizen of the State of Missouri, with a domicile located at 3511 Juniata Street, St. Louis, Missouri, 63118, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

42. Plaintiff Donald Black is an individual and a citizen of the State of Florida, with a domicile located at 19101 NW 10th Avenue, Miami, Florida, 33169, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

43. Plaintiff Tchad Blair is an individual and a citizen of the State of Maryland, with a domicile located at 5553 Hartfield Avenue, Suitland, Maryland, 20746, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

44. Plaintiff Millard Blake is an individual and a citizen of the State of New Jersey, with a domicile located at 206 Beacon Avenue, Jersey City, New Jersey, 07306, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

45. Plaintiff Marcia Bobo is an individual and a citizen of the State of Georgia, with a domicile located at 4470 E. Cherokee Drive, Canton, Georgia, 30115, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

46. Plaintiff Martin Bowman is an individual and a citizen of the State of Georgia, with a domicile located at 685 Iron Mountain Road, Canton, Georgia, 30115, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

47. Plaintiff Edwin Boyd is an individual and a citizen of the State of Maryland, with a domicile located at 1119 Runnymede Lane, Bel Air, Maryland, 21014, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

48. Plaintiff Catherine Bradford is an individual and a citizen of the State of Maryland, with a domicile located at 9728 Williamsburg Drive, Upper Marlboro, Maryland, 20772, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

49. Plaintiff John Brecker is an individual and a citizen of the State of New Jersey, with a domicile located at 445 Prospect Avenue, West Berlin New Jersey, 08091, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

50. Plaintiff Brigitte Brown is an individual and a citizen of the State of New York, with a domicile located at 19 Lee Street, Roosevelt, New York, 11575, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they

acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

51. Plaintiff Soak Lee Brown is an individual and a citizen of the State of Texas, with a domicile located at 6744 Marble Canyon Drive, El Paso, Texas, 79912, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

52. Plaintiff Gabriel Bucur is an individual and a citizen of New York, with a domicile located at 22 Calvanico Lane, Staten Island, New York, 10314, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

53. Plaintiff Tadusz Budak is an individual and a citizen of the State of New Jersey, with a domicile located at 12 Jewel Place, Old Bridge, New Jersey, 08857, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

54. Plaintiff B. Calico-Hicky is an individual and a citizen of the State of New Mexico, with a domicile located at 84 La Cueva Road, Glorieta, New Mexico, 87535, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

55. Plaintiff Rose Calise is an individual and a citizen of the State of Oregon, with a domicile located at 1072 E. Park Street, Grant Pass, Oregon, 97527, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

56. Plaintiff Christopher Callahan is an individual and a citizen of the State of Arizona, with a domicile located at 2909 W. 20th Place, Yuma, Arizona, 85364, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

57. Plaintiff Leonard Calvaruso is an individual and a citizen of the State of New Jersey, with a domicile located at 112 Brook Drive, Dover, New Jersey, 07801, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

58. Plaintiff Solomon Campbell is an individual and a citizen of the State of Georgia, with a domicile located at 2501 S. Hibiscus Road, Albany, Georgia, 31705, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

59. Plaintiff Young Cantave is an individual and a citizen of the State of New York, with a domicile located at 2442 Foster Court, North Bellmore, New York, 11710, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

60. Plaintiff Darren Carbone is an individual and a citizen of the State of New Jersey, with a domicile located at 234 North Park Drive, Woodbridge, New Jersey, 07095, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

61. Plaintiff David Champeau is an individual and a citizen of the State of Michigan, with a domicile located at 2754 Fenner Road, Muskegon, Michigan, 49445, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

62. Plaintiff Harry Chandler is an individual and a citizen of the State of Michigan, with a domicile located at 1880 HollowBrook Drive, Holt, Michigan, 48842, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

63. Plaintiff Frederick Chapman III is an individual and a citizen of the State of Pennsylvania, with a domicile located at 75 Grenville Circle, Churchville, Pennsylvania, 18966, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

64. Plaintiff Betty Charlock is an individual and a citizen of the State of Florida, with a domicile located at 14920 Southwest 21st Street, Davie, Florida, 33326, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

65. Plaintiff Gloria Charlton is an individual and a citizen of the State of New York, with a domicile located at 3439 Ely Avenue, Bronx, New York, 10469, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

66. Plaintiff John Christadore is an individual and a citizen of the State of New Jersey, with a domicile located at 1407 Juniper Street, Point Pleasure, New Jersey, 08742, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

67. Plaintiff Shirleen Church is an individual and a citizen of the State of Maryland, with a domicile located at 122 Paddock Drive, Fruitland, Maryland, 21826, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

68. Plaintiff Brian Ciambra is an individual and a citizen of the State of Connecticut, with a domicile located at 70 Crossbow Lane, Easton, Connecticut, 06612, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

69. Plaintiff Richard Ciccotto is an individual and a citizen of the State of Florida, with a domicile located at 4670 Chardonnay Drive, Rockledge, Florida, 32955, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

70. Plaintiff Donald Cila is an individual and a citizen of the State of New Jersey, with a domicile located at 1 Springbrook Road, Livingston, New Jersey, 07039, who executed a Promissory Note

in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

71. Plaintiff Diane Citrone is an individual and a citizen of the State of Massachusetts, with a domicile located at 201 Atkinson Avenue, Stoughton, Massachusetts, 02072, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

72. Plaintiff Jerry Clark is an individual and a citizen of the State of Wyoming, with a domicile located at 9709 Cone Flower Drive NW, Albuquerque, New Mexico, 87114, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

73. Plaintiffs Crystal and Henry Clarke are individuals who reside in and are citizens of the State of Pennsylvania, with a domicile located at 5 Stone Wall Court, East, Pennsylvania, 18302, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured

by a Mortgage on their real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

74. Plaintiff Donald Clouser is an individual and a citizen of the State of Pennsylvania, with a domicile located at 719 N. Temple Boulevard, Temple, Pennsylvania, 19560, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

75. Plaintiff Floyd Codrington is an individual and a citizen of the State of New York, with a domicile located at 120 09 142nd Street, Jamaica, New York, 11436, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

76. Plaintiff June Codrington-Kole is an individual and a citizen of the State of New Jersey, with a domicile located at 496 Seven Oaks Court, Orange, New Jersey, 07050, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

77. Plaintiff Deborah Coleman is an individual and a citizen of the State of Maryland, with a domicile located at 1823 Plymouth Court, Bovie, Maryland, 20716, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

78. Plaintiff Gary Collins is an individual and a citizen of the State of South Carolina, with a domicile located at 103 Carlisle Bay Court, Goose Creek, South Carolina, 29445, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

79. Plaintiff Marcus Collins is an individual and a citizen of the State of Virginia, with a domicile located at 11700 Decade Court, Reston, Virginia, 20191, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

80. Plaintiff Aja Cooke is an individual and a citizen of the State of Massachusetts, with a domicile located at 22 Nicholas Drive, Wareham, Massachusetts, 02571, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

81. Plaintiff Wayne Cooke is an individual and a citizen of the State of Connecticut, with a domicile located at 4 Adams Lane, Norwalk, Connecticut, 06850, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

82. Plaintiff Cristobal Correa, Jr. is an individual and a citizen the State of New Jersey, with a domicile located at 711 Dunn Circle, Bridgewater, New Jersey, 08807, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

83. Plaintiff Richard Corrigan is an individual and a citizen the State of Kansas, with a domicile located at 2308 W. 125th Street, Leawood, Kansas, 66209, who executed a Promissory Note in

favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

84. Plaintiff Nichelle Cromwell is an individual and a citizen of the State of Maryland, with a domicile located at 2711 Bourne Way, Edgewood, Maryland, 21040, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

85. Plaintiff Dominic D'Amico is an individual and a citizen of the State of New York, with a domicile located at 2 Woodlawn Avenue, St. James, New York, 11780, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

86. Plaintiff Jerry Darden is an individual and a citizen of the State of Texas, with a domicile located at 1336 Cy Blackburn Circle, Dallas, Texas, 75217, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his estate. At all

times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

87. Plaintiff Laverne Darmanie is an individual and a citizen of the State of New York, with a domicile located at 4521 Clarendon Road, Brooklyn, New York, 11203, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

88. Plaintiff Sam Davis is an individual and a citizen of the State of Idaho, with a domicile located at 8620 Shannon Road, Payette, Idaho, 83661, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

89. Plaintiff Christopher Davis is an individual and a citizen of the State of South Carolina, with a domicile located at 222 S. McCurdy Road, Florence, South Carolina, 29506, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

90. Plaintiff Delpilar Debrosse is an individual and a citizen of the State of Connecticut, with a domicile located at 26 Reynolds Drive, Fairfield, Connecticut, 06824, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

91. Plaintiff David Dejong is an individual and a citizen of the State of Massachusetts, with a domicile of 66 High Street, Whitinsville, Massachusetts, 01588, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

92. Plaintiff Daniel DeLisa, Jr. is an individual and a citizen of the State of New Jersey, with a domicile located at 93 Aberdeen Road, Matawan, New Jersey, 07747, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

93. Plaintiff Melissa Deloach is an individual and a citizen of the State of Massachusetts, with a domicile located at 27 Pheasant Lane, Pembroke, Massachusetts, 02359, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

94. Plaintiff David Deluca is an individual and citizen of the State of Massachusetts, with a domicile located at 3 Leroy Drive, Burlington, Massachusetts, 01803, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

95. Plaintiff Helen Demann is an individual and a citizen of the State of Arizona, with a domicile located at 7744 W. Sweetwater Avenue, Peoria, Arizona, 85381, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

96. Plaintiff Robert Demary is an individual and a citizen of the State of New Jersey, with a domicile of 180 Vineyard Road, Edison, New Jersey, 08817, who executed a Promissory Note in favor of

the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

97. Plaintiff Peter Dempsey is an individual and a citizen of the State of New Jersey, with a domicile located at 99 Willow Avenue, North Plainfield, New Jersey, 07060, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

98. Plaintiff Mike Differ is an individual and a citizen of the State of Massachusetts, with a domicile located at 65 Oak Ridge Lane, Bridgewater, Massachusetts, 02324, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

99. Plaintiff Donavon Dilling is an individual and a citizen of the State of Maryland, with a domicile located at 206 East K Street, Brunswick, Maryland, 21716, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate.

At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

100.    Plaintiff Richard Dimas is an individual and a citizen of the State of New Jersey, with a domicile located at 166 Circle Drive, Teaneck, New Jersey, 07666, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

101.    Plaintiffs John and Linda Distefano are individuals and citizens of the State of New York, with a domicile located at 36 Carroll Street, Sag Harbor, New York, 11963, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on their real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

102.    Plaintiff Gerald Dombecki is an individual and a citizen of the State of Pennsylvania, with a domicile located at 9881 Ferndale Street, Philadelphia, Pennsylvania, 19115, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

103.     Plaintiff Dawn Doran is an individual and a citizen of the State of Illinois, with a domicile located at 711 Warblier Lane, Nbewlehux, Illinois, 60451, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

104.     Plaintiff Joseph Dorisca is an individual and a citizen of the State of Massachusetts, with a domicile located at 78 Rockland Drive, Brockton, Massachusetts, 02301, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

105.     Plaintiff Nicholas Doura is an individual and a citizen of the State of Massachusetts, with a domicile located at 19 Lincoln Street, Franklin, Massachusetts, 02038, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

106.     Plaintiff Robert Duncan is an individual and a citizen of the State of Nevada, with a

domicile located at 3716 Hedge Grove Drive, North Las Vegas, Nevada, 89032, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

107.     Plaintiff Diane Dunn is an individual and a citizen of the State of New York, with a

domicile located at 15 Roosevelt Avenue, Sayville, New York, 11782, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

108.     Plaintiff Elizabeth Durfee is an individual and a citizen of the State of New York, with a

domicile located at 104 Post Office Road, Waccabuc, New York, 10597, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

109.     Plaintiff Michael Early is an individual and a citizen of the State of Michigan, with a

domicile located at 1692 Woodbine Drive, Lapper, Michigan, 48446, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

110.     Plaintiff Allen Ecker is an individual and a citizen of the State of New Jersey, with a domicile located at 1356 Carmel Avenue, Vineland, New Jersey, 08360, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

111.     Plaintiff Vicki Edwards is an individual and a citizen of the State of Maryland, with a domicile located at 5703 Kent Drive, New Market, Maryland, 21774, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

112.     Plaintiff Kimberly English is an individual and a citizen of the State of Alaska, with a domicile located at 4407 San Roberto Avenue, Anchorage, Alaska, 99508, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

113.     Plaintiff Marvin Erskine is an individual and a citizen of the State of New York, with a domicile located at 515 South 11th Avenue, Mount Vernon, New York, 10550, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

114.     Plaintiff Edwin Escamilla is an individual and a citizen of the State of Maryland, with a domicile located at 3700 63rd Avenue, Hyattsville, Maryland, 20785, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

115.     Plaintiff Stephanie Estes is an individual and a citizen of the State of Texas, with a domicile located at 408 Valley Drive, Rockwall, Texas, 75087, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

116.    Plaintiff Thomas Fadden is an individual and a citizen of the State of Washington, with a domicile located at 25517 34th Avenue East, Spanaway, Washington, 98387, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

117.    Plaintiff Philip Falzone is an individual and a citizen of the State of Massachusetts, with a domicile located at 14 Pearl Brook Road, West Townsend, Massachusetts, 01474, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

118.    Plaintiff Loretta Farino is an individual and a citizen of the State of New York, with a domicile located at 38 Yuma Lane, East Islip, New York, 11730, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

119.     Plaintiff Edward Fasulo, Jr. is an individual and a citizen of the State of Massachusetts, with a domicile located at 7 Daws Road, Stow, Massachusetts, 01775, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

120.     Plaintiff Robert Fedus is an individual and a citizen of the State of Massachusetts, with a domicile located at 162 Oldham Street, Pembroke, Massachusetts, 02359, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

121.     Plaintiff Mesfin Felleke is an individual and a citizen of the State of Nevada, with a domicile located at 1980 Stargate Way, Reno, Nevada, 89523, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

122.     Plaintiff Karin Finnegan is an individual and a citizen of the State of Massachusetts, with a domicile located at 327 Shrewsbury Street, Holden, Massachusetts, 01520, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

123.    Plaintiff Richard Finnegan is an individual and a citizen of the State of Pennsylvania, with a domicile located at 568 Chaparral Drive, Cranberry TWP, Pennsylvania, 16066, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

124.    Plaintiff Joshua Fisher is an individual and a citizen of the State of Nevada, with a domicile located at 6101 Wild Berry Drive, Las Vegas, Nevada, 89142, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

125.    Plaintiff Carlos Fontes is an individual and a citizen of the State of Arizona, with a domicile located at 6385 S. Cowpoke, Tucson, Arizona, 85757, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

126.     Plaintiff Craig Foster is an individual and a citizen of the State of New York, with a domicile located at 49 Beach Avenue, Sag Harbor, New York, 11963, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

127.     Plaintiff Doris Foster is an individual and a citizen of the State of Maryland, with a domicile located at 1429 Odenton Road, Odenton, Maryland, 21113, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

128.     Plaintiff Jessica Foti is an individual and a citizen of the State of California, with a domicile located at 5739 Briercrest Avenue, Lakewood, California, 90713, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

129.     Plaintiff Joseph Fox is an individual and a citizen of the State of Pennsylvania, with a domicile located at 2518 Christian Street, Philadelphia, Pennsylvania, 19146, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

130.     Plaintiff Norlene Fuentes is an individual and a citizen of the State of New Mexico, with a domicile located at 601 Old Zuni Road, Gallup, New Mexico, 87301, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

131.     Plaintiff Stephen Furman is an individual and a citizen of the State of Maryland, with a domicile located at 4201 Glenmore Avenue, Baltimore, Maryland, 21206, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

132.     Plaintiff Daniel Garcia is an individual and a citizen of the State of New York, with a

domicile located at 1116 Swinton Avenue, Bronx, New York, 10465, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

133.     Plaintiff Santos Garcia is an individual and a citizen of the State of Maryland, with a

domicile located at 1968 Forest Drive, Annapolis, Maryland, 21401, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

134.     Plaintiff David Gaspar is an individual and a citizen of the State of Louisiana, with a

domicile located at 17229 E. Main Street, Galliano, Louisiana, 70354, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

135.     Plaintiff Azeez Gbede is an individual and a citizen of the State of New York, with a

domicile located at 171-32 119 Avenue, New York, New York, 11434, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

136.     Plaintiff Anthony Giacalone is an individual and a citizen of the State of Massachusetts, with a domicile located at 8 Edgewood Road, Gloucester, Massachusetts, 01930, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

137.     Plaintiff Donald Gilmore is an individual and a citizen of the State of New York, with a domicile located at 560 Jerome Street, Brooklyn, New York, 11207, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

138.     Plaintiff Anthony Giuffre is an individual and a citizen of the State of Florida, with a domicile located at 1923 Gardena Court Unit 174-B, Riviera Beach, Florida, 33404, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured

by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

139.    Plaintiff Juan Carlos Godinez is an individual and a citizen of the State of Washington, with a domicile located at 40121 145th Place SE, Gold Bar, Washington, 98251, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

140.    Plaintiff Lydia Gonzalez is an individual and a citizen of the State of New York, with a domicile located at 118 Forbell Street, Brooklyn, New York, 11208, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

141.    Plaintiff Raul Gonzalez is an individual and a citizen of the State of Texas, with a domicile located at 10427 Sage Meadow Lane, Houston, Texas, 77089, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

142.    Plaintiff Raymond Gonzalez is an individual and a citizen of the State of Nevada, with a domicile located at 2690 Friesian Court, Reno, Nevada, 89521, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

143.    Plaintiff Sylvia Gonzalez is an individual and a citizen of the State of New Jersey, with a domicile located at 71 Lewis Street, Perth Amboy, New Jersey, 08861, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

144.    Plaintiff Frank Gorsuch is an individual and a citizen of the State of Maryland, with a domicile located at 1634 Tucker Road, Fort Washington, Maryland, 20744, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

145.    Plaintiff Shelby Green is an individual and a citizen of the State of Maryland, with a domicile located at 3204 Sykesville Road, West Minster, Maryland, 21157, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

146.    Plaintiff Rosalina Grijalva is an individual and a citizen of the State of Massachusetts, with a domicile located at 860 Washington Street, Abington, Massachusetts, 02351, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

147.    Plaintiff Nadine Guiendon is an individual and a citizen of the State of New Jersey, with a domicile located at 224 Western Avenue, Tuckerton, New Jersey, 08087, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

148.    Plaintiff Catherine Clark Gumbs is an individual and a citizen of the State of New York, with a domicile located at 406 Screvin Avenue, Bronx, New York, 10473, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

149.     Plaintiff Rodney Hampton is an individual and a citizen of the State of Georgia, with a domicile located at 285 Stoneleigh Drive, Atlanta, Georgia, 30331, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

150.     Plaintiff Dan Harrison is an individual and a citizen of the State of Illinois, with a domicile located at 19920 Chestnut Court, Lynwood, Illinois, 60411, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

151.     Plaintiff Geraldine Hawkins is an individual and a citizen of the State of New Jersey, with a domicile located at 249 W. 3rd Street, Roseville, New Jersey, 07203, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

152.    Plaintiff Betty Hawthorne is an individual and a citizen of the State of Georgia, with a domicile located at 7855 Rio Grande Trail, Douglas, Georgia, 30315, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

153.    Plaintiff Scott Hembroff is an individual and a citizen of the State of Washington, with a domicile located at 19808 103rd Street East, Bonney Lake, Washington, 98391, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

154.    Plaintiff Christopher Hockensmith is an individual and a citizen of the State of Pennsylvania, with a domicile located at 1635 Covington Road, Yardley, Pennsylvania, 19067, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

155.    Plaintiff Sandra Hodge is an individual and a citizen of the State of New Hampshire, with a domicile located at 5 Jacobs Way, Newton, New Hampshire, 03858, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

156.    Plaintiff Barry Holihan is an individual and a citizen of the State of Nevada, with a domicile located at 1593 Ashbury Lane, Reno, Nevada, 07727, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

157.    Plaintiff Jyrell Holland is an individual and a citizen of the State of Illinois, with a domicile located at 609 Cody Lane, University Park, Illinois, 60484, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

158.     Plaintiff Victor Hopper is an individual and a citizen of the State of Illinois, with a

domicile located at 2N131 Prince Crossing Road, Chicago, Illinois, 60185, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

159.     Plaintiff Cecil Hoskinson is an individual and a citizen of the State of Oklahoma, with a

domicile located at 11885 S. 268th E. Avenue, Coweta, Oklahoma, 74429, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

160.     Plaintiff Adriaenne Howard is an individual and a citizen of the State of Pennsylvania,

with a domicile located at 29 Delancy Court, North Wales, Pennsylvania, 19454, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

161.     Plaintiff Caroline Howard is an individual and a citizen of the State of Connecticut, with

a domicile located at 9 Curry Lane, East Hampton, Connecticut, 06424, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

162.     Plaintiff David Hubbard II is an individual and a citizen of the State of Florida, with a domicile located at 4652 Lake In The Woods Drive, Spring Hill, Florida, 34607, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

163.     Plaintiff Linda Huffman is an individual and a citizen of the State of Oklahoma, with a domicile located at 2454 County Street 2798, Chickasha, Oklahoma, 73018, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

164.     Plaintiff Dawn Humphries is an individual and a citizen of the State of New Jersey, with a domicile located at 277 Churchill Drive, Egg Harbor Township, New Jersey, 08234, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured

by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

165.    Plaintiff William and Deborah Hunter are individuals and citizens of the States of Missouri and Florida, with domiciles located at 2425 Golden Bear Way, Wentzville, Missouri, 63385 and 504 Fort Pickens, Pensacola Beach, Florida, 32561, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on their real estates. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

166.    Plaintiff Anna Hunter-Miller is an individual and a citizen of the State of Maryland, with a domicile located at 7223 Croydon Road, Baltimore, Maryland, 21207, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

167.    Plaintiff Coleen Hutchison is an individual and a citizen of the State of Idaho, with a domicile located at 234 Delaware Avenue, Nampa, Idaho, 83651, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

168.      Plaintiff Miles Iyamu is an individual and a citizen of the State of Massachusetts, with a domicile located at 86 Brunswick Street, Dorchester, Massachusetts, 02121, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

169.      Plaintiff Jemmie Jemison is an individual and a citizen of the State of New York, with a domicile located at 45 W. Fulton Avenue, Roosevelt, New York, 11575, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

170.      Plaintiff Danielle Jodison is an individual and a citizen of the State of Illinois, with a domicile located at 25254 Balmoral Drive, Shorewood, Illinois, 60404, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

171.     Plaintiff Ernest Johnson is an individual and a citizen of the State of Pennsylvania, with a domicile located at 1029 Excelsior Drive, Aston, Pennsylvania, 19014, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

172.     Plaintiff Richard Johnson is an individual and a citizen of the State of North Carolina, with a domicile located at 7015 Reddman Road, Charlotte, North Carolina, 28212, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

173.     Plaintiff Felicia Johnson is an individual and a citizen of the State of New York, with a domicile located at 3919 Avenue H, Brooklyn, New York, 11210, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

174.     Plaintiff Dale Joel is an individual and a citizen of the State of Minnesota, with a domicile located at 8 N. Mallard Road, St. Paul, Minnesota, 55127, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

175.     Plaintiff Angela Jones is an individual and a citizen of the State of Massachusetts, with a domicile located at 508 Central Street, Saugus, Massachusetts, 01906, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

176.     Plaintiff Millicent Jones is an individual and a citizen of the State of Florida, with a domicile located at 10811 Brandon Chase Drive, Jacksonville, Florida, 32219, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

177.     Plaintiff Eric Josey is an individual and a citizen of the State of Florida, with a domicile located at 86 Lindsay Drive, Palm Coast, Florida, 32137, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate.

At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

178.     Plaintiff Uma Jothy is an individual and a citizen of the State of New York, with a domicile located at 110 Links Court, Port Washington, New York, 11050, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

179.     Plaintiff Sewnarain Kallica is an individual and a citizen of the State of New York, with a domicile located at 7416 95th Avenue, Ozone Park, New York, 11416, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

180.     Plaintiff Jack Kellam is an individual and a citizen of the State of Maryland, with a domicile located at 8945 Twin Ridge Road, Glenn Burnie, Maryland, 21061, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

181.    Plaintiff Debra Kelley is an individual and a citizen of the State of Massachusetts, with a domicile located at 1133 Washington Street, Abington, Massachusetts, 02351, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

182.    Plaintiff Rachel Keyser is an individual and a citizen of the State of Maryland, with a domicile located at 3504 Fox Ridge Road, Waldorf, Maryland, 20601, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

183.    Plaintiff Masele Kibassa is an individual and a citizen of the State of New York, with a domicile located at 120 Gramtean Drive, Yonkers, New York, 10701, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

184.     Plaintiff Anna Kula is an individual and a citizen of the State of Connecticut, with a

domicile located at 33 Fenway Street, Stanford, Connecticut, 06902, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

185.     Plaintiff James Kunkel is an individual and a citizen of the State of Pennsylvania, with a

domicile located at 1457 Catlin Way, Dresher, Pennsylvania, 98499, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

186.     Plaintiff Justin Kupiec is an individual and a citizen of the State of Connecticut, with a

domicile located at 60 Marshall Street, Putnam, Connecticut, 06260, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

187.     Plaintiff Douglas Lacey is an individual and a citizen of the State of Washington, with

domiciles located at 4427 83rd Place NE, Maryville, Washington, 98270 and 7413 87th Place NE,

Maryville, Washington, 98270, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

188.    Plaintiff George Lacher is an individual and a citizen of the State of Maryland, with a domicile located at 1104 Bellmore road, Baltimore, Maryland, 21210, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

189.    Plaintiff Dominick Lagana is an individual and a citizen of the State of Connecticut, with a domicile located at 7 Mountain Laurel Lane, Sandy Hook, Connecticut, 06482, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

190.    Plaintiff Jeffery Lane is an individual and a citizen of the State of Maryland, with a domicile located at 83 Adderton Drive, Prince Frederick, Maryland, 20678, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

191.    Plaintiff Sonia Lavalle is an individual and a citizen of the State of New Jersey, with a domicile located at 129 Arthur Street, Ridgefield Park, New Jersey, 07660, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

192.    Plaintiff Michael Lane is an individual and a citizen of the State of Massachusetts, with a domicile located at 5 Old Mill Lane, Randolph, Massachusetts, 02368, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

193.    Plaintiff Charles Lazo is an individual and a citizen of the State of New Jersey, with a domicile located at 23 Whitehall Avenue, Edison, New Jersey, 08820, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

194.     Plaintiff Jeffrey Lee is an individual and a citizen of the State of New York, with a domicile located at 9 Dunderave Road, White Plains, New York, 10603, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

195.     Plaintiff Laurence Legall is an individual and a citizen of the State of New York, with a domicile located at 1149 Ralph Avenue, Brooklyn, New York, 11236, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

196.     Plaintiff Gregg Lehmann is an individual and a citizen of the State of New York, with a domicile located at 565 Keller Avenue, Elmont, New York, 11003, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

197.     Plaintiff Edward LeBlond is an individual and a citizen of the State of Connecticut, with a domicile located at 64 Wakeman Road, New Canaan, Connecticut, 06840, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

198.     Plaintiff Lisa Lewis is an individual and a citizen of the State of Pennsylvania, with a domicile located at 212 Beaver Run Road, Ottsville, Pennsylvania, 18942, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

199.     Plaintiff Jeffrey Lewis is an individual and a citizen of the State of Colorado, with a domicile located at 258 Sierra Vista Street, Durango, Colorado, 81301, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

200.     Plaintiff John Lewis is an individual and a citizen of the State of Virginia, with a domicile located at 14129 Rockinghorse Drive, Woodbridge, Virginia, 22193, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

201.     Plaintiff William Lewis is an individual and a citizen of the State of Virginia, with a domicile located at 37 Tavern Road, Stafford, Virginia, 22554, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

202.     Plaintiff Michael Licata is an individual and a citizen of the State of New York, with a domicile located at 210 Nathans Trail, Lancaster, New York, 14086, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

203.     Plaintiff Alex Litvinov is an individual and a citizen of the State of Illinois, with a domicile located at 9010 Keeler Avenue, Skokie, Illinois, 60076, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

204.     Plaintiff Montell Locey is ,an individual and a citizen of the State of Iowa, with a domicile located at 418 21st Place, Clinton, Iowa, 52732, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

205.     Plaintiff Belinda Lyles-Ockimey is an individual and a citizen of the State of Pennsylvania, with a domicile located at 7209 Oak Avenue, Elkins Park, Pennsylvania, 19027m who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

206.     Plaintiff Norbert Maciorowski is an individual and a citizen of the State of New York, with a domicile located at 210 34th Street, Lindenhurst, New York, 11757, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

207.　　Plaintiff Kevin Mackey is an individual and a citizen of the State of Alaska, with a domicile located at 2211 Jefferson Avenue, Anchorage, Alaska, 99517, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

208.　　Plaintiff Mark Maguire is an individual and a citizen of the State of New Jersey, with a domicile located at 42 Linnwood Avenue, Elmwood Park, New Jersey, 07407, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

209.　　Plaintiff Michael Maione is an individual and a citizen of the State of North Carolina, with a domicile located at 1304 Venus Street, Kannapolis, North Carolina, 28083, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

210.     Plaintiff Stephen Macholz is an individual and a citizen of the State of Florida, with a

domicile located at 36835 Queen Bee Lane, Grand Island, Florida, 32735, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

211.     Plaintiff Nicholas Mancino is an individual and a citizen of the State of Florida, with a

domicile located at 8617 Via Rapallo Drive #205, Estero, Florida, 33928, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

212.     Plaintiff Jason Mangine is an individual and a citizen of the State of New York, with a

domicile located at 73 Cobble Hill Drive, Gansevoort, New York, 12831, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

213.     Plaintiff David Mann is an individual and a citizen of the State of New Jersey, with a

domicile located at 62 Harrison Avenue, Waldwick, New Jersey, 07463, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

214.     Plaintiff Donald Martin is an individual and a citizen of the State of New York, with a domicile located at 449 Father Capodanno Boulevard, Staten Island, 10305, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

215.     Plaintiff Michael Martin, Jr. is an individual and a citizen of the State of New York, with a domicile located at 192 Drexel Drive, Pinebush, New York, 12566, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

216.     Plaintiff John Martins is an individual and a citizen of the State of Massachusetts, with a domicile located at 23 Grace Drive, Wilmington, Massachusetts, 01887, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

217.    Plaintiff Dr. Roger Mason is an individual and a citizen of the State of New York, with a domicile located at 4 Peconic Crescent, Hampton Bays, New York, 11946, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

218.    Plaintiff Melanie Massey is an individual and a citizen of the State of North Carolina, with a domicile located at 637 Bayshore Drive, Wilmington, North Carolina, 28411, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

219.    Plaintiff Robert Massimi is an individual and a citizen of the State of New Jersey, with a domicile located at 110 East Allendale Road, Saddle River, New Jersey, 07458, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

220.    Plaintiff William Matchler is an individual and a citizen of the State of Pennsylvania, with a domicile located at 9877 Cowden Street, Philadelphia, Pennsylvania, 19115, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

221.    Plaintiff Jack Mathes is an individual and a citizen of the State of Oregon, with a domicile located at 3255 NE Wygant Street, Porland, Oregon, 97211, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or . Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

222.    Plaintiff Barry Maxson is an individual and a citizen of the State of New Jersey, with a domicile located at 105 Birdsall Road, Farmingdale, New Jersey, 07727, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

223.     Plaintiff Carl Mazzella is an individual and a citizen of the State of New York, with a
domicile located at 20 Farmers Avenue, Bethpage, New York, 11714, who executed a
Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,
between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a
Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,
employees, or others with whom they acted in concert, have acted as Originator, Lender, or
Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

224.     Plaintiff Eva McCarron is an individual and a citizen of the State of Massachusetts, with
a domicile located at 103 Water Street, Medford, Massachusetts, 02155, who executed a
Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,
between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a
Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,
employees, or others with whom they acted in concert, have acted as Originator, Lender, or
Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

225.     Plaintiff Carlton McClease is an individual and a citizen of the State of Pennsylvania,
with a domicile located at 4708 Hatfield Street, Bristol, Pennsylvania, 19007, who executed a
Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,
between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a
Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,
employees, or others with whom they acted in concert, have acted as Originator, Lender, or
Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

226.     Plaintiff Jesse McLin is an individual and a citizen of the State of Nevada, with a
domicile located at 2400 La Sierra Street, Las Vegas, Nevada, 89134, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

227.     Plaintiff James McGurn is an individual and a citizen of the State of Pennsylvania, with a domicile located at 609 Laramie Place, Philadelphia, Pennsylvania, 19115, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

228.     Plaintiff Jessica McKeever is an individual and a citizen of the State of New York, with a domicile located at 25 Ramblewood Drive, Newburgh, New York, 12550, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

229.     Plaintiff Anthony McKinney is an individual and a citizen of the State of Washington, with a domicile located at 6825 Holly Park Drive S., Seattle, Washington, 98118, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

230.     Plaintiff Cheryl McMillan is an individual and a citizen of the State of Virginia, with a domicile located at 2420 La Sierra Street, Alexandria, Virginia, 22306, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

231.     Plaintiff Dan Medeiros is an individual and a citizen of the State of Washington, with a domicile located at 3416 67th Avenue, University, Washington, 98466, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

232.     Plaintiff Bernadette Mele is an individual and a citizen of the State of Connecticut, who with a domicile located at 1 Meadow Road, Hamden, Connecticut, 06514, executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

233.    Plaintiff Robert Melia is an individual and a citizen of the State of Massachusetts, with a domicile located at 341 Service Road, Sandwich, Massachusetts, 02563, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

234.    Plaintiff Jimmy Menuel is an individual and a citizen of the State of Georgia, with a domicile located at 2408 Manor Way, Loganville, Georgia, 30052, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

235.    Plaintiff Miguel Mercado is an individual and a citizen of the State of New Jersey, with a domicile located at 126-128 East 23rd Street, Paterson, New Jersey, 07514, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

236.    Plaintiff Patricia Mezzacappa is an individual and a citizen of the State of New York, with a domicile located at 92 Kemball Avenue, Staten Island, New York, 10314, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

237.    Plaintiff Raymon Miller is an individual and a citizen of the State of Missouri, with a domicile located at 65 County Hwy 323, Portageville, Missouri, 63873, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

238.    Plaintiff Robert Miller is an individual and a citizen of the State of Pennsylvania, with a domicile located at 80 S. Park Avenue, Mertztown, Pennsylvania, 19539, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

239.    Plaintiff Terrance Miller is an individual and a citizen of the State of New York, with a domicile located at 65 Stewart Street, Brooklyn, New York, 11207, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

240.     Plaintiff Gary Millstein is an individual and a citizen of the State of New York, with a domicile located at 444 Woodfield Road, West, New York, 11552, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

241.     Plaintiff Elyse Mills Fletcher is an individual and a citizen of the State of Illinois, with a domicile located at 1916 Clinton Avenue, Berwyn, Illinois, 60402, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

242.     Plaintiff Katherine Milonas is an individual and a citizen of the State of Connecticut, with a domicile located at 199 Euclid Avenue, Waterbury, Connecticut, 06710, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

243.     Plaintiff Jose Mirasol is an individual and a citizen of the State of New Jersey, with a domicile located at 123 Sherman Avenue, Middlesex, New Jersey, 08846, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

244.     Plaintiff Robert Mirowski is an individual and a citizen of the State of New York, with a domicile located at 104-54 118th Street, Richmond, New York, 11419, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

245.     Plaintiff Louise Mitchell is an individual and a citizen of the State of New York, with a domicile located at 30 Meadow Lane, Pleasantville, New York, 10570, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

246.     Plaintiff Preston Monahan is an individual and a citizen of the State of Louisiana, with a domicile located at 121 Langridge Drive, Belle Chasse, Louisiana, 70037, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

247.     Plaintiff Jose Montanez is an individual and a citizen of the State of New Jersey, with a domicile located at 485 Farnham Avenue, Lodi, New Jersey, 07644, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

248.     Plaintiff Shea Morris is an individual and a citizen of the State of New York, with a domicile located at 31 Marvin Avenue, Hempstead, New York, 11550, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

249.    Plaintiff Richard Murphy is an individual and a citizen of the State of West Virginia, with a domicile located at 104 Jeremy Drive, Hedgesville, West Virginia, 25427, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

250.    Plaintiff John Muscat is an individual and a citizen of the State of Florida, with a domicile located at 3646 Amelia Island Lane, Davie, Florida, 33328, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

251.    Plaintiff Dawn Muth is an individual and a citizen of the State of Virginia, with a domicile located at 5500 Creek Crossing Drive, Midlothian, Virginia, 23112, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

252.    Plaintiff Daniel Najjar is an individual and a citizen of the State of Maryland, with a domicile located at 13234 Music Master Drive, Silverspring, Maryland, 20904, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

253.    Plaintiff Dominic Napoli is an individual and a citizen of the State of Maine, with a domicile located at 169 Hilltop Drive, Corinna, Maine, 04928, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

254.    Plaintiff Kristene Neal is an individual and a citizen of the State of New Jersey, with a domicile located at 53 Somers Avenue, Bergenfield, New Jersey, 07621, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

255.    Plaintiff Jaquer Neto is an individual and a citizen of the State of Massachusetts, with a domicile located at 11 Bellevue, Brockton Massachusetts, 02302, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

256.     Plaintiff Gail Neube is an individual and a citizen of the State of New York, with a domicile located at 145 Broadway, Staten Island, New York, 19025, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

257.     Plaintiff Richard Neuheisel is an individual and a citizen of the State of Arizona, with domiciles located at 2109 E. Balboa Drive, Tempe Arizona, 85282 and 3388 Crosby Drive, Pinetop, Arizona, 85935, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate(s). At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

258.     Plaintiff Hoa Nguyen is an individual and a citizen of the State of Oregon, with a domicile located at 11806 Se Aerie Cresent Road, Happy Valley, Oregon, 97086, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

259.     Plaintiff Hoang Nguyen is an individual and a citizen of the State of Maryland, with a domicile located at 200 Hannes Street, Silver Spring, Maryland, 20901, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

260.     Plaintiff Rose Noah is an individual and a citizen of the State of Oregon, with a domicile located at 8120 6th Street, Terrebonne, Oregon, 97760, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

261.     Plaintiff Michael Novitch is an individual and a citizen of the State of Arizona, with a domicile located at 4932 East Calle Del Norte, Phoenix, Arizona, 85018, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

262.    Plaintiff Elaine Nurse is an individual and a citizen of the State of New Jersey, with a domicile located at 1740 Elk Street, Piscataway, New Jersey, 08854, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

263.    Plaintiff Alexander Obuobisa is an individual and a citizen of the State of New Jersey, with a domicile located at 156 West Street, Englewood, New Jersey, 07631, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

264.    Plaintiff Miguel Ochoa is an individual and a citizen of the State of Maryland, with a domicile located at 3947 Susanna Road, Randallstown, Maryland, 21133, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

265.    Plaintiff Samuel Ohene is an individual and a citizen of the State of New York, with a domicile located at 739 East 21st, Bronx, New York, 10467, who executed a Promissory Note in

favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

266.    Plaintiff Marsha Osborn is an individual and a citizen of the State of Washington, with a domicile located at 6241 S. Wapapo Lake Drive, Tacoma, Washington, 98408, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

267.    Plaintiff James Owusu is an individual and a citizen of the State of New Jersey, with a domicile located at 33 Berwick Lane, Sicklerville, New Jersey, 08081, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

268.    Plaintiff Magaly Cruz Ozawa is an individual and a citizen of the State of Nevada, with a domicile located at 10225 San Giano Place, Las Vegas, Nevada, 89144, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

269.     Plaintiff Lisa Palladino is an individual and a citizen of the State of New York, with a domicile located at 1024 Martinstein Avenue, Bay Shore, New York, 11706, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

270.     Plaintiff Eithne Pasalic is an individual and a citizen of the State of New York, with a domicile located at 7 Parkway, Larchmont, New York, 10538, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

271.     Plaintiff Robert Pawlik is an individual and a citizen of the State of New York, with a domicile located at 184 Christopher Drive, West Seneca, New York, 14224, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

272.     Plaintiff Arnetta Paylings is an individual and a citizen of the State of Virginia, with a domicile located at 120 Rollingswood Road, Chesapeake, Virginia, 23325, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

273.     Plaintiff Darryl Peck is an individual and a citizen of the State of Massachusetts, with a domicile located at 2 Indian Road, Dudley, Massachusetts, 01571, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

274.     Plaintiff Terry Peteete is an individual and a citizen of the State of Missouri, with a domicile located at 3401 Harrison Street, Kansas City, Missouri, 64109, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

275.     Plaintiff Alvin Peters is an individual and a citizen of the State of Maryland, with a domicile located at 3007 Tinker Drive, Fort Washington, Maryland, 20744, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

276.     Plaintiff Thi Peterson is an individual and a citizen of the State of Oregon, with a domicile located at 7211 SE Powell Boulevard, Portland, Oregon, 97206, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

277.     Plaintiff Melanie Petterson is an individual and a citizen of the State of Virginia, with a domicile located at 8645 Beck Lane, Manassas, Virginia, 20110, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

278.     Plaintiff John Petzinger is an individual and a citizen of the State of New Jersey, with a domicile located at 70 Main Street, Flanders, new Jersey, 07826, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

279.     Plaintiff Kevin Pfau is an individual and a citizen of the State of Connecticut, with a domicile located at 30 Plumtrees Road, Gothel, Connecticut, 06801, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

280.     Plaintiff Souphahn Phonxanasinh is an individual and a citizen of the State of Illinois, with a domicile located at 230 Stonehurst Drive, Elgin, Illinois, 60120, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

281.     Plaintiffs Louis and JoAnne Piccone are individuals and citizens of the State of New York, with a domicile located at 325 N. Forest, Williamsville, New York, 14221, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

282.     Plaintiff Daryl Piesto is an individual and a citizen of the State of Maryland, with a domicile located at 412 Samanthas Court, Reistertown, Maryland, 21136, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

283.     Plaintiff Nancy Piroeff is an individual and a citizen of the State of Pennsylvania, with a domicile located at 15 Springton Pointe, Newton, Pennsylvania, 19073, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

284.     Plaintiff Jeannie Pogi is an individual and a citizen of the State of Hawaii, with a domicile located at 91-1389 Kamahoi Street, Ewa Beach, Hawaii, 18080, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

285.     Plaintiff Marcel Poliquin is an individual and a citizen of the State of Washington, with a domicile located at 141 NE Rainer Place, Belfair, Washington, 98528, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

286.     Plaintiff Marianne Pollard-Bowers is an individual and a citizen of the State of Michigan, with a domicile located at 420 Cartwright Street, South Haven, Michigan, 49090, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

287.     Plaintiff Linda Powell is an individual and a citizen of the State of Illinois, with a domicile located at 5333 S. Hyde Park Boulevard, Chicago, Illinois, 89131, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

288.     Plaintiff Janet Powell is an individual and a citizen of the State of Connecticut, with a

domicile located at 98 Dunn Avenue, Standford, Connecticut, 06905, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

289.     Plaintiff Kimberly Queisser is an individual and a citizen of the State of Wisconsin, with

a domicile located at 405 Mary Street, Beaver Dam, Wisconsin, 53916, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

290.     Plaintiff Cyrus Quinn is an individual and a citizen of the State of Florida, with a

domicile located at 3471 Main Hwy #901, Miami, Florida, 33133, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

291.     Plaintiff James Quinn is an individual and a citizen of the State of Florida, with a

domicile located at 2801 Augusta Drive, Homestead, Florida, 33035, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

292.     Plaintiff Frank Reagan is an individual and a citizen of the State of Florida, with a domicile located at 3003 Limbo Lane #6-102, Kissimmee, Florida, 34746, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

293.     Plaintiff Wallingford Reid is an individual and a citizen of the State of New York, with a domicile located at 16327 Phroame Avenue, Jamaica, New York, 11433, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

294.     Plaintiff Lincoln Resauladin is an individual and a citizen of the State of New York, with a domicile located at 111-38 125th Street, South Ozone Park, New York, 11420, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

295.    Plaintiff Jodi Richardson is an individual and a citizen of the State of Massachusetts, with a domicile located at 1 Margaret Lane, Billerica, Massachusetts, 01821, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

296.    Plaintiff Cynthia Roberts is an individual and a citizen of the State of Connecticut, with a domicile located at 93 Beta Anne Circle, Meriden, Connecticut, 06450, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

297.    Plaintiff Larry Robles is an individual and a citizen of the State of New York, with a domicile located at 49 Leopold Avenue N., Islip, New York, 11795, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

298.    Plaintiff Antoinetta Rodriguez is an individual and a citizen of the State of Florida, with a domicile located at 5272 Abelia Drive, Orlando, Florida, 32819, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

299.    Plaintiff Ernest Rodriguez is an individual and a citizen of the State of New York, with a domicile located at 30 Finnerty Place, Putnam Valley, New York, 10579, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

300.    Plaintiff Geronimo Rodriguez is an individual and a citizen of the State of New Jersey, with a domicile located at 576 Harding Avenue, Perth Amboy, New Jersey, 08861, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

301.     Plaintiff Milagros Rodriguez is an individual and a citizen of the State of Connecticut, with a domicile located at 106 Corey Street, Windsor, Connecticut, 06095, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

302.     Plaintiff Russell Rood is an individual and a citizen of the State of Connecticut, with a domicile located at 40 Charles Street, Naugatuck, Connecticut, 06770, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

303.     Plaintiff Roberta Rosdeitcher is an individual and a citizen of the State of New York, with a domicile located at 225J Signs Road, Staten Island, New York, 10314, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

304.     Plaintiff Diane Rowden is an individual and a citizen of the State of Florida, with a domicile located at 10350 Fulton Avenue, Brooksville, Florida, 34613, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

305.    Plaintiff Stephen Ryder is an individual and a citizen of the State of Massachusetts, with a domicile located at 150 Franklin Street, Braintree, Massachusetts, 02184, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

306.    Plaintiff Michael Sanders is an individual and a citizen of the State of Maryland, with a domicile located at 21343 Caraway Place, Lexington Park, Maryland, 20653, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

307.    Plaintiff Martin Santana is an individual and a citizen of the State of Nevada, with a domicile located at 10232 Punch Bowl Falls, Las Vegas, Nevada, 89131, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

308.    Plaintiff Claude C. Scarborough, Jr. is an individual and a citizen of the State of Pennsylvania, with a domicile located at 1000 Church Road, Wyncote, Pennsylvania, 19095, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

309.    Plaintiff Steve Schuster is an individual and a citizen of the State of Michigan, with a domicile located at 5160 Otter Lake Road, Otter Lake, Michigan, 48464, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

310.    Plaintiff Linda Schmidt is an individual and a citizen of the State of Illinois, with a domicile located at 720 Pine Street, Winnetka, Illinois, 60093, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

311.     Plaintiff Vincent Schwartz is an individual and a citizen of the State of Wisconsin, with a domicile located at 119 E. Cane Street, Fort Washington, Wisconsin, 53074, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

312.     Plaintiff Gerald Sciascia is an individual and a citizen of the State of New Jersey, with a domicile located at 579 Valley Road, Clark, New Jersey, 07066, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

313.     Plaintiff Timothy Seeberger is an individual and a citizen of the State of Pennsylvania, with a domicile located at 20 Breyer Court, Elkins Park, Pennsylvania, 19027, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

314.    Plaintiff Jane Sforza is an individual and a citizen of the State of Massachusetts, with a domicile located at 192 Franklin Street, Whitman, Massachusetts, 02382, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

315.    Plaintiff Shaneisa Shelton is an individual and a citizen of the State of Virginia, with a domicile located at 1704 Butterchurn Court, Virginia Beach, Virginia, 23456, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

316.    Plaintiff Michele Shepherd is an individual and a citizen of the State of Maryland, with a domicile located at 1125 Scenic Way, Saint Leonard, Maryland, 20685, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

317.    Plaintiff Annette Sherman is an individual and a citizen of the State of Florida, with a domicile located at 743 W. Moreland Road, Daytona Beach, Florida, 32114, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

318.     Plaintiff Lawrence Shombert is an individual and a citizen of the State of Maryland, with a domicile located at 203 Prettyman Drive, Rockville, Maryland, 20850, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

319.     Plaintiff Allan Silverman is an individual and a citizen of the State of New Jersey, with a domicile located at 8 Highview Road, Jersey City, New Jersey, 07305, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

320.     Plaintiff Karen Simpson is an individual and a citizen of the State of New Jersey, with a domicile located at 37 Concord Avenue, Mercerville, New Jersey, 08619, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

321.     Plaintiff Tyrone Simpson is an individual and a citizen of the State of Massachusetts, with a domicile located at 336 Somerset Avenue, Taunton, Massachusetts, 02780, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

322.     Plaintiff Amarnauth Singh is an individual and a citizen of the State of New York, with a domicile located at 79-13 Pitkin Avenue, Ozone Park, New York, 11417, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

323.     Plaintiff Bouasy Sisattanalay is an individual and a citizen of the State of Washington, with a domicile located at 938 South 32rd Place, Renton, Washington, 98055, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

324.    Plaintiff Sandford Skolnik is an individual and a citizen of the State of New Jersey, with a domicile located at 1454 Golden Hemlock Way, Toms River, New Jersey, 08753, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

325.    Plaintiff Dolores Slinski is an individual and a citizen of the State of New Jersey, with a domicile located at 191 Fulton Street, Woodbridge, New Jersey, 07095, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

326.    Plaintiff Cliff Smith is an individual and a citizen of the State of Washington, with a domicile located at 21615 Cottonwood Drive, Kennewick, Washington, 99338, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

327.     Plaintiff Jaime Smith is an individual and a citizen of the State of New Jersey, with a

domicile located at 2183 N. Tower Butte Drive, St. George, New Jersey, 84770, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

328.     Plaintiff Louis Smith is an individual and a citizen of the State of New York, with a

domicile located at 791 Linwood Street, Brooklyn, New York, 11208, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

329.     Plaintiff Sheila Smith is an individual and a citizen of the State of New York, with a

domicile located at 2218 Seward Avenue, Bronx, New York, 10473, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January

1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real

estate. At all times material hereto, Defendants, their agents, servants, employees, or others with

whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or

capacity over processing the loan, Promissory Note and Mortgage.

330.     Plaintiff Earline Smith is an individual and a citizen of the State of South Carolina, with a

domicile located at 961 West Dixie Street, Florence, South Carolina, 29501, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

331.    Plaintiff Darell Smith is an individual and a citizen of the State of California, with a domicile located at 6725 Pallazzo Way, Elkgrove, California, 95757, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

332.    Plaintiff Elizaveta Smolovik is an individual and a citizen of the State of New York, with a domicile located at 2919 Brighton 8 Street, Apt. 4B, Brooklyn, New York, 11235, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

333.    Plaintiff Shelley Sokolowski is an individual and a citizen of the State of Wisconsin, with a domicile located at 11201 West Carroll Circle, Franklin, Wisconsin, 53132, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

334.     Plaintiff Joseph Somma is an individual and a citizen of the State of New Jersey, with a domicile located at 777 Eltona Road, Jackson, New Jersey, 08527, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

335.     Plaintiff Jesus Sosa is an individual and a citizen of the State of New Mexico, with a domicile located at 7909 Tennyson Street NE, Albuquerque, New Mexico, 87122, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

336.     Plaintiff Mara Spade is an individual and a citizen of the State of West Virginia, with a domicile located at 386 Gunpowder Lane, Inwood, West Virginia, 25428, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

337.  Plaintiff Elizabeth Spangler is an individual and a citizen of the State of Maryland, with a domicile located at 89 Byron Drive, Smithsburg, Maryland, 21783, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

338.  Plaintiff Carson Steltz is an individual and a citizen of the State of New Jersey, with a domicile located at 1221 Prospect Drive, Linden, New Jersey, 07036, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

339.  Plaintiff James Stevenson is an individual and a citizen of the State of Maryland, with a domicile located at 1 Tindale Springs Court, Montgomery Village, Maryland, 20886, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

340.     Plaintiff Tony Steward is an individual and a citizen of the State of New York, with a

domicile located at 3865 Wildwing Drive, Wheatfield, New York, 14120, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

341.     Plaintiff Allison Stoveken is an individual and a citizen of the State of New Jersey, with a

domicile located at 351 Stone Town Road, Ringwood, New Jersey, 07456, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

342.     Plaintiff Kathryn Sullivan is an individual and a citizen of the State of Maryland, with a

domicile located at 1075 Long Valley Road, Westminster, Maryland, 21158, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

343.     Plaintiff Pamela Swaby is an individual and a citizen of the State of Maryland, with a

domicile located at 309 Gadwall Court, Haverty Grace, Maryland, 20178, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, hers with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

344.    Plaintiff Calvin Swearingin is an individual and a citizen of the State of Oregon, with a domicile located at 1135 Satara Avenue NW, Salem, Oregon, 97304, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

345.    Plaintiff Jean Tanis is an individual residing in the State of New York, with a domicile located at 104-39 209 Street, Queens Village, New York, 11429, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

346.    Plaintiff Sanford Tavelli is an individual and a citizen of the State of Massachusetts, with a domicile located at 13 Meadow Lane, Southwick, Massachusetts, 01077, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

347.    Plaintiff James Taylor is an individual and a citizen of the State of Illinois, with a domicile located at 11107 W. Riviera Drive, Spring Grove, Illinois, 60081, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

348.    Plaintiff Michael Taylor is an individual and a citizen of the State of Maryland, with a domicile located at 117 Automotive Drive, Elkton, Maryland, 21921, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

349.    Plaintiff Karma Tharchin is an individual and a citizen of the State of New York, with a domicile located at 34-57 91st Street, Jackson Heights, New York, 11372, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

350.    Plaintiff Jean Thompson is an individual and a citizen of the State of Massachusetts, with a domicile located at 30 Wentworth Road, Canton, Massachusetts, 02021, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

351.    Plaintiff John Thorkildson is an individual and a citizen of the State of Washington, with a domicile located at 6514 NE 224th Avenue, Vancouver, Washington, 98682, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

352.    Plaintiff Eugene Torres is an individual and a citizen of the State of Virginia, with a domicile located at 1413 Gravatt Way, Midlothian, Virginia, 23114, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

353.    Plaintiff Gary Trainer is an individual and a citizen of the State of New Jersey, with a domicile located at 141 Davenport Drive, Chesterfield, New Jersey, 08515, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

354.     Plaintiff Carolyn Traub is an individual and a citizen of the State of Indiana, with a domicile located at 585 Camelot Drive, Seymour, Indiana, 47274, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

355.     Plaintiff Anthony Tristano is an individual and a citizen of the State of Florida, with a domicile located at 110 Scott Street, Massapequa, New York, 11762, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

356.     Plaintiff Janell Tschosik is an individual and a citizen of the State of Washington, with a domicile located at 1817 NW 26th Avenue, Camas, Washington, 98607, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

357.     Plaintiff John Turman is an individual and a citizen of the State of Kentucky, with a domicile located at 8 Vantage View Circle, Covington, Kentucky, 41017, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

358.     Plaintiff Steven Turnquist is an individual and a citizen of the State of Texas, with a domicile located at 7917 Big View Drive, Austin, Texas, 78730, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

359.     Plaintiff Danuta Tylinska is an individual and a citizen of the State of New York, with a domicile located at 54 Lake Marie Lane, Bedford Hill, New York, 10507, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

360.    Plaintiff Keith Tyrer is an individual residing in the State of New York, with a domicile located at 37 Ellen Street, River Head, New York, 11901, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

361.    Plaintiff Allan Vannatta is an individual residing in the State of Illinois, with a domicile located at 435 Saint Charles Road, Glen Ellyn, Illinois, 60137, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

362.    Plaintiff Juan Velez is an individual and a citizen of the State of Connecticut, with a domicile located at 18 Fairview Street, Willimantic, Connecticut, 06226, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

363.    Plaintiff James A. Vigil is an individual residing in the State of Illinois, with a domicile located at 987 Tanager Court, Antioch, Illinois, 60002, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

364.    Plaintiff Stacey Vitale is an individual and a citizen of the State of New Jersey, with a domicile located at 124 Lakeview Avenue, Little Ferry, New Jersey, 07643, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

365.    Plaintiff Thuy Vo is an individual and a citizen of the State of Oregon, with a domicile located at 8724 SE Clinton Street, Portland, Oregon, 97266, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

366.    Plaintiff Michael Vogrin is an individual and a citizen of the State of Maryland, with a domicile located at 3603 Rexmere Road, Baltimore, Maryland, 21218, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

367.     Plaintiff Lewis Wagoner is an individual and a citizen of the State of Washington, with a domicile located at 2516 Olympic Drive, Oak Harbor, Washington, 98277, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

368.     Plaintiff Kevin Wakeman is an individual and a citizen of the State of Connecticut, with a domicile located at 5 Millbrook Road, Bethel, Connecticut, 06801, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

369.     Plaintiff Reynold Walbrook is an individual and a citizen of the State of Maryland, with a domicile located at 10103 Worrell Place, Glenn Dale, Maryland, 20769, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

370.     Plaintiff Reid Wallingford is an individual and a citizen of the State of Maryland, with a domicile located at who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

371.     Plaintiff William Watkins is an individual and a citizen of the State of Pennsylvania, with a domicile located at 61 Hunt Drive, Horsham, Pennsylvania, 19044, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

372.     Plaintiff Anthony Wedo is an individual and a citizen of the State of Pennsylvania, with a domicile located at 112 Montana Drive, Chadds Ford, Pennsylvania, 19317, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

373.     Plaintiff Stephen Weiss is an individual and a citizen of the State of Pennsylvania, with a domicile located at 1521 Valmont Street, Pittsburgh, Pennsylvania, 15217, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

374.     Plaintiff Kestner White is an individual and a citizen of the State of New York, with a domicile located at 242-24 130th Avenue, Rosedale, New York, 11422, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

375.     Plaintiff Angelette White-Green is an individual and a citizen of the State of Michigan, with a domicile located at 433 S. Huron Street, Ypsilanti, Michigan, 48197, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

376.     Plaintiff Wendy Wicks is an individual and a citizen of the State of Maryland, with a

domicile located at 4506 Old Branch Avenue, Temple Hill, Maryland, 20748, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

377.     Plaintiff Kathy Wilson is an individual and a citizen of the State of Colorado, with a

domicile located at 159 Sortais, Durango, Colorado, 81301, who executed a Promissory Note in

favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001

and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate.

At all times material hereto, Defendants, their agents, servants, employees, or others with whom

they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity

over processing the loan, Promissory Note and Mortgage.

378.     Plaintiff Sheldon Wilson is an individual and a citizen of the State of Florida, with a

domicile located at 178 Osprey Hammock Trail, Sanford, Florida, 32771, who executed a

Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates,

between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a

Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or

Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

379.     Plaintiff Linda Wolcott is an individual and a citizen of the State of Virginia, with a

domicile located at 3350 Pineacre Drive, Powhatan, Virginia, 23139, who executed a Promissory

Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on her real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

380. Plaintiff Eric Wright is an individual and a citizen of the State of New Jersey, with a domicile located at 44 Lippincott Avenue, Long Branch, New Jersey, 07740, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

381. Plaintiff Randy Zebendon is an individual and a citizen of the State of Connecticut, with a domicile located at 9 Pasture Lane, Shelton, Connecticut, 06484, who executed a Promissory Note in favor of the Defendants, or one of them, or its subsidiaries or affiliates, between January 1, 2001 and December 31, 2009, which Promissory Note was secured by a Mortgage on his real estate. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control or capacity over processing the loan, Promissory Note and Mortgage.

382. Further, at all times material hereto, Defendants have acted as servicer or in another capacity with respect to loan processing. All of the foregoing secured real estate loans made to Plaintiffs were wrongfully and fraudulently handled and processed by Defendants, their agents, servants, employees, or others with whom they acted in concert, resulting in damages.

383.     Plaintiffs' counsel is aware of and has provided services to unnamed ROE Plaintiffs, each of whom has sustained actual injury. The unnamed Roes sue under their names fictitiously because they either wish to maintain their privacy or because Plaintiffs' counsel have not completed the due diligence necessary to properly plead their claims as of the filing of this Complaint. From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining Roe Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional Roe Plaintiffs, or will follow such other process as is prescribed by the Court.

384.     An additional large number of persons have contacted counsel or their staffs pertaining to the matters complained of herein.  In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion to add such parties to this action.

385.     In the event Plaintiffs file a separate lawsuit appertaining to all or any of these unnamed persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases in accordance with New York law, or as otherwise directed by the Court.

386.     Defendant American Home Mortgage Servicing, Inc. ("AHMSI") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

387.     Defendant Countrywide Financial Corporation ("Countrywide") is registered to do business as a foreign corporation by and within the State of New York. At all times material

hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

388.     Defendant Countrywide Home Loans, Inc. ("Countrywide Home Loans") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

389.     Defendant Bank of America, N.A. ("Bank of America") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

390.     Defendant One Main Financial (formerly known as Citi Financial) is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

391.     Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

392.     Defendant Saxon Mortgage is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

393.     Defendant Equifirst is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

394.     Defendant Green Tree Servicing, LLC ("Green Tree Servicing") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

395.     Defendant Flagstar Mortgage Corporation, d/b/a Flagstar Bank ("Flagstar Bank") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

396.     Defendant The Bank of New York ("The Bank of New York") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

397.     Defendant Severus, Inc. ("Severus") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

398.     Defendant JPMorgan Chase & Co., Inc. ("Chase") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto,

Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

399.     Defendant First Mariner Bank ("First Mariner") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

400.     Defendant American Home Mortgage is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

401.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

402.     Defendant Aurora Loan Services ("Aurora") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

403.     Defendant Bay View Loan Servicing, LLC ("Bay view") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

404.    Defendant BB&T Corporation ("BB&T") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

405.    Defendant Coldwell Banker is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

406.    Defendant HSBC Mortgage Services ("HSBC") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

407.    Defendant Cenlar is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

408.    Defendant CitiMortgage, Inc. ("CitiMortgage) is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

409.    Defendant EquiFirst Corporation ("Equifirst") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their

agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

410.　　Defendant Freemont Mortgage ("Freemont") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

411.　　Defendant Wells Fargo is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

412.　　Defendant GMAC Mortgage is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

413.　　Defendant Litton Loan Servicing, LP ("Litton Loan Servicing") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

414.　　Defendant Emigrant Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

415.     Defendant IndyMac, a division of One West Bank, is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

416.     Defendant Loan Care Servicing Center, Inc. ("Loan Care Servicing") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

417.     Defendant M&T Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

418.     Defendant MGC Mortgage, Inc. ("MGC") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

419.     Defendant Beal Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

420.     Defendant NationStar Mortgage is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents,

servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

421.     Defendant Ocwen Financial Corporation is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

422.     Defendant PNC Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

423.     Defendant Regions Mortgage ("Regions") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

424.     Defendant SLS Mortgage, Inc. is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

425.     Defendant Select Portfolio Servicing, Inc. ("Select Portfolio") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

426.     Defendant Credit Suisse Group is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

427.     Defendant Sovereign Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

428.     Defendant State Farm Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

429.     Defendant U.S. Bank is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

430.     Defendant Veriquest is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

431.     Defendant Wealthbridge is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants,

employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

432.     Defendant Carrington Mortgage Services, LLC ("Carrington Mortgage") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

433.     Defendant SunTrust Banks, Inc. ("SunTrust") is registered to do business as a foreign corporation by and within the State of New York. SunTrust does business within the county of Kings, State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

434.     Defendant HFB Beneficial is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

435.     Defendant GMAC d/b/a Ally Financial ("Ally Financial") is registered to do business as a foreign corporation by and within the State of New York. At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan.

436.     Defendant MERSCORP, Inc. ("MERSCORP") is registered to do business as a foreign corporation by and within the State of New York. MERSCORP is owned by many of the most significant stakeholders in the mortgage industry, including mortgage originating and servicing companies *(e.g.,* Bank of America, N.A., Chase Home Mortgage Corporation of the Southeast,

Wells Fargo Bank, N.A., CitiMortgage, Inc., GMAC Residential Funding Corporation), government sponsored entities *(e.g.,* the Federal National Mortgage Association, known as "Fannie Mae," and the Federal Home Loan Mortgage Corporation, known as "Freddie Mac"), mortgage insurance and title companies *(e.g.,* First American Title Insurance Corporation and PMI Mortgage Insurance Company), and the Mortgage Bankers Association. MERSCORP owns and operates an electronic registry system that purports to track the ownership and servicing rights of its members in residential mortgage loans ("the MERS System"). At all times material hereto, Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan. There are over 3,000 members of MERSCORP.

437.     The Defendant, JOHN DOES (1-100) are individuals, association or entities, the exact identities of which are unknown to Plaintiffs, who are, among other things, mortgage lenders with headquartered and/or doing business in the State of New York. At all times material hereto, the Doe Defendants, their agents, servants, employees, or others with whom they acted in concert, have acted as Originator, Lender, or Servicer in some control capacity over processing the loan. Each of the Doe Defendants was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth herein.

## C. PRELIMINARY STATEMENT

438.     The Defendants, jointly and severally, their agents, servants, employees, or others with whom they acted in concert, intentionally and/or negligently participated in a common plan and scheme (hereafter "THE ENTERPRISE"), concealing material facts from the Plaintiffs.

[a]     The ENTERPRISE, *inter alia,* induced Plaintiffs to enter into mortgages based upon valuations which the Defendants knew or should have known to be inaccurate, which

valuations were conducted in an improper and unprofessional manner, and which valuation methodologies were protested in writing by national organizations of real estate assessors.

[b]   The ENTERPRISE, *inter alia*, created MERS and never disclosed to Plaintiffs that MERS would be used to avoid local recordation statutes and real estate trade custom.

[c]   Nor did the ENTERPRISE disclose to the Plaintiffs the material fact that the purpose and intent of MERS was be to enable Defendants to transfer, bundle, package and sell mortgages to investors, without regard to the valuation of the properties or the lending standards utilized by the Defendants.

[d]   At the same time Defendants were transferring, bundling, packaging and selling mortgages to investors, Defendants were betting against the viability of the very same mortgages by purchasing other financial instruments such as credit default swaps.

439.   The Defendants, jointly and severally, their agents, servants, employees, or others with whom they acted in concert, intentionally and/or negligently participated in a common plan and scheme (THE ENTERPRISE), deceiving and keeping material facts from the public and from regulators, either directly or as successors-in-interest to the business acquired from others.

440.   The Defendants, jointly and severally, their agents, servants, employees, or others with whom they acted in concert, each developed, carried out, acquiesced in, completed, furthered, ratified and/or confirmed their ENTERPRISE and concealment directly, or as a successor-in-interest, and each Defendant performed or has sought to benefit from tortious acts of their own and/or of others, for its own monetary gain.

441.   In many instances, *inter alia*, the Defendants do not have in their possession, custody or control, the original or an authentic copy of the promissory notes or other indicia of realty rights

regarding the Plaintiffs or their property. Upon information and belief, Defendants have made demand for payment on the Plaintiffs, with respect to notes, mortgages and/or Plaintiffs properties, at a time when Defendants are incapable of establishing (and do not have any credible knowledge regarding) who possesses and/or owns the promissory notes or mortgages Defendants are purportedly servicing, or for which they have made improper and unlawful demand upon the Plaintiffs.

442.     Upon information and belief, all or most all of the Defendants are members of, subscribers, or participants in, profited from or attempted to profit from one or all of the co-Defendants, Merscorp, MERS, Inc., and/or the MERS System.

### D. THE MERSCORP, MERS, INC., AND MERS SYSTEM DEFENDANTS

443.     MERSCORP, MERS, Inc., and the MERS System are hereafter referred to collectively herein as "MERS". MERS and the Defendants Banks, Originators, Servicers , their agents, servants, employees, or others with whom they acted in concert, are referred to collectively herein as "Defendants".

444.     The mortgage industry created MERS to allow financial institutions to evade county recording fees, avoid the need to publicly record mortgage transfers, and facilitate the rapid sale and securitization of mortgages en masse. Under the MERS construct, MERS members purportedly log all of their mortgage transfers in a private electronic registry, instead of publicly recording the transfer in the local county clerk's office. Financial institutions avoided having to record these transactions by designating MERS Inc. – a shell company with no economic interest in any mortgage loan as the nominal "mortgagee" of the loan in the public records. The basic theory behind MERS is that, because MERS Inc. services as a "nominee" (or agent) for most

major lenders, it remains the "mortgagee" in the public records regardless of how often the loan is sold or transferred among MERS members.

445.     In addition, since MERS has few or no employees (again to reduce costs), but serves as the mortgagee for tens of millions of mortgages throughout the county, it has indiscriminately, with little or no oversight, designated over 20,000 MERS member employees as MERS "certifying officers" to act on the company's behalf, expressly authorizing these individuals to assign to MERS mortgages, to execute paperwork necessary to foreclose on properties secured by MERS mortgages, and to submit proofs of claims and affidavits on behalf of MERS in bankruptcy proceedings. MERS has failed to adequately screen, train, or monitor the activities of these certifying officers, who have executed millions of important legal documents on MERS' behalf.

446.     The MERS System effectively eliminated Plaintiffs homeowners' and the public's ability to track the purchase and sale of properties through the traditional public records system. Instead, this information is now stored in a private database maintained by MERS. However, the MERS database is unreliable and inaccurate. Defendant Servicers, along with other MERS members, have intentionally and/or negligently often failed to register loan transactions in the MERS System, including transfers of ownership interests and servicing rights. Moreover, MERS did not take basic steps to ensure the data's accuracy and integrity. Nor did MERS seek to enforce their members-subscribers purported contractual obligation to register loan transactions.

447.     By creating this bizarre and complex end-around of the traditional public recording system, the Defendants placed of over 70 million mortgage loans, including millions of subprime loans, in the MERS System. As a result, the industry has saved more than $2 billion in recording fees. In addition, over the last several years, banks (including the Defendants) rapidly securitized

and sold off millions of loans, often misrepresenting the quality and nature of the mortgages being transferred.

448.    However, when the subprime mortgage crisis hit and the number of defaults and foreclosures skyrocketed around the country, the shortcomings of the MERS System and its impact on tracking a property's chain of title became readily apparent, sparking widespread litigation. The ENTERPRISE, including the creation and use of the MERS System by Defendant Servicers and other financial institutions itself resulted in a wide range of deceptive business and illegal business practices, particularly with respect to the filings of foreclosure proceedings in state courts and federal bankruptcy courts.

449.    The use of the MERS System, the negligent administration of the MERS System, coupled with faulty and sloppy document preparation and execution practices, have resulted in foreclosures being filed against homeowners where the foreclosing party lacked the authority or standing to sue. Indeed, for years MERS often lacked standing to foreclose, and representations in court submissions that MERS owned and/or held the promissory note in such proceedings were often false and deceptive.

450.    Even when foreclosures were not initiated in 'MERS' name, foreclosure proceedings involving MERS-registered loans still included deceptive submissions. Because MERS, Inc. served as the mortgagee of record, the foreclosing party needed to be assigned the mortgage in order to properly have standing before commencing civil process. In many instances, this assignment was not properly made. MERS certifying officers, including Defendant Servicers' employees and agents, have executed and submitted to court MERS mortgage assignments that contain many defects, including affirmative misrepresentations of fact, which render them false, deceptive, and/or invalid. These assignments were often automatically generated and

"robosigned" by individuals who did not review the underlying property ownership records, confirm the document's accuracy, or even read the document. These false, deceptive, and defective assignments often masked gaps in the chain of title, and the foreclosing party's inability to establish its authority to foreclose. As a result, Defendants have misled homeowners and the courts.

451.    Although there are several court decisions finding that foreclosing parties lacked standing, the issue of standing is rarely raised and litigated because most homeowners lack counsel and are unfamiliar with MERS' precise role in their loan. Indeed, a significant percentage of foreclosure actions result in default judgments.

452.    In addition, MERS' indiscriminate use of non-employee certifying officers has confused, misled, and deceived homeowners and the courts, making it even more difficult to ascertain whether a foreclosing party actually owns or holds the note and mortgage required to have the proper standing to foreclose. MERS certifying officers, including Defendant Servicers' employees and agents, have routinely executed and submitted mortgage assignments and other legal documents in court filings on behalf of MERS without disclosing that they are not MERS employees, but instead are employed by other entities, such as the mortgage servicer that filed the case or its counsel. As a further complication, the same MERS certifying officer might execute multiple documents on behalf of different parties in a single proceeding.

453.    In short, the ENTERPRISE, including but not limited to MERS' acts and/or omissions, as well as Defendants Servicers' use of the MERS System, have resulted in the filing of improper foreclosure proceedings, undermined the integrity of the judicial process, created confusion and uncertainty concerning property ownership interests, and potentially created clouds of title on

properties throughout the State of New York and elsewhere. More importantly, these acts and/or omissions have harmed the Plaintiffs.

[a]   **BACKGROUND – New York Mortgage Loans and Public Recording System**

454.    A home mortgage loan in New York, as elsewhere, is accompanied by two crucial documents: a promissory note and the mortgage. In the promissory note, the borrower agrees to pay back the loan to the owner-holder of the note. The mortgage permits the enforcement of the promissory note by establishing a security interest against the home that can be enforced through a foreclosure proceeding if the borrower defaults.

455.    The system was enacted to furnish potential purchasers with actual or at least constructive notice of previous conveyances and encumbrances that might affect their interests and uses. The system provides for public recording in the local county clerk's office whenever any estate or interest in real property is created, transferred, mortgaged or assigned, or when the title to any real property may be affected. Because the mortgage is an interest in real property, as a historical matter the creation and subsequent assignments of any mortgage were recorded in a single publicly available forum. It is well established real estate trade custom.

456.    Traditionally, the original lender for a mortgage loan retained both the promissory note and the mortgage. By doing so, the original lender benefited from the stream of income associated with the note, while at the same time protecting that income by retaining the option of foreclosing on the property under the mortgage in the event of default.

457.    Beginning in the 1990's, however, mortgage loans began to be bought and sold with increasing frequency. In particular, major investment banks and other financial institutions began purchasing enormous numbers of mortgage loans and repackaging them into mortgage-backed securities that they then sold to investors. The so-called "securitization process" typically

required multiple, separate transfers or assignments of the notes and mortgages: at minimum, from the original lenders, to several intermediate special-purpose vehicles that pooled the mortgages, and finally to securitization trusts that were created specifically to hold mortgage documents.

458.     In order to facilitate the assignments and transfers that were necessary to create these mortgage-backed securities, the mortgage finance industry sought to eliminate the cost and time required to transfer real property and mortgage interests under the well-established real estate trade custom of the statutory public recording system. To do so, the major stakeholders in the mortgage industry including lenders, servicers, investors, government-sponsored enterprises, insurance companies, and an industry associated-created MERS.

**[b]   CREATION OF MERS**

459.     MERSCORP was created in 1995 as a privately held stock company. Its shareholders include some of the major players in the mortgage industry: Bank of America, Wells Fargo Bank, N.A., Chase Home Mortgage Corporation of the Southeast, CitiMortgage, Inc., American Land Title Association, CCO Mortgage Corporation, Commercial Mortgage Securities Association, CoreLogic, Corinthian Mortgage Corporation, EverHome Mortgage Company, First American Title Insurance Corporation, GMAC Residential Funding Corporation, Guaranty Bank, HSBC Finance Corporation, MGIC Investor Services Corporation, Mortgage Bankers Association, PMI Mortgage Insurance Company, Stewart Title Guaranty Company, SunTrust Mortgage, Inc., United Guaranty Corporation, WMC Mortgage Corporation, Fannie Mae, and Freddie Mac. *See* MERS Shareholders, http://www.mersinc.org.about.shareholders.aspx (last visited July 23, 2012). Senior executives at each of the Defendant Servicers serve on the Board

of    Directors    of    MERSCORP.    *See*    MERS    Board    of    Directors    at
http://www.mersinc.org/about/bod.aspx (last visited July 23, 2012).

460.        MERS operates as a membership organization, with over 3,000 members. Many of the
companies that participate in the mortgage industry by originating loans, buying or investing in
loans, or servicing loans are members of MERS, including Defendant Servicers.

461.        The express purpose of MERS is to "eliminate the need to prepare and record
assignments    when    trading    residential    and    commercial    mortgage    loans".    *See*
http://www.mersinc.org (last visited July 23, 2012). In other words, MERS was created to allow
members to bypass the long-established real estate trade custom of the statutory public recording
system, replacing it with a private electronic registry of mortgage loans for MERS members that
purport to track the transfer of the beneficial interest in home mortgages, as well as changes in
loan servicers. In practice, Defendants did not record all transfers as purportedly contemplated
by MERS, nor did MERS seek to enforce the alleged requirement that its members/subscribers
record all transfers. MERS and the ENTERPRISE were based on a sham, false premise.

462.        Avoiding the county clerks' offices benefits MERS members, such as Defendant
Servicers, in several ways. As MERS itself touts in its promotional and instructional materials,
members can save fees of at least $30 for each loan registered with MERS. . *See*
http://www.mersinc.org/why_mers/mom.aspx (last visited July 23, 2012), for cost savings of
"hundreds of millions of dollars each year" that otherwise would be paid to the government for
recording fees. Indeed, the former MERSCORP President and CEO, R.K. Arnold, conceded
during a 2009 deposition that avoiding recording fees resulted in an estimated savings to MERS
of more than $2 billion.

463.    In addition, MERS represented to its members in promotional materials that use of the MERS System would enable members to "sell loans faster, streamline bulk acquisitions and mergers," and "shorten foreclosure times".

464.    These benefits have proven irresistible to the mortgage industry. Nearly every major bank and servicer is a member of MERS. Over 70 million mortgage loans have been registered in the MERS System, including approximately 30 million currently active loans. MERS continues to be involved in the origination of approximately 60% of all mortgage loans in the United States. MERS has indicated that its goal is to increase this number to 100%, with all mortgage originators designating MERS, Inc. as mortgagee of record.

465.    MERS members pay fees to MERS on both an annual and transactional basis, in exchange for MERS' maintenance of a national electronic database of members' mortgage transactions. Depending on their size and level of membership, MERS members may pay up to approximately $7,500 per year as a membership fee. In addition, MERS charges modest fees to register a new mortgage in the MERS System, and to register transactional changes associated with that mortgage.

**[c]    MERS' ROLE AND THE MERS SYSTEM**

466.    In a traditional mortgage, the original lender is designated as the mortgagee and thus the holder of the security interest in the home that serves as collateral for the loan. Upon executing the mortgage, the original lender records its identity and interest in the county clerk's office. If the original lender assigns the mortgage to another entity, then that entity would be responsible for recording the assignment and its own identity in the local land records.

467.    MERS becomes involved in a mortgage loan in one of two ways. First, for the vast majority of loans registered in the MERS System, MERS, Inc. is designated in the original

mortgage document as the mortgagee of record, creating a so-called MERS-as-Original-Mortgagee (or "MOM") mortgage. Typically, the mortgage will state that "MERS is the mortgagee under this Security Instrument" and that "MERS is a separate corporation that is acting solely as a nominee [*i.e.*, limited agent] for Lender and Lender's successors and assigns". *See* MOM Loans, at http://www.mersinc.org/why_mers/mom.aspx (last visited July 23, 2012). MOM mortgages also usually state, "MERS holds only legal title to the rights granted by [borrower] in this Security Instrument, but, if necessary to comply with law or customs, MERS (as nominee for Lender and Lender's successors and assigns) has the right: (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property, and (B) to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument". (see In Re Agard, 444 B.R. 231, E.D.N.Y. (2011); "... the fact that MERS is named 'nominee' in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any "authority to act".)

468.    Second, in the absence of a MOM mortgage, MERS, Inc. may also become the mortgagee through an assignment after origination. These mortgages were referred to as a MERS-as-Assignee mortgage, or a "MA" mortgage. *See* MERS by Assignment, at http://www.mersinc.org/why_mers/byassignment.aspx (last visited July 23, 2012). Only a small percentage of New York loans registered in the MERS System are MA mortgages.

469.    In furtherance of the ENTERPRISE, MERS, Inc. is designated as the mortgagee for the subject property but only for the narrow purpose of being named in the public records as such. MERS has long disclaimed any other material interest in home loans; it does not own the underlying note or receive any payments from homeowners under the note, and despite being the technical "mortgagee" it does not directly benefit from any of the substantive provisions of the

mortgage. MERS also generally does not maintain any of the crucial loan records, such as the note, the mortgage, intermediate assignments, or payment records.

470.    Designating MERS, Inc. as the mortgagee of record purportedly excuses MERS members from publicly recording mortgage assignments between themselves and, thus, from paying recording fees. According to MERS, once MERS, Inc. is designated as the mortgagee of record with respect to any given mortgage, subsequent transfers between MERS members of the beneficial interest in the mortgage loan or servicing rights need not be separately recorded with the county clerk's office since MERS, Inc., for purposes of recorded title, remains the mortgagee of record. Through this device, MERS members, including Defendant Servicers, have avoided publicly recording mortgage assignments between each other, under the rationale that the recorded title holder of the mortgage (i.e., MERS, Inc.) has not changed, even if the holder of the mortgage's beneficial interest has changed.

471.    Rather than recording information in the county clerk's offices, MERS members, including Defendant Servicers, are instead supposed to register transactional and other information about MERS mortgages in the MERS System itself. Under MERS' Rules of Membership, members "shall promptly, or as soon as practical, register on the MERS System" the following transactions, among other things: "the transfer of beneficial ownership of a mortgage loan", the transfer, registration, or creation of servicing or sub-servicing rights, the initiation of foreclosures on registered mortgage loans, the release of a lien on a registered loan, and "any renewal, extension or modification of a mortgage loan… that involves the recording of a new security instrument". MERSCORP itself does little more than maintain this database for its members.

472.    Homeowners, the general public, and the courts do not have access to the vast majority of information maintained on the MERS System, including records reflecting the sale of mortgage loans from one financial institution to another.

473.    Thus, as a result of the ENTERPRISE, including the creation of MERS, one can no longer look to the public recording system as a reliable source for tracking the chain of title for a loan or for identifying the current beneficial owner of the mortgage. Although financial institution members are supposed to update the MERS System to reflect this information, MERS intentionally and/or negligently never enforced that requirement and instead relied on its members to voluntarily register transactions. MERS was administratively negligent and did not take sufficient steps to ensure that its members did so or that MERS System data were current and accurate, directly harming the Plaintiffs thereby.

**[d]    MERS CERTIFYING OFFICERS**

474.    Although MERS, Inc. is the mortgagee of record for tens of millions of mortgages in the United States, the company itself has few or no employees. Its parent, MERSCORP, has historically employed only approximately 50 people, with a recent increase to approximately 70 employees. Yet, MERS, Inc. "appears" in countless New York Foreclosure Proceedings and mortgage documents as a result of its indiscriminate use of a certification procedure through which MERS freely delegates its authority to take action to over 20,000 "certifying officers" (also referred to as "signing officers" or "limited signing officers"). Defendant Servicers alone have well over 1000 employees who serve as MERS certifying officers. These certifying officers are not MERS employees, are not supervised or compensated by MERS, do not participate in the governance or the day-to-day operation of MERS, and do have any of the duties generally associated with a corporate officer. Instead, they are employees of MERS members, including

Defendant Servicers, or third party vendors that contract with MERS members to perform loan servicing and foreclosure-related services.

475.     MERS issues pro forma "corporate resolutions" designating these individuals as "certifying officers" of MERS. This designation occurs essentially upon the members' demand; MERS historically performed no background or other checks on the identities or qualifications of "certifying officer" candidates, and provided them with no formal training or oversight. Indeed, most certifying officers have little to no familiarity with MERS or its functions.

476.     Nonetheless, MERS expressly authorizes its certifying officers to execute paperwork necessary to initiate foreclosure actions, to endorse checks made payable to MERS, and to execute mortgage assignments, lien releases, loan modification agreements, and proofs of claims or other bankruptcy-related documents.

477.     In thousands of foreclosure proceedings, MERS certifying officers, including employees and agents of Defendant Servicers, have purported to act on behalf of MERS to, among other things, initiate foreclosures, execute mortgage assignments, and sign sworn statements. In many of these proceedings, these same individuals also take action and execute documents on behalf of their employers, often Defendant Servicers, leading to the widespread confusion discussed below.

478.     MERS does not manage or supervise the conduct of its certifying officers, notwithstanding that these officers act as MERS' agents. Nor do the certifying officers ever seek to obtain permission or approval from MERS prior to executing or filing legal documents beyond the initial corporate resolution that allows them to act on MERS' behalf. Nor do the certifying officers have access to the loan files. Despite having procedures to discipline certifying officers and members who fail to comply with MERS' Rules of Membership or applicable law, upon

information and belief, MERS has rarely, if ever, disciplined a certifying officer or member for abuses or violations of law.

479.     Indeed, the very structure of MERS gives it little incentive to be concerned about the actions of its certifying officers; MERS members agree to indemnify MERS "against all loss, liability and expenses, which they may sustain as a result of any and all actions taken by MERS certifying officers.

480.     In essence, the certifying officers adopt the authority of MERS when it is expedient to do so, but otherwise act for the benefit of their immediate employers, including Defendant Servicers, wearing numerous corporate hats during any given foreclosure proceeding. This led one New York court to dub the MERS System the "mortgage twilight zone". *HSBC Bank USA, N.A. v. Yeasmin*, 2010 WL 2089273, at §6 (N.Y. Sup.Ct. May 24, 2010).

### [e]     FEDERAL REGULATORY ACTION

481.     In April 2011, MERS executed a <u>Stipulation and Consent to the Issuance of a Consent Order</u> with the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, and the Federal Housing Finance Agency (collectively, "Federal Regulators"), through which MERS agreed to the terms of a comprehensive <u>Consent Cease and Desist Order</u> ("Cease and Desist Order").

482.     The <u>Cease and Desist Order</u> was based on the results of the Federal Regulators' examination of MERS, which "identified certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, legal and reputational risks to MERSCORP and MERS, and to the participating Members". With respect to tracking,

registering, and foreclosing upon mortgages, the Federal Regulators specifically concluded that MERSCORP and MERS, Inc.:

    a.  Have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and

    b.  Have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

483.    The Federal Regulators directed MERS to develop and implement a series of reforms. The creation and use of MERS has resulted in a myriad of fraudulent, deceptive, and illegal acts and practices.

484.    Defendants have improperly brought foreclosure proceedings in MERS' name. MERS, as a Plaintiff. For example, MERS has filed over 13,000 foreclosure actions against New York homeowners according to court records, since 2006 alone. Over 1,800 foreclosure lawsuits have been filed in MERS' name in New York. Each of these suits identifies MERS as the "plaintiff" in the caption.

485.    Defendant Servicers have filed and litigated many foreclosure suits brought in the name of MERS. According to MERS and court records, since 2006, Bank of America has filed approximately 95 foreclosures in MERS' name, Chase has filed approximately 85 foreclosures in MERS' name, and Wells Fargo has filed approximately 110 foreclosures in MERS' name.

486.    MERS affirmatively encouraged its members to file foreclosures in MERS' name and claimed that it would reduce the time and cost of foreclosing. MERS advised its members that

taking the effort to assign the mortgage to the actual note owner prior to commencing a foreclosure was "a cumbersome, costly process and is not recommended". MERS also advised its members that foreclosing in MERS' name was perfectly legal. Its Procedures Manual stated, "Based on legal research conducted with foreclosure counsel in each state, foreclosures can be initiated in MERS' name when MERS is the mortgage of record, thereby avoiding the cost to the Servicer of re-assigning the loan to the Servicer or other third party". Moreover, MERS issued specific recommended procedures for bringing such foreclosures in New York, stating that it was "clear that MERS stands in the same position to foreclose as the servicer" because MERS, Inc. was the mortgagee of record. (see Bank of New York v. Silverberg, 86 A.D. 3d 274, Supreme Court, Appellate Division, 2nd Dept., NY 2011) [i]

487.     However, foreclosures brought in MERS' own name are faulty, invalid, illegal, and deceptive in several respects.

488.     Most prominently, upon information and belief, MERS often lacked standing to foreclose.

489.     A party has standing to foreclose on a property only if it is the holder or assignee of both the note and the mortgage at the time the foreclosure action commences. *See, U.S. Bank National Association v. Madero*, 80 A.D. 3d 751, 752-53, 915 N.Y.S. 2d 612 (2d Dept. 2011), *Countrywide Home Loans, Inc. v. Gess*, 68 A.D. 3d 709 (2d Dept. 2009). Mortgages may be assigned to the foreclosing party either in writing or by physical delivery. *See, Lasalle Bank National Association v. Ahearn*, 59 A.D. 3d 911, 912 (3d Dept. 2009). A promissory note, which is a negotiable instrument, must be either endorsed to the foreclosing party on the note itself (or on a firmly affixed allonge), or endorsed in blank or to bearer and physically held by the foreclosing party.

490.    The fact that a foreclosing party is the mortgagee of record does not by itself make the party the holder or assignee of the note as required to have standing to foreclose. Nor can a plaintiff prove that it possessed the note at the time the action was filed solely by producing a copy of the note, with an undated endorsement, *after* the foreclosure action had been commenced. Evidence of the date the note was delivered to the plaintiff is required

491.    In recognition of these fundamental principles of foreclosure law, MERS' own rules required that, before a foreclosure was commenced in MERS' name, the note underlying the mortgage needed to be endorsed in blank and held by a MERS certifying officer. In the absence of a properly assigned or held mortgage, *and* a properly endorsed or held note, MERS lacks standing as a plaintiff in a foreclosure proceeding. As one New York court has noted, "this court and others have repeatedly held that a nominee of the owner of the note and mortgage, such as Mortgage Electronic Registration Systems, Inc. (MERS), may not prosecute a mortgage foreclosure action in its own name as nominee of the original lender because it lacks ownership of the note and mortgage at the time of the prosecution of the action". *LaSalle Bank National Association v. Lamy*, 12 Misc. 3d 1191 (A), 824 N.Y.S. 2d 769, 2006 WD 2251721, at *1 (N.Y. Sup. Ct. 2006).

492.    Upon information and belief, in many instances MERS members did not follow MERS' procedures. As a result, MERS did not hold the note prior to the commencement of foreclosure proceedings, and thus lacked standing. MERS failed to adequately oversee its members and certifying officers to ensure that its rules were followed and that foreclosures were not improperly brought in MERS' name. MERS rarely, if ever, took any remedial actions against members that disregarded MERS' own rules of a state's standing requirements.

493.     The pleadings in foreclosure cases brought in MERS' name often assert that MERS held the note at the time of the foreclosure filing. These material statements were false in each case in which the note was not properly transferred to MERS, or endorsed in blank and held by MERS, prior to the concealment of the foreclosure. These misrepresentations to the court and homeowner made it appear that MERS had authority to proceed with the foreclosure when it did not. By falsely purporting that MERS had the authority to foreclose and representing to the court and homeowner that MERS held the note when it did not, MERS and its members engaged in a deceptive and fraudulent practice.

494.     In numerous foreclosure actions filed in MERS' name, the note was either not submitted to the court, or the submitted note was not properly endorsed. Upon information and belief, MERS and its certifying officers routinely failed to retrieve and examine the underlying note to verify that it was properly endorsed prior to filing foreclosure proceedings in MERS' name.

495.     Moreover, MERS members filed foreclosure proceedings asserting MERS to be not just the note holder, but also the owner of the note, notwithstanding MERS' acknowledgement that it never owns the note and never has any beneficial interest in the mortgage that would afford it the right to collect payments from the borrower. For example, Bank of America filed a foreclosure complaint in *MERS v. Walters*, Index No. 382559-09 (N.Y. Sup. Ct.) which states, "Plaintiff became and still is the *owner* and holder of said Note and Mortgage". Such representations to the court and the homeowner were false and misleading.

496.     Even when members did follow MERS' rules and endorsed the note in blank before filing a foreclosure proceeding, MERS still lacked standing to foreclose in its own name under the law of most jurisdictions. Neither MERS nor its direct employees ever received or maintained the note. Instead, MERS claimed to "hold" the note only through its certifying officers, who were

employees of member financial institutions or their third party vendors. But MERS' certifying officers are limited agents, and nothing in MERS' Rules of Membership, corporate resolutions, or membership agreements specifically authorized certifying officers to act on MERS' behalf as a custodian of legal documents, including promissory notes. Accordingly, while in certain cases MERS certifying officers may have physically possessed notes that had been properly endorsed in blank, they could not have held the note on behalf of MERS. One court has referred to MERS' position that it holds the note because it may be physically in the possession of a certifying officer who is an employee of another entity as a "charade".

497.     Foreclosures brought in MERS' own name were also deceptive in at least other respects. First MERS certifying officers regularly submitted affidavits, including Affidavits of Merit, in foreclosure proceedings attesting to the amount owed by the borrower. The signatories to such affidavits identify themselves as officers of MERS, and often fail to disclose that they are employees of other entities. These affidavits could give homeowners and the courts the impression that MERS is an entity that does not collect or track the homeowner's mortgage payments and is attesting to their default and the amount owed. However, MERS has openly acknowledged that it does not maintain and has never maintained records reflecting a homeowner's mortgage payment history or the homeowner's default status. Accordingly, MERS' assertions (through its certifying officers) of knowledge of the homeowner's default and the amount owed are deceptive. Moreover, as discussed below, these affidavits were often signed on behalf of MERS by well-known robo-signers who routinely signed the documents without reading them and made no effort to confirm their accuracy. Second, MERS member servicers and investors hid behind the name of MERS to bring foreclosure actions, often without clearly disclosing the identity of the actual owner of the note or the details of MERS' role in the

foreclosure process. On many occasions, neither the caption nor the complaint itself identified the real party in interest, instead listing only MERS as the plaintiff. In other instances, the summons or complaint indicated that MERS was bringing the lawsuit as a nominee for a lender that was defunct at the time of filing and thus had no authority to enforce the mortgage itself. This failure to disclose the real party in interest confused homeowners, most of whom are not represented by counsel and impeded homeowners' ability to identify the actual party seeking to take their home, as well as homeowners' wherewithal to raise possible legal defenses. As the current MERSCORP CEO recently acknowledged, bringing foreclosures in the company's name has "been a lightning rod for people because it created consumer confusion. The consumer doesn't understand who MERS is…"

498.     In 2006, Fannie Mae implicitly acknowledged that filing judicial foreclosures in MERS' name was legally problematic and misleading by prohibiting the practice with respect to Fannie Mae loans. Indeed, in late 2005, MERS itself had ordered its members to stop bringing foreclosures in MERS' name in Florida. Elsewhere, however, MERS continued to encourage this legal "shortcut" until finally banning it nationwide in early 2011. Despite this ban, many foreclosure actions filed in MERS' name are still pending in various courts.

499.     To the extent that foreclosure proceedings were filed in MERS' name and MERS lacked standing, the foreclosures and any resulting foreclosure judgment and sale may be invalid, creating a cloud on title for properties throughout the State of New York and elsewhere. The Plaintiffs assert that, for their real property, a cloud on title commenced as of the time MERS first recorded their deed or mortgage, and continues to exist, to the detriment of the Plaintiffs..

500.     Upon information and belief, MERS also filed proofs of claims and motions to lift stays in its own name in bankruptcy proceedings. As is the case in state court foreclosure actions, in

order to have standing, a party must be the holder or assignee of both the mortgage and the underlying note. *See, In re Lippold*, 457 B.R. 293, 296-97 (Bkrtcy. E.D.N.Y. 2011); *In re Escobar*, 457 B.R. 229, 241 (Bkrtcy. E.D.N.Y. 2011), *In re Agard*, 444 B.R. 231, 245, 246-47, 254 (Bkrtcy. E.D.N.Y. 2011); *In re Feinbert*, 442 B.R. 215, 223 (Bkrtcy. S.D.N.Y. 2010); In re Minbatiwalla, 424 B.R. 104, 109-10 (Bkrtcy. S.D.N.Y. 2010). Thus, a question of standing existed each time MERS filed a proof of claim or motion to lift a stay in its own name without attaching proof that it was the holder or assignee of the mortgage and the note.

[f] **MERS' CERTIFYING OFFICERS, INCLUDING DEFENDANT SERVICERS' EMPLOYEES AND AGENTS, HAVE SUBMITTED FALSE, DECEPTIVE, AND OFTEN LEGALLY INVALID DOCUMENTS IN FORECLOSURE PROCEEDINGS**

501.   As described below, MERS certifying officers, including Defendant Servicers' agents, servants, employees, and others with whom they have acted in concert, have repeatedly executed and submitted to the court misleading, deceptive, and false legal documents that purport to establish the foreclosing party's standing to bring a foreclosure action in state court, or to seek relief in a bankruptcy proceeding. MERS certifying officers, including Defendant Servicers' agents, servants, employees, and others with whom they acted in concert, often failed to verify the chain of title before foreclosure proceedings were filed. Instead, they waited until problems arose during the proceedings, and then executed and filed questionable paperwork in an effort to cure the defects.

502.   The most egregious abuses have occurred in assignment documents prepared and signed by so-called "certifying officers" of Defendant Servicers' agents, servants, employees, and others with whom they acted in concert, on behalf of MERS. Through these documents, MERS claims to assign the mortgage (and in some instances the note as well) from itself to the third party who is bringing the foreclosure proceeding. In New York, courts have consistently recognized that

financial industry plaintiffs lack standing to foreclose, or to file a proof of claim or motion to lift a stay in bankruptcy proceedings, when they rely on faulty transfers or assignments of notes or mortgages by MERS though its certifying officers. *See, e.g., Bank of New York v. Silverberg*, 86 A.D. 3d 274, 281-82, 926 N.Y.S. 2d 532, 538 (2d Dept. 2011); *Aurora Loan Services, LLC v. Weisblum*, 85 A.D. 3d 95, 109 (2d Dept. 2011); *LaSalle Bank National Assocation v. Lamy*, 12 Misc. 3d 1191 (A), 824 N.Y.S. 2d 769, 2006 WL 2251721, at (N.Y. Sup. Ct. 2006); *In re Agard*, 444 B.R. 231, 246 (Bkrtcy. E.D.N.Y. 2011); *Bank of New York v. Mulligan*, No. 29399/07, 2010 WL 3339452, (N.Y. Sup. Ct. August 25, 2010); *Onewest Bank, FSB v. Drayton*, 29 Misc. 3d 1021, 1038-40, 910 N.Y.S. 2d 857, 870-71 (N.Y. Sup. Ct. 2010); *Bank of New York v. Alderazi*, 28 Misc. 3d 376, 279, 900 N.Y.S. 2d 821, 823-24 (N.Y. Sup. Ct. 2010).

503.    MERS assignments have numerous defects, including affirmative misrepresentations of fact, which render them false, deceptive, and/or invalid. This false and defective paperwork has often masked the foreclosing party's lack of standing and inability to establish its authority to foreclose. As a result, Defendants have misled homeowners and the court. Defendant Servicers and other MERS members often proffered to the court and relied on these faulty assignments as evidence of standing, and thereby created an illusion that standing existed when it in fact did not. In addition, Defendant Servicers made false and deceptive statements in pleadings and other court submissions each time they asserted that the foreclosing party held and/or owned the note and mortgage, when in fact, it did not exist.

504.    MERS certifying officers, including Defendant Servicers' agents, servants, employees, and others through whom they acted in concert, have repeatedly executed and submitted in court legally invalid documents that purport to transfer the underlying note from MERS to the foreclosing party. However, because MERS never owns the note, has no beneficial interest in the

note, is not a party to the note, and is not authorized by the actual note holder to transfer the note, MERS has no authority to effect this transfer. MERS concedes in its own Procedures Manual that it "cannot transfer the beneficial rights to the debt," and its terms of membership acknowledge that the MERS System is "not a vehicle for creating or transferring beneficial interests in mortgage loans". Thus, assignments executed by MERS certifying officers, including Defendant Servicers' agents, servants, employees, and others through they acted in concert, have repeatedly executed and submitted in court mortgage assignments from MERS to the foreclosing party that were executed after the respective foreclosure proceeding was filed. These "retroactive" mortgage assignments are dated after the foreclosure filing, often improperly purporting to be effective as of an earlier date. Notwithstanding the failure to assign the mortgage before the filing of the proceeding, the pleadings still affirmatively represent that the foreclosing party held the mortgage at the time of the filing. These representations were often simply false.

505.    For example, in *JPMorgan Chase Bank v. George*, 2010 WL 1780952 (N.Y. Sup. Ct. May 4, 2010), the court vacated a judgment of foreclosure and sale where a MERS certifying officer executed a retroactive mortgage assignment to JPMorgan Chase that purported to be effective three months prior to the date it was executed. Wells Fargo was the servicer that filed that foreclosure. There are numerous other New York decisions questioning this deceptive execution of MERS mortgage assignments. *See, LaSalle Bank National Association v. Ahearn*, 59 A.D. 3d 911, 875 N.Y.S. 2d 595 (3d Dept. 2009)[1]. (no standing where MERS executed an assignment at least two months after foreclosure action was filed); *Deutsche Bank National Trust Company v. Stevens*, 911 N.Y.S. 2d 691, 2010 WL 2026038 (N.Y. Sup. Ct. May 18, 2010)

---

2 Upon information and belief, Chase was the servicer in this case.

(dismissing foreclosure action where MERS executed assignment nine days after commencement of proceeding); *Citigroup Global Markets Realty Corp., c/o GMAC Mortgage Corp. v. Bowling*, 906 N.Y.S. 2d 778, 2009 WD 4893940 (N.Y. Sup. Ct. December 18, 2009) (dismissing foreclosure action where MERS executed assignment six days after action filed); *New Century Mortgage Cor. v. Durden*, 880 N.Y.S. 2d 874, 2009 WL 264134 (N.Y. Sup. Ct. February 2, 2009) (MERS executed assignment more than two months after foreclosure action commenced); U.S. Bank National Association v. White, 880 N.Y.S. 2d 227, 2009 WL 159588 (N.Y. Sup. Ct. July 23, 2009) (MERS executed assignment 202 days after commencement of proceeding); *Washington Mutual Bank v. Patterson*, 875 N.Y.S. 2d 824, 2008 WL 5233195 (N.Y. Sup. Ct. December 15, 2008) (MERS assignment executed 13 days after foreclosure action commenced).

506.    This practice, along with the related representations to the court regarding standing, is false and deceptive. The date of the assignment document is controlling. Any representation to the contrary by MERS or Defendant Services is misleading, and could deceive a homeowner or court into believing the party filing the foreclosure proceeding has standing when it does not.

507.    MERS certifying officers, including Defendant Servicers' agents, servants, employees, or others through whom they acted in concert, have repeatedly executed and submitted in court mortgage assignments where MERS purports to assign a mortgage to the foreclosing party without any authority to do so. In these instances, MERS had no ability to assign the mortgage because neither MERS nor the entity MERS was purporting to act on behalf of any interest in the mortgage at the time of the assignment.

508.    For example, MERS certifying officers have executed and submitted in court mortgage assignments where MERS purports to act "as a nominee for" a defunct lender that long ago ceased operating or went bankrupt and no longer had an interest in the mortgage. *See, U.S.*

*National Bank Association v. Bressler*, 33 Misc. 3d 1231 (A), 2011 WL 6115849, (N.Y. Sup. Ct. December 7, 2011) (MERS assignment defective in part because MERS executed assignment as nominee for a lender that was no longer operating on date of assignment). In other cases, MERS lacked authority to assign the mortgage because MERS had earlier assigned the mortgage to a third party and thus no longer had an interest in the mortgage. *See, New Century Corporation v. Durden*, 880 N.Y.S. 2d 874, 2009 WL 264134, (N.Y. Sup. Ct. February 2009) (MERS' assignment of mortgage to foreclosing party was invalid because MERS "did not have a present interest in the mortgage at the time of the assignment"). MERS has purported to act as a nominee for lenders that long ago conveyed any interest they had in the mortgage, rendering the assignment by MERS a nullity.

509.    MERS certifying officers, including Defendant Servicers' employees and agents, have repeatedly misrepresented MERS' authority to assign mortgages. Such mortgage assignments are false, invalid, and could deceive a homeowner or court into believing the party filing the foreclosure proceeding has standing when it does not.

510.    Mortgage assignments, as well as sworn statements such as Affidavits of Merit, have been executed on behalf of MERS by well-known robo-signers and then submitted in foreclosure proceedings. Robo-signer MERS certifying officers, including Defendant Servicers' agents, servants, employees, or other with whom they acted in concert, executed these documents without bothering to read them, let alone examine the underlying records or confirm the documents' accuracy. Instead, the documents were automatically generated, and MERS certifying officers simply signed them in enormous volume. For instance, during a recent deposition taken by a representative of the United States Trustee's Office in the Southern District

of New York, a Bank of America employee who worked out of New York admitted that she did not read the assignments that she executed on behalf of MERS.

511.    Even more egregiously, robo-signer MERS certifying officers' signatures sometimes take different forms, suggesting that others were improperly signing the individual's name. For instance, in *HSBC Bank USA v. Taher*, 2011 WL 2610525, (N.Y. Sup. Ct. July 1, 2011), one judge remarked that the mortgage assignment from MERS to HSBC was executed by "a known robo-signer... whose signature is reported to have appeared in at least four different variations on mortgage assignments".

512.    In addition, in foreclosure actions brought in MERS' name, MERS certifying officers, including Defendant Servicers' agents, servants, employees, or others with whom they acted in concert, have executed affidavits attesting that they have reviewed the records to verify the underlying assertions in the case, including the amount owed by the homeowner, when in fact they had not reviewed such records.

513.    MERS certifying officers, including Defendant Servicers agents, servants, employees, or others with whom they acted in concert, have repeatedly executed "notarized" documents, such as mortgage assignments and affidavits, outside the presence of the notary. The notarizations state that the signatory personally appeared before the notary when in fact this was not the case. See In re Mims, 438 B.R. 52, 57 (S.D.N.Y. 2010) (in matter in which Bank of American was the servicer, court expressed reservations about the validity of the mortgage assignments from MERS to Wells Fargo because the MERS "Assistant Vice President" who executed the assignment had an address in Florida but his signature on the assignment was notarized in South Carolina). During sworn testimony taken recently by a representative of the United States Trustee's Office in the Southern District of New York, a Bank of America employee who

regularly notarized mortgage assignments executed on behalf of MERS in New York admitted that it was her practice to notarize numerous assignments at a time outside the presence of the signatory.

514.    Defendant Servicers filed or caused to be filed the kind of false, deceptive, and/or invalid mortgage assignments discussed above not only with courts, but also with local county clerk recording offices throughout the State of New York. As a result, the public records are replete with MERS mortgage assignments that contain false representations and inaccurate information, and that may have no legal force.

515.    To the extent that foreclosing parties such as Defendant Servicers relied on false, deceptive, and/or invalid MERS assignments as a basis to file a foreclosure proceeding, or brought foreclosures as plaintiffs without standing due to a failure to have the mortgage properly assigned to them, the foreclosures and any resulting judgment and sale may be invalid. This could create a cloud on title for numerous properties throughout the State of New York and elsewhere, for which MERS and Defendant Servicers are to blame.

516.    MERS is responsible for the fraudulent, deceptive, and illegal conduct of its certifying officers because they serve as MERS corporate officers. As outside counsel to MERS acknowledged during a court proceeding in Florida, although employed by other entities, MERS certifying officers "act and talk and speak and make representations as officers of MERS".

517.    MERS has failed to adequately screen and train its certifying officers, even though they are charged with executing in MERS' name vital legal documents in foreclosure proceedings through the country. MERS did not provide adequate guidance or supervision to its more than 20,000 certifying officers on the legal import of these documents, the proper method of executing and verifying them, and the need to confirm the underlying information before

submitting the documents to court. MERS certifying officers regularly executed mortgage assignments with no knowledge of their meaning or effect.

518.    MERS has historically exercised little to no oversight of the conduct of its certifying officers, allowing them to execute millions of legal documents without any review or accountability. MERS has failed to ensure the quality, integrity, and accuracy of the millions of documents executed by its own "corporate officers". MERS also had no system to track documents executed on its behalf, including mortgage assignments, affidavits filed in court, and promissory note endorsements. In addition, notwithstanding the widespread abuse by MERS certifying officers, MERS has not taken appropriate remedial action against certifying officers who have executed fraudulent and deceptive documentation in connection with foreclosure proceedings. This lack of oversight and accountability has undermined countless foreclosure proceedings.

519.    Defendant Servicers also failed to adequately train, supervise, and monitor the document execution procedures used by their employees and agents who served as MERS certifying officers.

520.    In addition, upon information and belief, as a result of Defendants' gross lack of oversight, there have been instances when individuals have purported to execute legal documents, such as mortgage assignments, on behalf of MERS in foreclosure proceedings without any authority to do so.

**[g]     THE USE OF MERS CERTIFYING OFFICERS BY DEFENDANTS HAS CONFUSED AND DECEIVED HOMEOWNERS AND THE COURTS**

521.     As described above, through corporate resolutions, MERS has given over 20,000 certifying officers authority to act on its behalf, including the authority to assign MERS mortgages, to execute paperwork necessary to foreclose on properties secured by MERS mortgages, and to submit proofs of claims and affidavits on behalf of MERS in bankruptcy proceedings. Defendant Servicers alone have over 1,000 MERS certifying officers. In essence, MERS has created a system where all the actions it purportedly takes on behalf of its members are carried out, not by MERS employees, but by the member's own employees, or in many cases by employees of third party vendors that provide foreclosure-related services to members.

522.     This complex and unusual structure developed solely by the financial industry to avoid established real estate trade custom and recordation procedures, to reduce costs and paperwork, has confused, misled, and deceived courts and homeowners, who are left with the challenge of untangling a string of unrecorded transfers and assignments by a series of officers and employees of uncertain provenance in order to ascertain whether a party has standing in a foreclosure proceeding.

523.     MERS certifying officers, including Defendant Servicers' employees and agents, often act on behalf of multiple, conflicting principals in a single transaction, and fail to disclose their competing and inconsistent sources of authority. For example, courts and local county clerks' offices regularly receive mortgage assignments purporting to assign a mortgage from MERS to the foreclosing party, where the certifying officer signing the mortgage assignment on behalf of MERS is actually an employee or agent of the foreclosing party (the assignee). The MERS certifying officer's execution of the assignment to his or her own employer under the guise of being a MERS officer is deceptive and confusing to anyone trying to assess the validity of the

assignment or to verify the chain of title. It also creates the appearance, if not the reality, of self-dealing.

524.     Further, MERS certifying officers, including Defendant Servicers' agents, servants, employees, or others with whom they acted in concert, have repeatedly executed and filed mortgage assignments and other legal documents in court without disclosing to the court that they are not actually employed by MERS, but instead are employed by a completely different entity. The signature line simply indicates that the signor is an "Assistant Secretary", "Vice President", or other officer of MERS[2] The MERS certifying officer's failure to disclose his or her true employer (which is often the party bringing foreclosure action or its agent), the nature of his or her limited affiliation with MERS, or the basis for his or her authority to execute the document is deceptive and misleading to the homeowner and the court.

525.     Moreover, the same MERS certifying officer often executes multiple documents on behalf of different parties in the same proceeding. For example, in *Bank of New York v. Myers*, 880 N.Y.S. 2d 871, 2009 WL 241771 (N.Y. Sup. Ct. February 3, 2009), the homeowner's mortgage designated MERS as the mortgagee of record, and a MERS certifying officer, Keri Selman, later executed an assignment of the mortgage from MERS, as nominee of Homebridge Mortgage Bankers Corp. (original lender), to Bank of New York. Ms. Selman signed the document as "Assistant Vice President" of MERS. Five days later, Ms. Selman executed an affidavit in support of a summary judgment motion in the proceeding, this time signing as "Assistant Vice President" of the Bank of New York. This led the judge in the matter to refer to Ms. Selman as "a milliner's delight by virtue of the numbers of hats she wears". *Myers*, 2009 WL 241771, where Bank of America was the mortgage servicer who brought this foreclosing proceeding.

526.    To compound the confusion, many designated MERS certifying officers are employees of third party vendors, such as Lenders Processing Service, Inc., which provide foreclosure-related support to multiple MERS member servicers. These vendors frequently act as agents for several MERS members. Thus, a single employee of a vendor may have the authority to sign assignments and other legal documents on behalf of MERS for loans registered in the MERS System to multiple member servicers, as well as the authority to sign documents as an officer of those member servicers, as well as the authority to sign documents as an officer of those member servicers. This results in the deceptive practice of a single vendor employee executing foreclosure-related documents under different titles for multiple entities.

527.    Further conflating the role of the parties and the origin of documents submitted to courts and local county clerks' offices is the fact that MERS has designated attorneys at foreclosure firms as MERS certifying officers. For instance, through corporate resolutions, MERS appointed several attorneys at Steven J. Baum, P.C. ("Baum Firm") as MERS "assistant secretaries and vice presidents". These corporate resolutions executed by MERS, the Baum Firm, and the MERS members authorized Baum attorneys to execute documents necessary to foreclose on mortgages registered in the MERS System to various servicer members, including each of the Defendant Servicers. Thus, in foreclosure proceedings filed by the Baum Firm as counsel for Defendant Servicers, Baum attorneys, wearing their hat as MERS certifying officers, regularly assigned mortgages from MERS to the foreclosing parties that the Baum Firm represented. These mortgage assignments routinely presented to courts as evidence of the foreclosing party's standing did not disclose that the signatory was actually a lawyer employed by the firm's client. MERS had similar arrangements with lawyers at several other law firms. *See, U.S. National Bank Association v. Kosak*, 2009 WL 2480127, at *2 (N.Y. Sup. Ct., September 4, 2009)

(questioning retroactive mortgage assignment executed by an attorney at Druckman & Sinel, LLP that purportedly assigned mortgage from MERS to firm's client).

528.     Although it created this bizarre framework, MERS failed to implement adequate policies, procedures, and systems to track and monitor the designation of MERS certifying officers, the basis of their authority to act, and the scope of their authority. Indeed, individuals have executed legal documents including mortgage assignments, loan modification agreements, and affidavits on behalf of MERS when they were either not designated as a certifying officer at the time, or were not authorized to execute documents on behalf of MERS with respect to the subject mortgage loan.

[h]   **MERS AND DEFENDANT SERVICERS, THROUGH THEIR USE OF MERS, HAVE CONCEALED IMPORTANT INFORMATION FROM HOMEOWNERS ABOUT THEIR PROPERTY AND THE ROLE THAT MERS PLAYS WITH RESPECT TO THEIR MORTGAGE**

529.     MERS, as well as Defendant Servicers, agents, servants, employees, and other with whom they acted in concert, through their use of MERS System, have effectively eliminated the homeowner's and the public's ability to track property interest transfers through the traditional public records system. Prior to MERS, the common trade practice was to record mortgage assignments at the county clerk's office and the transactions were transparent. To cut costs and paperwork, MERS, Defendant Servicers, and other MERS members collaborated to create a system under which property interest transfers are no longer recorded in publicly available records, and loans are sold multiple times without any public recording of these transactions. Instead, this information (to the extent that it is registered at all) now resides only in a private database over which MERS and its members exercise sole control. As a result, homeowners and the public have been deprived of a reliable public record reflecting transfers in real property interests.

530.    The deprivation of this information harms homeowners by preventing them from ascertaining the chain of title and the true owner of their mortgage. As the Second Department recently acknowledged, the MERS System "leaves borrowers and the local county or municipal recording offices unaware of the identity of the true owner of the note… "*Silverberg*, 86 A.D. 3d at 278, 926 N.Y.S. 2d at 536.

531.    It is important for homeowners to know who owns their loan because this may be the only entity with the authority to modify the terms or reduce the principal of their mortgage. Investor-specific restrictions may also impact the types of loan modification options available.

532.    Moreover, in the absence of a public record, homeowners in foreclosure proceedings cannot reliably verify that the purported plaintiff is the successor to the original lender and thus a proper plaintiff. As one court noted when discussing the problems associated with MERS, "having a single front man, or nominee, for various financial institutions make it difficult for mortgagors and other institutions to determine the identity of the current note holder". *Landmark National Bank v. Kesler*, 289 Kan. 528, 543, 216 P. 3d 158, 168 (2009).

533.    Furthermore, the failure to register property transfers in publicly available records deprives potential future purchasers and other lien holders of important chain of title information.

534.    In addition to denying the public vital information about mortgage transfers, MERS, its members and subscribers, also deceive and mislead borrowers about the importance and ramifications of MERS' role with respect to their mortgage at the time the borrower obtains the loan.

535.    When MERS is not the original mortgagee but becomes the mortgagee through a later assignment, the borrower receives absolutely no disclosure regarding MERS' role because MERS is not even referenced in the mortgage executed by the borrower.

536.    Even when the mortgage does designate MERS as the lender's nominee and mortgagee of record (MOM Mortgage), it contains only minimal disclosures. For instance, a common mortgage instrument designating MERS as the original mortgagee states, "MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument". This disclosure in the mortgage instrument is insufficient to inform borrowers of the real risks and consequences posed by allowing MERS to serve as mortgagee of record. Furthermore, the note itself has absolutely no reference to MERS. As the MERSCORP CEO recently conceded during an interview, "The consumer doesn't understand who MERS is, even though it is buried in their contract".

537.    The mortgage instrument used by MERS members fails to disclose that: (a) MERS serves as the mortgagee of record for millions of mortgages and acts as an agent for most major mortgage lending institutions in the country, (b) MERS has been designated as an agent  so that the lender and subsequent assigns can avoid following standard recording protocols applicable to non-MERS loans, thereby depriving the borrower of access to important information relating to future transfers of his or her mortgage, and (c) MERS conducts all mortgage transactions on behalf of its members through certifying officers who are employed by third parties, an unusual structure that results in the myriad of deceptive and fraudulent practices described above.

538.    In a company brochure available on its website, MERS claims that the MERS System is "a national database that tracks changes in mortgage servicing rights and beneficial ownership interests in loans secured by residential real estate". According to an internal manual, "all related Members (for example, investors and warehouse lenders) are able to track changes in the loan information and ensure that their positions are properly maintained". MERS warrants to its members that it will perform its services "with promptness and diligence in accordance with the

practices and high professional standards used in well-managed operations" that deliver similar services. However, the MERS members have failed to timely and consistently register loan transactions in the MERS System, including transfers of ownership interests and servicing rights. Moreover, MERS failed to implement basic quality assurance measures to ensure data integrity.

539.     Pursuant to MERS' rules and procedures, the servicer of the mortgage loan, or a contracted sub-servicer, is responsible for timely entering required data into the MERS System.

540.     Servicers are supposed to electronically log, among other things, transfers in servicing rights, transfers of the beneficial ownership interest in a mortgage, the commencement of a foreclosure proceeding, the release of a lien, the creation of a sub servicing relationship, and the modification of a loan that requires the recording of a new mortgage. The MERS System maintains other basic information on registered loans, including the borrower's name, the address of the property, the date the loan was originated, the amount of the note, and the investor's identity. MERS members have repeatedly expressed confusion about how to use the MERS System, and frustration about MERS' lack of support and the fact that certain information and reports were largely inaccessible to them.

541.     MERS failed to employ adequate policies, procedures, and systems to verify the accuracy or timeliness of the loan information entered into the MERS System. MERS generally did not confirm that reported transfers between members had actually occurred, examine underlying transfer documents, or verify that the note had been properly endorsed or otherwise transferred when a member registered a change in ownership. Indeed, MERS usually did not require members to submit any supporting documentation when recording transfers of servicing rights or the beneficial interests in a loan to other members. As the number of MERS loans grew exponentially, MERS simply failed to devote the resources or implement the quality assurance

mechanisms necessary to ensure the integrity of the information on its system, notwithstanding that its purported primary function is to serve as a national mortgage registry database.

542.     MERS was well aware that its database was plagued with inaccuracies, but did not take appropriate remedial measures to ensure that these errors were promptly corrected. As a financial institution noted in response to a member survey conducted by MERS: "You'll note, we made no request in this survey for MERS to actually take responsibility for their accuracy in their data and system. We have asked this question repeatedly in conference calls and help desk sessions. Since MERS has no competition and no regulation, we get the simple response, 'We just house data. The maintenance is your responsibility.' The lack of any real competitor for MERS' business has created an atmosphere of 'take it or leave it' when it comes to your policies. We do not appreciate this attitude".

543.     Indeed, in a recent interview, the current MERSCORP CEO openly acknowledged that the company "did not have a robust process to make sure that all the data on our system was accurate, timely and reliable. Our view was that this is the servicer's data and they're relying on it for their own transactions, they're using their own systems, so we don't have to double check". MERS' actions match its words. Although its rules permit MERS to fine, suspend, or terminate members that fail to timely and accurately report loan transactions, upon information and belief, MERS rarely, if ever, sanctioned its members for failure to comply with reporting requirements for loans.

544.     MERS has claimed that it provides a valuable service to its financial institution members, including title companies, by providing a readily available place to identify the current servicer and owner of a loan. Indeed, MERSCORP's former President and CEO, R.K. Arnold, stated that the MERS System's capacity to track servicing is "critical to the efficient and reliable operation"

of the secondary market where notes and mortgages are repeatedly transferred. However, to the extent the information in the MERS System was inaccurate, this created confusion among stakeholders who relied on the information to act.

545.    For instance, to the extent the MERS System misidentified the note owner, and servicers (or their agents) relied on this misinformation to identify the foreclosing party or the appropriate mortgage assignee in a foreclosure proceeding, the inaccuracies in the MERS System resulted in foreclosure proceedings brought by the wrong party.

546.    Additionally, since the MERS System has effectively replaced the county clerks' offices as the repository of records reflecting transfers of beneficial interests in MERS registered loans, the failure to ensure the accuracy of the database makes it difficult to verify the chain of title for a loan.

547.    Further, as a result of its poor record-keeping, MERS has filed mortgage satisfactions against the wrong property. After realizing the error, MERS often files an action to void the satisfaction and reinstate the mortgage. These actions sometimes involve filing a *lis pendens* on the property, even though the homeowner is current on the mortgage payments. Filing a *lis pendens* in order to correct an error made by MERS is deceptive because it erroneously and publicly signifies a mortgage default or some other arrears by the homeowner (*e.g.*, unpaid property tax or common charges). This deceptive practice harms the homeowner, who may be forced to go to court to lift the *lis pendens* and who in the meantime is prevented from being able to sell the home, or refinance, consolidate, or modify the loan until the *lis pendens* is resolved.

548.    In addition, MERS has repeatedly represented to homeowners and the public at large that it provides homeowners, by telephone or through its website, with the name of the entity that currently services their mortgage loan and the name of the current note owner. MERS advertises

this free consumer service on its website. According to R.K. Arnold's congressional testimony, "the MERS database is important to individual borrowers because it provides a free and accessible resource where borrowers can locate their servicers, and in many cases, learn who their note-owner is as they change over time". To the extent that MERS has provided homeowners with this information based on erroneous data, MERS has informed homeowners about the identity of their mortgage servicing company and note-owner.

[i] **THE CREATION AND USE OF MERS HAVE HARMED HOMEOWNERS AND THE PUBLIC, AND UNDERMINED THE INTEGRITY OF THE JUDICIAL FORECLOSURE PROCESS**

549.    The misconduct set forth above harmed, and continues to harm, homeowners and the public at large and undermines the integrity of the judicial foreclosure process in several ways, including but not limited to:

- By bringing foreclosure proceedings without proper standing, Defendants have subjected homeowners to improper foreclosures.

- By preparing and submitting in court deceptive and legally invalid assignments purporting to confer standing on parties in foreclosure proceedings, Defendants have obtained foreclosure judgments against homeowners through fraudulent and illegal means.

- By making misrepresentations in foreclosure proceedings regarding, *inter alia*, the identity of the entity that owned and/or held the mortgage and/or note, and failing to disclose material information in these proceedings, Defendants have undermined the integrity of the court system and impeded homeowners' ability to present potential legal defenses.

- By creating and participating in a system that resulted in foreclosure judgments to entities that sometimes did not own or hold the note, Defendants have created clouds on title and invalid

liens, and have subjected foreclosure victims to the risk of subsequent proceedings to obtain monetary judgments by the actual note owner.

- By submitting in court MERS mortgage assignments and other legal documents executed on behalf of MERS by over 20,000 certifying officers who were not employed, trained, or overseen by MERS and who sometimes executed documents in the same proceedings on behalf of other parties Defendants have confused, misled, and deceived homeowners and the courts.

- By obscuring the identity of those who own beneficial interests in mortgages as well as the chain of title for hundreds of thousands of properties, Defendants have deprived the public and homeowners of the ability to track real property ownership interests through publicly available records, creating a cloud on title thereby.

[j]  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**

550.     Many of the promissory notes referenced above are secured or controlled by a beneficiary known as Mortgage Electronic Registration Systems, Inc. (MERS). MERS is sometimes named as the "nominee" or "beneficiary" for unknown lenders representing unsourced money advanced by persons in violation of law. When a loan is transferred among MERS members, MERS purports to simplify the process by avoiding the requirement to re-record the liens and pay county recorder fees.

551.     For the substantial majority of the Plaintiffs herein, MERS claims to be the owner of the security interest indicated by the mortgages transferred by lenders, investors and their loan servicers in the county land records. MERS claims its process eliminates the need to file assignments in the county land records which lowers costs for lenders and consumers by reducing county recording costs from real estate transfers and provides a central source of information and tracking for mortgage loans.

552.    Based upon published reports, including the MERS website as of the date of this

Complaint, on information and belief, MERS does not:  (1) take applications for, underwrite or

negotiate mortgage loans; (2) make or originate mortgage loans to consumers; (3) extend credit

to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

553.    MERS has been, and continues to be, used to facilitate the unlawful transfers of

mortgages, unlawful pooling of mortgages and the injection into the United States banking

industry of unsourced (*i.e.*, unknown) funds, including, without limitation, improper off-shore

funds.  Plaintiffs are informed and believe and thereon allege that MERS has been listed as

beneficial owner of more than half the mortgages in the United States.

554.    In 2001, Congress found that "money laundering, and the defects in financial

transparency on which money launderers rely, are critical to the financing of global terrorism and

the provision of funds for terrorist attacks."  Congress specifically found that "money launderers

subvert legitimate financial mechanisms and banking relationships by using them as protective

covering for the movement of criminal proceeds and the financing of crime and terrorism . . ."

555.    On information and belief, during periods relevant to the other acts complained of herein,

Defendants and each of them did not and persist in failing to (1) establish due diligence policies,

procedures and controls reasonably designed to detect and report instances of money laundering,

(2) establish procedures to take reasonable and practicable measures to verify the identity of

those applying for an account with the institution and maintain records of the information used to

verify a person's identity, including name, address, and other identifying information, (3)

determine and report the sources of funds used for the mortgages they originate and service, as

well as the sources of funds used to acquire any mortgages, or (4) disclose to Plaintiffs the

identities, address and telephone numbers of transferees of their mortgages.

556.     Upon completion of sufficient discovery, Plaintiffs will seek leave to amend the complaint to supplement the foregoing allegations with respect to additional violations pertaining to the Plaintiffs and additional patterns supporting Plaintiffs' claims herein including its claim of Unfair Competition, *infra*.

557.     Under the laws of the State of New York, it is unlawful to willfully deceive another with intent to induce him to alter his position to his injury or risk. New York courts, for public policy reasons, have long held that a party cannot induce a contract by fraudulent misrepresentations and then use contractual devices to escape liability. *Cummings WCP v. HPG International, Inc.,* (1st Cir. Ct. of Appeals No. 00-1842, 2001).

558.     It is a "deceit" to do any one or more of the following: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or, (4) a promise, made without any intention of performing it.

559.     At the time of entering into the notes and deeds of trust referenced herein with respect to each Plaintiff, the ENTERPRISE and the Defendants, were bound and obligated to fully and accurately disclose:

a.     Who the true lender and mortgagee were.

b.     That to induce a Plaintiff to enter into the mortgage, the ENTERPRISE caused the appraised value of Plaintiff's home to be overstated.

c.     That to disguise the inflated value of Plaintiff's home, the ENTERPRISE was orchestrating the over-valuation of homes throughout Plaintiff's community.

d.  That to induce a Plaintiff to enter into a mortgage, the ENTERPRISE  disregarded its underwriting requirements, thereby causing Plaintiff to falsely believe that Plaintiff was financially capable of performing Plaintiff's obligations under the mortgage, when the  enterprise knew that was untrue.

e.  That the  ENTERPRISE not only had the right to securitize and sell Plaintiff's mortgage to third-party investors, but that it specifically planned and intended to do so as to virtually all mortgages at highly-inflated and unsustainable values.

f.  That as to the intended sales:

    i.  The sales would include sales to nominees who were not authorized under law at the time to own a mortgage, including, among others, MERS, which according to its website was created by mortgage banking industry participants to be only a front or nominee to "streamline" the mortgage re-sale and securitization process;

    ii.  Plaintiff's true financial condition and the true value of Plaintiff's home and mortgage would not be disclosed to investors to whom the mortgage would be sold;

    iii.  The  ENTERPRISE intended to sell the mortgage together with other mortgages as to which it also intended not to disclose the true financial condition of the borrowers or the true value of their homes or mortgages;

    iv.  The consideration to be sought from investors would be greater than the actual value of the said notes and deeds of trust; and

    v.  The consideration to be sought from investors would be greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon.

g.  That the mortgage would thereby be used as part of a scheme by which the  ENTERPRISE would bilk investors by selling collateralized mortgage pools at an inflated value.

h.  That, at the time they did the foregoing, the ENTERPRISE knew the foregoing would lead to a liquidity crisis and the likely collapse of the ENTERPRISE.

i.  That the ENTERPRISE also knew the foregoing would lead to grave damage to each Plaintiff's property value and thereby result in the Plaintiff's loss of the equity Plaintiff invested in the Plaintiffs' house, as well as damaging the Plaintiff's credit rating, thereby causing the Plaintiff additional severe financial damage.

j.  That the ENTERPRISE knew at the time of making each loan, but did not disclose to Plaintiffs, that entire communities would become "ghost-town-foreclosure-communities" after a domino effect of foreclosures hit them.

560.    When property values started falling – just as the ENTERPRISE knew would occur – the ENTERPRISE could no longer continue the pretense, concealment and affirmative misrepresentations.  Plaintiffs through their losses, and then also the ultimate banker, the U.S. taxpayer, have footed the bill through TARP and other programs.

561.    The Defendants not only continue to ratify the scheme, but they aggressively seek to profit from it.

562.    With specific aim, the Defendants, knowing of the massive fraud perpetrated by the ENTERPRISE they sought to acquire, swooped in to profiteer. Like Civil War carpetbaggers, the Defendants sought to conceal the fraud of which they were aware and which gave legitimate defenses to borrowers and to ramrod through foreclosures. This was all done while the Defendants have put window dressing on their business strategy, seeking to obfuscate their actions by press releases of diametrically opposite actions.

563.    This ENTERPRISE-conspiracy has all been to further crush values, realize losses and collect government bail-out money, and then to take their foot off the neck of the homeowner

market and profiteer from rises in portfolio asset values. However, the Defendants cannot improve their position in the mortgages and must stand in the shoes of their predecessor.

564.     As a result, they are subject to the shortcomings of the assets they purchased, and not only those the Defendants can control for their profit. They are also subject to all defenses to the mortgages. The Defendants' high-pressure and aggressive foreclosure tactics have been designed to push this fraud through and avoid these defenses by sheer weight of a well-financed financial group against individual homeowners. However, they must accept the burdens as well as the benefits of the mortgage assets contained in the tainted business they acquired.

[k]     **MERS CREATED "EFFICIENCY" AT THE EXPENSE OF TRANSPARENCY**

565.     MERS operates an electronic registry designed to track servicing rights and the ownership of mortgages. MERS is sometimes named as the "nominee" for lenders, and at other times MERS is named as the "beneficiary" of the deed of trust on behalf of unknown persons. When a loan is transferred among MERS members, MERS purports to simplify the process by avoiding the requirement to re-record liens and pay county recorder filing fees.

566.     For the substantial majority of the Plaintiffs herein, MERS claims to be the owner of the security interest indicated by the mortgages transferred by lenders, investors and their loan servicers in the county land records. MERS claims its process eliminates the need to file assignments in the county land records which lowers costs for lenders and consumers by reducing county recording revenues from real estate transfers and provides a central source of information and tracking for mortgage loans.

567.     Based upon published reports, including the MERS website, on information and belief, MERS does not: (1) take applications for, underwrite or negotiate mortgage loans; (2) make or

originate mortgage loans to consumers; (3) extend credit to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

568.     MERS has been used to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of un-sourced (i.e., unknown) funds, including, without limitation, improper off-shore funds. Plaintiffs are informed and thereon believe that MERS has been listed as beneficial owner of more than half the mortgages in the United States.

569.     In 2001, Congress found that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks." Congress specifically found that "money launderers subvert legitimate financial mechanisms and banking relationships by using them as protective covering for the movement of criminal proceeds and the financing of crime and terrorism..."

570.     On information and belief, during periods relevant to the other acts complained of in this Complaint, Defendants did not: (1) establish due diligence policies, procedures and controls reasonably designed to detect and report instances of money laundering, (2) establish procedures to take reasonable and practicable measures to verify the identity of those applying for an account with the institution and maintain records of the information used to verify a person's identity, including name, address, and other identifying information, (3) determine and report the sources of funds used for the mortgages they originate and service, as well as the source of funds used to acquire any mortgages, or (4) disclose to Plaintiffs the identities, address and telephone numbers of transferees of their mortgages.

## E.  **THE ENTERPRISE**

571.     Upon information and belief, The Defendants, their agents, servants, employees, and others through whom they acted in concert, included without limitation, financial institutions and other firms that originated and/or serviced loans on behalf of the ENTERPRISE acquired by the Defendants. These institutions acted at the behest and direction of the ENTERPRISE and the Defendants, or agreed to participate — knowingly or unknowingly - in the fraudulent scheme described in this Complaint.

572.     Those firms originating and/or servicing the loans that knowingly participated in the scheme are jointly and severally liable with the Defendants for their acts in devising, directing, knowingly benefitting from and ratifying the wrongful acts of the knowing participants.

573.     Upon information and belief, knowing participants include, without limitation, legal and natural persons owned in whole or in part by the ENTERPRISE, or Defendants, or affiliates thereof, acting directly or through affiliates pursuant to contracts, to share in the benefits of the acts, omissions and wrongdoing alleged in this Complaint,

574.     As to those legal and natural persons acting in concert without an express legal relationship with Defendants or their affiliates, on information and belief, the Defendants knowingly induced and encouraged the parallel acts, created circumstances permitting and authorizing the parallel acts and omissions, benefited there from and ratified the improper behavior, becoming jointly and severally liable therefore.

575.     Upon information and belief, the Defendants knowingly induced and encouraged the acts and omissions, created circumstances permitting and authorizing the parallel acts and omissions, benefited from and ratified the improper behavior, therefore becoming liable for damages emanating therefrom.

576.     The Defendants' mortgage lending business implemented a plan to "pool" the foregoing mortgages and sell the pools for inflated value. Rapidly, these two intertwined schemes grew into a brazen plan to disregard underwriting standards and fraudulently inflate property values – county-by-county, city-by-city, person-by-person – in order to take business from legitimate mortgage-providers, and moved on to massive securities fraud hand-in-hand with concealment from, and deception of, Plaintiffs and other mortgagees on an unprecedented scale.

577.     From as early as 2004, the senior management of Defendants' mortgage lending business knew the scheme would cause a liquidity crisis that would devastate Plaintiffs' home values and net worth. But they did not care because their plan was based on insider trading – pumping for as long as they could and then dumping before the truth came out and Plaintiffs' losses were locked in.

578.     At the very least, at the time of entering into the notes and deeds of trust   referenced herein with respect to each Plaintiff, the Defendants' business, each Defendant originating or participating in the origination of a mortgage, each Defendant in the chain of title of the foregoing mortgages and each Defendant servicing the foregoing mortgages and the successors to each of the foregoing (collectively, the "Defendants") was bound and obligated to fully and accurately disclose to each borrower, including each Plaintiff herein, that the mortgage being offered to the Plaintiff was, in fact, part of a massive fraud that Defendants or their business principals knew would result in the loss of the equity invested by Plaintiff in their homes and in severe impairment to Plaintiffs' credit ratings.

579.     In addition, acting through MERS, the Defendants implemented a plan to bypass real estate recording statutes, or negligently disregarded local recording statutes and long-standing

- 180 -

trade custom, without disclosing that fact to the Plaintiffs, *inter alia*, breaching their contracts and their fiduciary duties owing to the Plaintiffs.

580.　　It is now all too clear that this was the ultimate high-stakes fraudulent investment scheme of the last decade. Couched in banking and securities jargon, the deceptive gamble with consumers' primary assets – their homes – was nothing more than a financial fraud perpetrated by Defendants' mortgage lending and an ENTERPRISE on a scale never before seen.

581.　　This scheme led directly to a mortgage meltdown that was substantially worse than any economic problems facing the United States.

582.　　From 2008 to the present, home values decreased in the United States as a direct and proximate result of the Defendants' scheme and ENTERPRISE set forth herein. Defendants' scheme and ENTERPRISE systematically destroyed home values county-by-county, then State-wide, and ultimately across the entire Country.

583.　　The premise of the Defendants' business scheme and ENTERPRISE was to leave the borrowers, including Plaintiffs, holding the bag once Defendants and their executives had cashed in, reaping huge salaries and bonuses and selling securities based on their inside information, while investors were still buying the increasingly overpriced mortgage pools and before the inevitable dénouement.

584.　　This massive ENTERPRISE and fraudulent scheme was a disaster both foreseen by Defendants' business and waiting to happen. The operators of Defendants' business knew such, and yet still induced the Plaintiffs into their scheme without telling them.

585.　　Defendants, knowing of this massive fraud, like Civil War carpetbaggers, sought to swoop in and profit from the carnage that had been wreaked on Plaintiffs. The Defendants sought

to ignore the responsibility for the results of the massive fraud in the mortgage assets and tainted business they were acquiring by aggressively enforcing the mortgages purchased or serviced.

586.     The Defendants did this with calculation and deliberation after the failure of the business and in full recognition of the frauds that had been perpetrated on Plaintiffs in connection with the ENTERPRISE and the mortgages.

587.     As a result of the ENTERPRISE and all of the actions of the Defendants, Plaintiffs lost their equity in their homes, their credit ratings and histories were damaged and/or destroyed, and Plaintiffs incurred material other costs and expenses, described herein. At the same time, the ENTERPRISE and the Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars in profits by selling their loans at inflated values, and betting against the home owners through the Defendants' investments in credit default swaps and other financial instruments which would benefit from the decline of Plaintiffs equity and home value

588.     With government loss-protection in their hip pocket, the Defendants, with a aggressiveness that has been chastised by numerous courts, sought to obliterate the last vestiges of value held by Plaintiffs, lock in government fill-up money and flip distressed assets for a profit. On the heels of an already bad disaster, the ENTERPRISE and the Defendants piled on after March 2009 to systematically continue the destruction of home values.

589.     Defendants' improper acts are numerous, including, *inter alia*: (i) issuing Notices of Default; (ii) misrepresenting their intention to arrange loan modifications for Plaintiffs, while in fact creating abusive roadblocks to deprive Plaintiffs of their legal rights; and (iii) and by refusing to respond, in any way, to Plaintiffs' communications.

590.      These acts continue to this day with hardball tactics and deception that continue to threaten Plaintiffs' rights and financial security, as well as the economic future of communities in the State of New York and elsewhere throughout the United States of America.

591.      The ENTERPRISE and the Carpetbagger business plan of the Defendants is no mystery. It is evident in their very formation of the ENTERPRISE to acquire the mortgage assets to which this action relates. The Defendants had hoped that helpless individual homeowners would not be able to stand up to the Defendants as they eviscerated the Plaintiffs' life's savings, chasing a hoped-for gold rush of government bail-out money to make the Defendants rich in the process, while at the same time positioning the Defendants as vultures to pick on the government-paid-for carcass that would be left over.

592.      Though they were careful not to overtly reveal the nature of their ENTERPRISE and business plan, it is patently evident that the Defendants' formation of MERS and other acts and/or omissions were for the sole purpose of obtaining an enormous portfolio of tainted mortgages, enforce them as if they were not tainted, crush the homeowners in the process to profit from government money, and then flipping the "cleansed" portfolio.

593.      The mortgage industry, including these Defendants, their agents, servants, employees, and others with whom they acted in concert, planned and performed exactly like racketeers engaged in a classic pump and dump securities fraud. They knowingly sold overvalued properties and related equities (assisting or compelling the over-valuations), first transferring the equities amongst themselves, then packaging and selling the combined overvalued equities to others (including innocent investors and retirement funds), purchasing insurance and other financial instruments, effectively betting against the mortgage holders for whom they had overvalued the properties, to profit from the inevitable drop in home values, after which they

acted improperly trying to collect on notes they did not own or possess, and trying to foreclose on properties they did not own, or for which they did not have proper documentation. Compounding this perfidy, they took monies from the government under the auspices of TARP, by which they were obligated to assist homeowners, including these Plaintiffs, but they did not do so. In this action, Plaintiffs seek to stop the ENTERPRISE and the Defendants' continuing tortiuous and bad faith behavior, and obtain the redress they are due.

## F.  WHAT THE DEFENDANTS KNEW

594.     As a result of all of these misrepresentations, fraud, acts and/or omissions of the ENTERPRISE and the Defendants, Plaintiffs lost their equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs incurred material other costs and expenses, described herein. At the same time, Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars in profits by selling their loans at inflated values.

595.     With government loss-protection in their hip pocket, the Defendants, with a voraciousness that has been chastised by numerous courts, sought to obliterate the last vestiges of value held by Plaintiffs. The Defendants sought to lock in government money and flip distressed assets for a profit. On the heels of an already bad disaster, Defendants piled on after March 2009 to systematically continue the destruction of home values.

596.     Defendants cannot aver that the market would have worked its way out of the fraud, because they knew about the liquidity crisis and devastation that the fraud and their own ENTERPRISE had already created. Notwithstanding this knowledge, the Defendants embarked on a massive campaign to crush the values of homes to feed their profiteering scheme.

597.     The Defendants knew through their investigation that, in violation of their own underwriting guidelines, the ENTERPRISE had offered Plaintiffs and others loans on overvalued property at a loan-to-value ratio that was unsustainable, and did so without income verification. The Defendants knew this, but concealed from Plaintiffs that they knew, that Plaintiffs would be unable to afford the loans once introductory discount interest rates ended, and variable interest and balloon payments kicked in.

598.     Indeed, the Defendants saw this fraud and the disjoint it had created in the market, and their ability to act fast and profiteer from the U.S. taxpayer, as key to their own ENTERPRISE.

599.     The Defendants knew that when interest payments increased and balloon payments became due, if not before, Plaintiffs and others would begin defaulting on their mortgages and would suffer grievous losses from mortgages for which they were not qualified and for which the property values had been overstated by Defendants' own appraisers.  It was a pivotal confluence of events, created and/or expedited by Defendants, which the Defendants sought to exploit for gain.  Given the inflated appraised values of their residences, even without a decline in property values, few Plaintiffs would be able to refinance or sell their homes without suffering a significant loss.

600.     The Defendants knew that the scale of the lending – based on inflated property values, without income verification and in violation of numerous underwriting guidelines – would lead to widespread declines in property values, thereby putting Plaintiffs and others into extremis through which they would lose the equity invested in their homes and have no means of refinancing or selling, other than at a complete loss. That is precisely what the Defendants' and the ENTERPRISE planned to happen, created, implemented, executed and profited from. And, that is exactly what happened to the Plaintiffs herein.

601.    The ENTERPRISE and the Defendants did not just make misrepresentations and conceal material facts from the Plaintiffs and investors. First, each of the foregoing misrepresentations was made in public documents or forums given wide communication to the public, including Plaintiffs herein. Second, the identical affirmative misrepresentations and concealment pertained to the Plaintiffs, and other borrowers.

602.    The ENTERPRISE perpetuated its lies by affirmative misrepresentations and by concealing the truth from Plaintiffs and other borrowers because to do otherwise would mean: (a) immediate disclosure of Defendants' investor fraud since Plaintiffs and other borrowers are part of the investor public receiving all other investor communications, and (b) decapitation of the source of the supply of mortgages needed for the mortgage based Ponzi scheme. The Defendants knew this when they, *inter alia*, [1] made loans that failed to comply with underwriting guidelines; [2] knowingly obtained inaccurate valuations and appraisals to support the loans; [3] knowingly failed to comply or demand compliance with local recording statutes; acquired the tainted assets; [4] bought, sold or packaged loans for sale that failed to comply with [1] or [2] above; and, [5] failed to disclose the true quality of the loans when they sold or packaged loans for sale.

603.    The concealment of the scheme from borrowers was absolutely essential because the ENTERPRISE knew it would soon be delivering Plaintiffs' notes and deeds of trust to investors and their representatives at intentionally inflated values as collateral for Defendants' fraudulent securitized pools. The Defendants knew this when they acquired the tainted assets.

604.    By not disclosing the truth of the overvalued and inflated appraisals, lax lending standards, deficient loan portfolio, shaky secondary market collateralized securities, and overall scheme to its borrowers, as set forth above, the ENTERPRISE not only made them unwitting

accomplices, but put them into a no win situation in which the price of taking a mortgage from the ENTERPRISE would be – and has been – cascading defaults and foreclosures that have wiped out billions of dollars in equity value, including the equity invested in their homes by Plaintiffs. The Defendants knew this when they acquired the tainted assets.

605.    The Defendants exacerbated this situation by setting off cascading foreclosures, leading to unemployment and economic turmoil. The foregoing has damaged all Plaintiffs.

606.    Despite billions of dollars of taxpayer-funded relief programs, property values continue to fall and unemployment and underemployment remain terribly high. The Plaintiffs are third party beneficiaries of the taxpayer-funded relief programs, yet the Defendants' have retained the taxpayer monies and not offered significant relief to the Plaintiffs. However, this is all key to the Defendants' profiteering scheme. The bigger the carnage now, the more government relief they get, and the more upside that remains in the assets they have confiscated from homeowners.

607.    As defaults increased, the Defendants used it as an opportunity to increase their fees and to punish Plaintiffs and other borrowers.

608.    The ENTERPRISE first and later the Defendants concealed and did not accurately or fully disclose to any Plaintiff herein any of the foregoing facts. Further, neither the ENTERPRISE nor Defendants disclosed or explained their schemes to Plaintiffs at any time. They did the foregoing with the intent to deceive Plaintiffs, the investing public and the U.S. taxpayer. Plaintiffs did not know the massive scheme the ENTERPRISE had started, nor that the Defendants had created, enhanced and accelerated the real estate decline, for their own profit.

609.    To the contrary, the ENTERPRISE affirmatively misrepresented its underwriting processes, the value of its mortgages and the fundamental nature of its business model in its press releases, annual report and securities filings, all of which were widely distributed to the

public, including Plaintiffs. The Defendants knew this as they created, enhanced and accelerated the real estate decline, for their own profit.

610.     The ENTERPRISE and the Defendants intended the public, including Plaintiffs, to rely upon its misrepresentations and made those misrepresentations to create false confidence in the ENTERPRISE, in the real estate market, in the related financial instruments and securities, and to further its fraud on borrowers and investors.

## G. DEFENDANTS' FURTHER BAD ACTS

611.     At the same time, Defendants continue to issue notices of default in violation of the laws of New York (and of other states), and despite assurances that the defects will be remedied; corrective action has been dilatory, at best, and in some cases fraudulent.

612.     The foregoing is indicative of the Defendants' bad acts.  Those bad acts include, but are not limited to:

a.  The intentional efforts to frustrate Plaintiffs and other borrowers seeking information about their mortgages and loan modifications.

b.  Wanton violations of the Patriot Act and similar state laws.

613.     By the foregoing acts, Defendants are intentionally making it difficult or impossible for victims of the ENTERPRISE, and of the Defendants' massive mortgage fraud and statutory violations, to enforce their rights. This is all in furtherance of the ENTERPRISE and the Defendants' scheme to profit from the misery of the Plaintiffs.

## H. PLAINTIFFS' DETRIMENTAL RELIANCE

614.     Plaintiffs would never have done business with the ENTERPRISE, the Defendants, or entered into the mortgages if the scheme had been disclosed to them.  Had the Plaintiffs known the facts concealed from them, Plaintiffs would have never entered into doomed predatory

transactions which created the tainted assets acquired by the Defendants. The predatory transactions were designed only to line the pockets of the lenders and their executives, not to actually and justifiably create value and generate capital from the Plaintiffs' equity investments in their primary residences. Despite the Defendants receipt of TARP and other government money conditioned upon its use for the benefit of Plaintiffs and others similarly situated, the Defendants have not used the monies for their intended purpose, to the detriment of the Plaintiffs as third party beneficiaries of the agreement between the Defendants and the U.S. Government. The Plaintiffs reasonably relied on the Defendants representations and/or failure to disclose, and the Plaintiffs were not reasonably able to discern the true facts on their own.

615.    If the Plaintiffs had later learned the truth, each Plaintiff would have either (a) rescinded the loan transaction under applicable law and/or (b) refinanced the loan transaction with a reputable institution prior to the decline in mortgage values in late 2008.

616.    Instead, each Plaintiff reasonably relied on the deceptions of the ENTERPRISE, and the Defendants, in originating their loans and forbearing from exercising their rights to rescind or refinance their loans.  Any Defendant who is a successor-in-interest knew or should have known of this massive fraud, and acquires all the infirmities and liabilities of the mortgages and their transferors.

617.    After entering into the transactions with each Plaintiff herein as alleged herein, the ENTERPRISE, and the Defendants, sold the notes and deeds of trust pertaining to Plaintiffs' properties. in securities transactions The sales:

a.   Included sales to nominees who were not authorized under law at the time to own a mortgage, including, among others, MERS;

b. Involved misrepresentations by the ENTERPRISE and the Defendants to investors and concealment from investors of Plaintiff's true financial condition and the true value of Plaintiff's home and mortgage;

c. Involved misrepresentations by the ENTERPRISE and/or Defendants to investors and concealment from investors of the true financial condition of other borrowers and the true value of their homes and mortgages also included in the pools;

d. Were for consideration greater than the actual value of the said notes and deeds of trust;

e. Were for consideration greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon;

f. Were part of a scheme by which the ENTERPRISE and/or Defendants bilked investors by selling collateralized mortgage pools at an inflated value; and

g. The ENTERPRISE and/or Defendants knew or should have known all of this when they acquired and/or sold the tainted assets.

618. The ENTERPRISE hid from Plaintiffs that Defendants were engaged in an effort to increase market share and sustain revenue generation through unprecedented expansions of its underwriting guidelines, inaccurate, overvalued and unrealistic real estate appraisals, taking on ever-increasing credit risk, and disregarding local recording statutes.

619. The Defendants knew or should have known all of this when they acquired the tainted assets, as it was a critical component of the ENTERPRISE and of the Defendants' own scheme to further victimize the Plaintiffs.

620. When first the ENTERPRISE and/or Defendants induced Plaintiffs to enter into mortgages, the ENTERPRISE knew or should have known their scheme would lead to a liquidity crisis and grave damage to each Plaintiff's property value and thereby result in each Plaintiff's

loss of the equity such Plaintiff invested in his house, as well as damaging the Plaintiff's credit rating, thereby causing the Plaintiff additional severe financial damage consisting of the foregoing damages and damages described elsewhere in this Complaint. The ENTERPRISE and/or Defendants concealed the foregoing from, among others, Plaintiffs, consumers and regulators. The Defendants' tainted assets have all the imperfections resulting from the Defendants' own fraudulent actions, and the Defendants knew this when they embarked on their campaign to profiteer off of the mortgage carnage and government bail-out money.

621.    Based upon the position of the ENTERPRISE and/or Defendants, as leading financial institutions and the public statements made by their representatives, including statements made in securities filings, the Plaintiffs reasonably relied upon the statements made by the foregoing and reasonably relied that no material information necessary to their decisions would be withheld or incompletely, inaccurately or otherwise improperly disclosed.

622.    In so relying, the Plaintiffs were misled and gravely damaged as described herein. The ENTERPRISE and/or Defendants initially acted negligently and/or willfully with the intention to conceal and deceive in order to benefit there from at the expense of the Plaintiffs. The Defendants thereafter acted negligently and/or deliberately in a massive scheme to crush the last vestiges of wealth from the Plaintiffs, all in a mission to profiteer from the fraud the Defendants had created, furthered, and exploited.

623.    The Defendants followed each other's direction because they are either subsidiaries of each other, directly or indirectly owned, controlled and dominated by each other, or because they are in an unequal economic and/or legal relationship with each other by which they are beholden to each other and are thereby controlled and dominated by each other.

624.    As a proximate and foreseeable result of the sale of the notes and deeds of trust regarding Plaintiffs' properties and others similarly situated for more than the actual value of such instruments, securitization pools lacked the cash flow necessary to maintain the securitization pools in accordance with their indentures.

## I.  PLAINTIFFS' DAMAGES

625.    The unraveling of the ENTERPRISE and of the fraudulent scheme has materially depressed the price of real estate throughout New York, and the entire Country, including the real estate owned by Plaintiffs, resulting in the losses to Plaintiffs described herein.

626.    It is precisely this loss of value on which the Defendants now seek to capitalize.  They have and/or would transfer a material portion of that wealth to themselves or those in collusion with them.  This scheme includes acquiring the real property at reduced values, collecting U.S. Government money for paper losses, and harvesting the future increase on the value of these artificially depressed homes.

627.    There has been considerable press attention and litigation in the United States Bankruptcy Courts and state courts establishing, *inter alia*, that in many instances the Defendants herein do not have in their possession the original or an authentic copy of the promissory notes with respect to the loans they originated and/or purport to service. Based thereon, based on other litigation of which counsel to Plaintiffs are aware, and based upon Plaintiffs interactions with Defendants, on information and belief, Plaintiffs hereby allege that Defendants have made demand for payment on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants are incapable of establishing (and do not have any credible knowledge regarding) who owns the promissory notes Defendants are purportedly servicing.

## COUNT I.
### (By All Plaintiffs Against All Defendants)
### FRAUD / DECEIT / FRAUDULENT CONCEALMENT

628.     Paragraphs 1 through 627 are hereby incorporated by reference as though fully set forth herein.

629.     The ENTERPRISE created, operated and pursued by the Defendants, jointly and severally, had exclusive knowledge of material facts not accessible or disclosed to Plaintiffs, pertaining to the mortgage lending activities, at the time the Defendants were entering into contracts with the Plaintiffs. These material facts include, *inter alia*, false and over-valued appraisals, violation of underwriting guidelines, the intent or practice of failing to comply with local recording statutes and real estate trade custom relating to such recordation, the intent to sell Plaintiffs' mortgages above their actual values to bilk investors, and knowledge that the scheme would result in a liquidity crisis that would gravely damage Plaintiffs.

630.     Further, in connection with entering into contracts with Plaintiffs, the ENTERPRISE pursued by the Defendants made partial (though materially misleading) statements and other disclosures as to their prominence and underwriting standards in the public releases, on their web site, in their literature and at their branch offices. However, the ENTERPRISE pursued by the Defendants suppressed material facts relating thereto as set forth above. The ENTERPRISE pursued by the Defendants knew that the mortgages would be "pooled," and "securitized sale", without complying with local recording statutes and real estate trade custom relating to such recordation.

631.     The ENTERPRISE pursued by the Defendants also knew that within a foreseeable period, its investors would discover that the ENTERPRISE's mortgagors could not afford their loans and the result would be foreclosures and economic devastation.

632.    The ENTERPRISE pursued by the Defendants was more dependent than many of their competitors on selling loans it originated into the secondary mortgage market, an important fact it disclosed to investors.

633.    The ENTERPRISE expected that the deteriorating quality of the loans that the ENTERPRISE was writing, and the poor performance over time of those loans, would ultimately curtail the ENTERPRISE's ability to sell those loans in the secondary mortgage market.

634.    The ENTERPRISE pursued by the Defendants misled borrowers, potential borrowers and investors by failing to disclose substantial negative information regarding the ENTERPRISE's loan products, including:

a.    The increasingly lax underwriting guidelines used by the ENTERPRISE in originating loans;

b.    The ENTERPRISE's pursuit of a "matching strategy" in which it matched the terms of any loan being offered in the market, even loans offered by primarily subprime originators;

c.    The high percentage of loans it originated that were outside its own already widened underwriting guidelines due to loans made as exceptions to guidelines;

d.    The ENTERPRISE's definition of "prime" loans included loans made to borrowers with FICO scores well below any industry standard definition of prime credit quality;

e.    The high percentage of the ENTERPRISE's subprime originations that had a loan to value ratio of 100%; and

f.    The ENTERPRISE's subprime loans had significant additional risk factors, beyond the subprime credit history of the borrower, associated with increased default rates, including reduced documentation, stated income, piggyback second liens, and LTVs in excess of 95%.

635.    The ENTERPRISE knew this negative information from numerous reports they regularly received and from emails and presentations prepared by the enterprise's chief credit risk officer.

The ENTERPRISE nevertheless hid this negative information from the public, including Plaintiffs.

636.     Plaintiffs did not know and could not reasonably discover the concealed facts.

637.     The ENTERPRISE intended to deceive Plaintiffs. As described herein, that deception was essential to their overall plan to bilk investors, trade on inside information and otherwise pump and dump the value of the enterprise's stock.

638.     The ENTERPRISE and/or the Defendants included the nation's leading providers of mortgages. The ENTERPRISE and/or the Defendants were highly regarded and by dint of their campaign of deception through securities filings, press releases, web site and branch offices, the ENTERPRISE and/or Defendants had acquired a reputation for performance and quality underwriting. As a result, Plaintiffs reasonably relied upon the deception of the ENTERPRISE and/or the Defendants.

639.     As a proximate result of the foregoing concealment by the ENTERPRISE, property values have precipitously declined and continue to decline, gravely damaging Plaintiffs by materially reducing the value of their primary residences, depriving them of access to equity lines, second mortgages and other financings previously available based upon ownership of a primary residence, in numerous instances leading to payments in excess of the value of their properties, thereby resulting in payments with no consideration and often subjecting them to reduced credit scores (increasing credit card and other borrowing costs) and reduced credit availability.

640.     In fact, property values across the United States of America precipitously declined prior to the Defendants acquiring the tainted mortgage assets and the property values continue to decline, gravely damaging Plaintiffs by materially reducing the value of their primary residences,

depriving them of access to equity lines, second mortgages and other financings previously available based upon ownership of their primary residences, in numerous instances leading to payments in excess of the value of their properties, thereby resulting in payments with no consideration and often subjecting them to reduced credit scores (increasing credit card and other borrowing costs) and reduced credit availability

641.    The Defendants acquired the mortgages or rights related thereto with knowledge of the fraudulent operations of the ENTERPRISE.

642.    The Defendants can have no more rights in the mortgage assets than their predecessors.

643.    Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages arising from this Cause of Action also include loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

644.    To this day, the Defendants profess willingness to modify Plaintiffs' loans in accordance with law, but nonetheless they persist in their ENTERPRISE and  plan to deprive Plaintiffs of their rights evidenced, in part, by their overt acts of robo-signing and filing false and questionable documents.

645.    As a result of the foregoing, Plaintiffs' damages herein are exacerbated by a continuing decline in residential property values and further erosion of their credit records.

646.    The ENTERPRISE's concealments as to their pervasive mortgage fraud, and  the Defendants' concealments, both as to the their scheme to profiteer from the mortgage melt-down

and as to their purported efforts to resolve loan modifications with Plaintiffs, are substantial

factors in causing harm to Plaintiffs described in this Complaint.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, *et. als.*, demand judgment against the Defendant, American Home Mortgage Servicing, Inc., et. als., for fraud, deceit and/or fraudulent concealment, and all actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

## COUNT II.
### (By All Plaintiffs Against All Defendants)
### INTENTIONAL MISREPRESENATION

647.     Paragraphs 1 through 646 are hereby incorporated by reference as though fully set forth

herein.

648.     The Defendants, jointly and severally, their agents, servants, employees, or others

through whom they acted in concert, intentionally failed to disclose to Plaintiffs that they and/or

MERS did and would systematically fail  to comply with local recording statutes and local real

estate trade custom regarding recordation of transfers of interests in Plaintiffs' mortgages.

649.     From 2005 through 2009, the ENTERPRISE created, pursued and maintained by the

Defendants misled the public, including Plaintiffs, by falsely assuring them that the

ENTERPRISE and/or the Defendants were a prime quality mortgage lender, which had avoided

the excesses of its competitors. As described herein with specific examples, affirmative

misrepresentations and material omissions permeated the ENTERPRISE's website, customer and

investor materials, required securities filings and presentations.

650.     The ENTERPRISE pursued by the Defendants underwent unprecedented expansion by,

among other things, aggressively making loans which were unsupported by documents, pushed

through impotent loan committees, and taken by unworthy borrowers who were destined to be

unable to repay the loans at the time the loans were made.

651.     The ENTERPRISE pursued by the Defendants never disclosed or explained their aggressive business model which was built on making these loans, many of which were over-valued, which were destined to become non-performing assets.

652.     The ENTERPRISE pursued by the Defendants never made any disclosures in its Forms 10-Q or 10-K for 2005, 2006, or 2007 about the unprecedented expansion of its underwriting guidelines. Instead, the enterprise made public statements from 2005 through 2009 that were intended to mislead Plaintiffs about the increasingly aggressive underwriting at the ENTERPRISE and the financial consequences of those widened underwriting guidelines.

653.     Nothing disclosed or provided by the ENTERPRISE informed Plaintiffs that the ENTERPRISE included in its prime category loans with FICO scores below 620.  Nor did the ENTERPRISE inform Plaintiffs that the "prime non-conforming" category included loan products with increasing amounts of credit risk, such as (1) reduced and/or no documentation loans; (2) stated income loans; or (3) loans with loan to value or combined loan to value ratios of 95% and higher. Finally, the ENTERPRISE did not disclose that enterprise's riskiest loan product, the Pay-Option ARM, was classified as a "prime loan."

654.     The ENTERPRISE pursued by the Defendants made intentional, affirmative, misleading public statements in addition to those in the periodic filings that were designed to falsely reassure Plaintiffs about the nature and quality of the enterprise's underwriting.

655.     Specifically, the ENTERPRISE repeatedly emphasized the ENTERPRISE's underwriting quality in public statements from 2005 through 2009.

656.     The growing network of branches, loan offices, and outside originators ("Network") feeding the ENTERPRISE participated in making the loans and knowingly and intentionally

assisted in drafting the false and misleading statements delivered to the public, including Plaintiffs herein.

657.     The foregoing negligent (mis)representations were made with the intention that Plaintiffs rely thereon. It was important to the ENTERPRISE that Plaintiffs rely on its misrepresentations so that Plaintiffs would come to a false understanding as to the nature of the ENTERPRISE.

658.     The foregoing negligent (mis)representations were specifically intended to convince Plaintiffs to take mortgages from the ENTERPRISE and/or the Defendants.

659.     The campaign of misinformation succeeded. Plaintiffs relied upon the negligent (mis)representations and entered into mortgages with the ENTERPRISE and/or the Defendants, which were then subsequently purchased by the Defendants or others.

660.     By reason of the prominence of the ENTERPRISE, the campaign of deception as to its business plans and the relationship of trust developed between the ENTERPRISE and Plaintiffs, Plaintiffs were justified in relying upon the ENTERPRISE's negligent (mis)representations.

661.     The ENTERPRISE and the Defendants, jointly and severally, cooperated with each other to plan and implement the scheme described herein. The ENTERPRISE and the Defendants, jointly and severally, participated in developing, making or perpetuating the intentional (mis)misrepresentations to borrowers, including Plaintiffs herein and to investors. The ENTERPRISE and the Defendants shared in the financial benefits of the scheme and ratified and approved of the material steps taken on behalf of the ENTERPRISE and by the other Defendants.

662.     The Defendants in 2009 approved of, ratified and are now seeking to profit from this same scheme through the acquisition at a discount of tainted mortgages and/or defective mortgage rights that it is seeking to enforce as if they were not tainted and/or defective.

663. As a result of relying upon the foregoing negligent (mis)representations, each Plaintiff entered into a mortgage contract with the ENTERPRISE and/or the Defendants, jointly and severally.

664. In fact, the appraisals were inflated. The ENTERPRISE and/or the Defendants, did not utilize quality-underwriting processes. At least one national real estate appraising organization made written objection to the appraisals they were being forced to provide by the ENTERPRISE and/or Defendants, but the ENTERPRISE and/or the Defendants intentionally disregarded the notice they received, and did not disclose same to Plaintiffs. The ENTERPRISE and/or the Defendant's, financial condition was not sound, but was a house of cards ready to collapse, as the ENTERPRISE and/or the Defendants well knew, but Plaintiffs did not. Further, Plaintiffs' mortgages were not refinanced with fixed rate mortgages and neither the ENTERPRISE nor any of the Defendants ever intended that they would be.

665. As a result of the scheme described herein, Plaintiffs could not afford the mortgages when the variable rate features and/or balloon payments kicked in.

666. Further, as a result of the scheme, Plaintiffs could not refinance or sell their residence without suffering a loss of their equity investments.

667. As a result of the foregoing, Plaintiffs have lost all or a substantial portion of the equity invested in their houses and suffered reduced credit ratings and increased borrowing costs, among other damages described herein.

668. The Defendants seek to enforce the mortgages irrespective of this massive fraud.

669. The Defendants acquired the mortgages or rights related thereto with knowledge of the fraudulent operations of the ENTERPRISE and/or of other Defendants.

670.     The Defendants can have no more rights in the mortgage assets than their predecessors, nor can Defendants acquire or assert rights when the underlying documents fail to comply with local recording statutes or real estate trade custom regarding recordation.

671.     Plaintiffs' reliance on the intentional (mis)representations of the ENTERPRISE and/or the Defendants their agents, servants, employees, or others through they acted, and whose acts and/or omissions they ratified, was a substantial factor in causing Plaintiffs' harm.

672.     The Defendants represented to multiple Plaintiffs that they would be assisted by the Defendants in obtaining a loan modification. As described herein, that intentional representation was false. Defendants knew that representation was false when they made it.

673.     Because of new laws pertaining to loan modifications and the Defendants' insistence that they had a genuine interest in complying therewith and in keeping borrowers in their homes, Plaintiffs reasonably relied on the representations.

674.     By delaying Plaintiffs from pursuing their rights and by increasing Plaintiffs' costs and the continuing erosion of each Plaintiff's credit rating, each Plaintiff's reliance harmed that Plaintiff, further eroding values in furtherance of the Defendants' scheme.

675.     Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages arising from the matters complained of in this Cause of Action also include loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

676.     Plaintiffs' reliance on the representations made by the ENTERPRISE and/or the Defendants was a substantial factor in causing Plaintiffs' harm.

**WHEREFORE:**    The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the Defendant, American Home Mortgage Servicing, Inc., et. als., for intentional misrepresentation, and all for actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

**COUNT III.**
**(By All Plaintiffs Against All Defendants)**
**NEGLIGENT MISREPRESENATION**

640.    Paragraphs 1 through 639 are hereby incorporated by reference as though fully set forth herein.

641.    The Defendants, jointly and severally, their agents, servants, employees, or others through whom they acted in concert, negligently failed to disclose to Plaintiffs that they and/or MERS did and would systematically fail to comply with local recording statutes and local real estate trade custom regarding recordation of transfers of interests in Plaintiffs' mortgages.

642.    Neither the ENTERPRISE, the individual Defendants, their agents, servants, employees or others through whom they acted in concert, had reasonable grounds for believing the negligent (mis)representations made to Plaintiffs to be true at the time the negligent (mis)representations were made or instructed to be made, and the negligent (mis)representations were otherwise ratified by the Defendants.

643.    Such negligent (mis)representations, fully set forth in the First and Second Causes of Action and previous sections of this Complaint, were not true.

644.    The ENTERPRISE as pursued by the Defendants, including the Defendants making negligent (mis)representations, intended that Plaintiffs rely upon those (mis)representations.

645.    The Plaintiffs reasonably relied on those negligent (mis)representations.

646.    As a result of relying upon the foregoing negligent (mis)representations, each Plaintiff entered into a mortgage contract with the ENTERPRISE and/or the Defendants..

647.     As a result of scheme described herein, Plaintiffs could not afford his or her mortgage when its variable rate features and/or balloon payments kicked in. Further, as a result of the Defendants continuing scheme, Plaintiffs could not refinance or sell his or her residence without suffering a loss of their equity.

648.     The Defendants seek to enforce the mortgages irrespective of this massive bad faith, fraud, and intentional (mis)representations.

649.     The Defendants acquired the mortgages or rights related thereto with knowledge of the f negligent (mis)representations and fraudulent operations of the ENTERPRISE and/or of other Defendants.

677.     The Defendants can have no more rights in the mortgage assets than their predecessors, nor can Defendants acquire or assert rights when the underlying documents fail to comply with local recording statutes or real estate trade custom regarding recordation.

650.     Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages as a result of the foregoing also include loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the Defendant, American Home Mortgage Servicing, Inc., et. als., for negligent misrepresentation, and for all actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

## COUNT IV.
### (By All Plaintiffs – Against All Defendants)
### UNFAIR COMPETITION &  DECEPTIVE TRADE PRACTICES

651.      Paragraphs 1 through 650 are incorporated by reference as though fully set forth herein.

652.      Defendants – and each of them – are prohibited by statute from recording a Notice of Default against the primary residential property of any without first providing proper valid statutory notice to that person. An exception to this rule of law exists in the event the Defendants are unable, with due diligence, to contact the property owner.

653.      Defendants' actions in implementing, perpetrating and then extending their fraudulent scheme of inducing Plaintiffs to accept mortgages for which they were not qualified based on inflated property valuations and undisclosed disregard of their own underwriting standards and the sale of overpriced collateralized mortgage pools, all the while knowing that the plan would crash and burn, taking the Plaintiffs down and costing them the equity in their homes and other damages, violates numerous federal and state statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair trade and commerce.

654.      The enterprise first perpetrated this fraudulent scheme of selling off overpriced loans by making willful and inaccurate credit disclosures regarding borrowers, including Plaintiffs, to third parties. This false credit disclosure was critical to the success of Defendants' continued sales of the massive pools of mortgage loans necessary to perpetuate the scheme.

655.      The Defendants extended this fraud in connection with their scheme to acquire these assets at deflated values, knowing the fraud that had been committed, but with the specific intent to seek to attempt to enforce the mortgages as sound and legitimate instruments.

656.      The ENTERPRISE and/or Defendants were aware that if the true credit profiles of the borrowers and the values of their real estate were accurately disclosed, the massive fraudulent

scheme would end.  As a result, the ENTERPRISE and/or Defendants repeated, reinforced and embellished their false disclosures.

657.    The Defendants were aware of the fraudulent scheme that had been perpetrated by the ENTERPRISE, whose assets and operations it created, furthered, and facilitated, were acquiring.

658.    The ENTERPRISE and/or Defendants knew the borrowers' credit was inadequate to support continued loan payments, absent unsustainable inflation of property values.  These pervasive false credit disclosures to third parties (including purchasers of bundled mortgage pools created by the Defendants) constituted false credit reports in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* and these pervasive false disclosures permitted the Defendants to continue their scheme and victimize the Plaintiffs.

659.    These pervasive false disclosures also caused the bubble to burst.  Once it became known that some of the information provided by the ENTERPRISE was false, the market for the sale of bundled loans dried up.  Notwithstanding their knowledge of the fraudulent nature of the assets they were seeking to enforce, the Defendants began to issue foreclosure notices, property values continued to drop, and then, under the weight of deflation in a market that requires inflation, the equity investments made by Plaintiffs and others in their homes was lost... and then Plaintiffs were lost in the greatest economic recession since the 1930s.

660.    The foregoing violations were in furtherance of the fraud perpetrated on Plaintiffs. In fact, the ENTERPRISE could not have told the truth in their public filings without that truth becoming known to Plaintiffs.

661.    Conversely, the false filings gave additional credence and support to omissions, concealment, promises and inducements. The Defendants knew of all of these violations of law

in acquiring the tainted assets and operations and then in seeking to enforce these mortgage obligations, when the Defendants knew of these meritorious defenses.

662.     The forgoing fraudulent concealment, material misstatements, and the intentional violations of state and federal statutes cited herein constitute unlawful, unfair and fraudulent business acts or practices and so constitute unfair business practices.

663.     The actions described herein are unfair and patently fraudulent in that they were conducted for the specific purposes of first perpetuating an unlawful and unsustainable investment scheme and then perpetrating a fraudulent foreclosure and confiscatory scheme.

664.     The acts and/or omissions of the ENTERPRISE and/or the Defendants, as set forth herein, constitute unfair and deceptive trade practices.

665.     Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages as a result of the foregoing also include loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

666.     As a result of the actions, concealment and deceit described herein, each of the Plaintiffs has suffered material financial injury in fact, including as described elsewhere in this Complaint, loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

667.     As a further violation of various consumer and homeowner protection statutes, and in further violation of unfair business practices statutes, each of the enterprise whose assets purchased is a "financial institution" as defined in "United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001", Title 3, § 312, and have flouted such laws in participating in unsourced mortgage transaction As a result of Defendants' unfair competition, Plaintiffs are entitled to restitution for all sums received by Defendants with respect to Defendants' unlawful and/or unfair and/or fraudulent conduct, including, without limitation, interest payments made by Plaintiffs, fees paid to Defendants, including, without limitation, the excessive fees paid at Defendants' direction, premiums received upon selling the mortgages at an inflated value and moneys received from government agencies for "losses" incurred by Defendants.

668.     Each participant of the ENTERPRISE whose assets were purchased has an affirmative burden to ascertain verify and prove, among other things, the identity, source, character, origin, and legitimacy of the funds, which they controlled, handled, and/or facilitated in its transactions.

669.     Plaintiffs are also entitled to the issuance of a temporary restraining order, a preliminary injunction, and a permanent injunction restraining and enjoining Defendants from any further concealment with respect to the sale of notes and mortgages, and a declaration of the Court declaring null and void the purported mortgages recorded against the property of each Plaintiff.

670.     Plaintiffs are informed and believe and hereon allege that none of the participants of the ENTERPRISE and/or Defendants whose assets were purchased can comply with the strict rules imposed by the laws, cited herein, that both the ENTERPRISE whose assets were purchased and the Defendants have acted in direct violation of these laws, and that the Defendants must forfeit

any and all claims, liens, encumbrances, debts, or obligations from others in accordance with the

statutes.

**WHEREFORE:** The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the Defendants, American Home Mortgage Servicing, Inc., et. als., and pray this Honorable Court for unfair competition and deceptive trade practices in violation of M.G.L. ch. 93A, and other applicable statutes, and for all actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

### COUNT V.
### (By All Plaintiffs – Against All Defendants)
### BREACH OF CONTRACT / CONSTRUCTIVE FRAUD

671.     Paragraphs 1 through 670 are incorporated by reference as though fully set forth herein.

672.     To the extent that the Defendants failed to disclose to Plaintiffs that they and/or MERS

did and would systematically fail to comply with local recording statutes and local real estate

trade custom regarding recordation of transfers of interests in Plaintiffs' mortgages, the

Defendants did breach their contract with the Plaintiffs. The Defendants performed and

proceeded in a commercially unreasonable manner, and fraudulently concealed facts from the

Plaintiffs to whom they owed fiduciary duties.

673.     The affirmative acts and/or omissions of the Defendants, and as Originators, Lenders,

Servicers, their agents, servants, employees and/or others with whom they acted in concert,

fraudulently concealed material facts, acts and/or omissions of the Defendants, breaching

the fiduciary duty(ies) owed to the Plaintiffs, jointly and severally.

674.     The acts and/or omissions of the Defendants, jointly and severally, those of their agents,

servants, employees, or others with whom they acted in concert, wherein Defendants

intentionally concealed material fact(s) to defraud or mislead the Plaintiffs, the Plaintiffs

reasonably relied on Defendants misrepresentations, and Plaintiffs reasonable reliance

did cause harm to the Plaintiffs, jointly and severally, damaging them and to their detriment.

675.     Furthermore, Defendants' acceptance of TARP money created an obligation to modify loans outstanding on Plaintiffs' real estate to the extent Defendants were pronouncing rights thereto, to assist borrowers, and to otherwise use the TARP funds for the benefit of, among others, the Plaintiffs herein.

676.     In fact, the Plaintiffs are intended third party beneficiaries of the contracts between the United States Government, certain intermediaries and the Defendants.

677.     Defendants, and each of them, breached their contractual obligations to Plaintiffs as set forth herein. Defendants further breached the contractual obligations owing to each Plaintiff in the manner alleged hereinabove.

678.     As a direct result of the acts and/or omissions of the Defendants, individually those of their agents, servants, employees, or others with whom they acted in concert, the Plaintiffs, jointly and severally, were severely damaged financially.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, et. als., jointly and severally, demand judgment against the Defendants, AMERICAN HOME MORTGAGE SERVICING, INC., et. als., for the breach of contract and constructive fraud, and seek all actual and consequential damages, including punitive damages where applicable, and interest thereon, their costs and expenses, including reasonable attorneys fees where recoverable, together with such other relief as the court may deem just and proper.

## COUNT VI.
### (By All Plaintiffs – Against All Defendants)
### CONSTRUCTIVE TRUST / 3RD PARTY BENEFICIARIES

679.     Paragraphs 1 through 678 are incorporated by reference as though fully set forth herein.

680.     The Defendants had a confidential and/or fiduciary relationship with the Plaintiffs.

681.     The Plaintiffs were the intended third party beneficiaries of certain agreements by and between Defendants and the U.S. Government. The Defendants breached their agreements with the U.S. Government, and Plaintiffs were harmed thereby.

682.     The Defendants breached their fiduciary relationship and duties owing to the Plaintiffs,

by, *inter alia*, failing to disclose to Plaintiffs that they and/or MERS did and would

systematically fail to comply with local recording statutes and local real estate trade custom

regarding recordation of transfers of interests in Plaintiffs' mortgages. The Defendants

breached their fiduciary duties owing to the Plaintiffs for the Defendants own personal

interests and self-dealing.

683.     The Plaintiffs reasonably relied on the representations by the Defendants and were

induced by same to enter into agreements with the Defendants, to create and/or transfer the

Plaintiffs mortgage interests, and the Defendants were unjustly enriched thereby.

684.     Moreover, the Plaintiffs were the intended beneficiaries of a contract between the

Defendants and the U.S. Government, since the funds were provided to Defendants conditioned

upon and for the express purpose of modifying loans for qualified homeowners, such as

Plaintiffs, and the breach of that agreement by the Defendants caused or contributed to the loss

and damages suffered by Plaintiffs.

685.     Consequently, the Plaintiffs are entitled recoupment for a contract breach harming an

outsider.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, et. als., jointly and severally, demand
judgment against the Defendants, AMERICAN HOME MORTGAGE SERVICING, INC., et.
als., for constructive trust, breach of fiduciary duty owing to the Plaintiffs, and breach of duty to
Plaintiffs as 3rd party beneficiaries of contracts with the U.S. Government, and seek all actual and
consequential damages, including punitive damages where applicable, and interest thereon, their
costs and expenses, including reasonable attorneys fees where recoverable, together with such
other relief as the court may deem just and proper.

## COUNT VII.
### (By All Plaintiffs – Against All Defendants)
### NEGLIGENCE

686.    Paragraphs 1 through 685 are incorporated by reference as though fully set forth herein.

687.    The Defendants owed express and implied duties to the Plaintiffs, arising from their

mortgage agreements.

688.    The Defendants negligently failed to use due care including, inter alia, that the

Defendants and/or MERS did and would systematically fail to comply with local recording

statutes and local real estate trade custom, regarding recordation of transfers of interests in

Plaintiffs' mortgages, and failed to compel their members to comply with same. The

Defendants, as secured parties, were obligated to act with due diligence for the preservation

of the collateral or security. The Defendants did not act with proper care or due diligence. Nor

did the Defendants and/or MERS comply or ensure compliance with MERS' own rules and

regulations whereby MERS members and subscribers were to timely record each assignment or

transfer of interest.

689.    The Plaintiffs were damaged thereby, and Defendants and/or MERS failure, as set forth

above, was the proximate cause of Plaintiffs injuries.

**WHEREFORE:**    The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the
Defendants, American Home Mortgage Servicing, Inc., et. als., for negligence, and all actual and
consequential damages, including punitive damages and attorneys' fees, where applicable, and
interest thereon, together with such other relief as the court may deem just and proper.

## COUNT VIII.
### (By All Plaintiffs – Against All Defendants)
### SLANDER OF TITLE

640.    Paragraphs 1 through 639 are incorporated by reference as though fully set forth herein.

641.    The Defendants, jointly and severally, their agents, servants, employees, or others

through whom they acted or are acting in concert, filed papers with various court claiming to be

- 211 -

the holder of a mortgage and/or Note for the Plaintiffs property when Defendants were not in possession of either the mortgage or the Note, or both, and their filing was therefore improper and unlawful.

642.     These filings falsely cast doubt on the validity of Plaintiff's title to his/her property.

643.     These filings were reasonably calculated to cause harm to Plaintiffs and resulted in damages, including special damages.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the Defendants, American Home Mortgage Servicing, Inc., et. als., for slander of title, and for all actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

## COUNT IX.
### (By All Plaintiffs – Against All Defendants)
### EJECTMENT FOR WRONGFUL POSSESSION OF CLAIM ON LAND

644.     Paragraphs 1 through 643 are incorporated by reference as though fully set forth herein.

645.     For the Plaintiffs who have been dispossessed of their property, in whole or in part, physically or by wrongful, invalid, improper, and/or illegal claims made, including claims made in the absence of proper documentation or legal records, said Plaintiffs assert their right to re-enter and take possession of their property.

646.     The Plaintiffs have been damaged by the Defendants wrongful, invalid, improper, and/or illegal claims made which claims served to dispossess or eject said Plaintiffs.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the Defendants, American Home Mortgage Servicing, Inc., et. als., for ejectment of Defendants for wrongful possession of the Plaintiffs property, and for all actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

## COUNT X.
### (By All Plaintiffs – Against All Defendants)
### CONCERT OF ACTION / MEMBER LIABILITY IN JOINT ENTERPRISE

647.     Paragraphs 1 through 646 are incorporated by reference as though fully set forth herein.

648.     The Defendants, jointly and severally, specifically including the members and/or subscribers of MERS, had an express or tacit agreement to participate in a common plan to commit a tortiuous acts (*inter alia*, by failing to disclose their systematic failure to comply with local recording statutes and local real estate trade custom regarding recordation of transfers of interests in Plaintiffs' mortgages, in breach their contract with the Plaintiffs, with MERS and with each other), and did thereby commit tortiuous acts and/or omissions.

649.     At least one of the Defendants, if not all, committed an act in pursuance of the agreement constituting a tort.

650.     The Plaintiffs were damaged by the Defendants, for which all Defendants are jointly and severally liable, resulting from Defendants tortious acts and/or omissions, and the Defendants concert of action.

651.     Upon information and belief, with reference to the MERS Defendants, its members, subscribers, and customers, no effective remedy exists without resort to individual member property or assets, and the Defendants must be held liable, jointly and severally.

**WHEREFORE:**     The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the Defendants, American Home Mortgage Servicing, Inc., et. als., for tortious concert of action, and for all actual and consequential damages, including punitive damages and attorneys' fees, where applicable, and interest thereon, together with such other relief as the court may deem just and proper.

## COUNT XI.
### (By All Plaintiffs – Against All Defendants)
### UNJUST ENRICHMENT

652.     Paragraphs 1 through 651 are incorporated by reference as though fully set forth herein.

- 213 -

653.    The Defendants owe the Plaintiffs a legal and equitable duty to account for the losses

suffered by Plaintiffs due to Defendants tortiuous acts, in breach of contract, and in breach of

statutes, and Defendants failure to make restitution therefore.

654.    The Defendants have been unjustly enriched by their acts and/or omissions, complained

of herein, to the detriment of the Plaintiffs who have been damaged thereby.

**WHEREFORE:**    The Plaintiffs, Leela ABRAHAM, et. als., demand judgment against the
Defendants, American Home Mortgage Servicing, Inc., et. als., for unjust enrichment, and for all
actual and consequential damages, including punitive damages and attorneys' fees, where
applicable, and interest thereon, together with such other relief as the court may deem just and
proper.

## FURTHER PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as

follows:

1.    General and special damages according to proof under Count I through XI, in

the sums set forth hereinabove;

2.    Declaratory relief voiding the notes and mortgages of Plaintiffs held or serviced

by the Defendants and temporary, preliminary, and permanent injunctive relief under Count I

through XI.

3.    Statutory relief according to proof;

4.    Restitution according to proof;

5.    Temporary, preliminary, and permanent injunctive forfeiture relief under all

causes of action;

6.    On all causes of action, for costs of suit herein;

7.      On all causes of action, for pre- and post-judgment interest;

8.      On all causes of action for which attorney's fees may be awarded pursuant to the governing contract, by statute or otherwise, reasonable attorney's fees; and

9.      On all causes of action, for such other and further relied as this Court may deem just and proper so that each Plaintiff shall recover no more than $74,999 in out of pocket damages and so that each Plaintiff shall receive a judicial determination that the mortgage lien alleged to exist against their particular property is null and void *ab initio*, and so other and further relief as the Court deems just and proper.

Dated: _7/30/2012_          THE RESOLUTION LAW GROUP
                           *Attorneys for the Plaintiffs*

                           By:    _Phil R. Berwish_
                                  Philip R. Berwish, Esq.
                                  BERWISH LAW
                                  *Of Counsel to*
                                  *THE RESOLUTION LAW GROUP*
                                  228 Park Avenue  Suite 30780
                                  New York, NY 10003
                                  Tel:  (800) 547-8717
                                  Fax:  (888) 743-4723
                                  PhilipB@TheResolutionLawGroup.com

Dated: _____       THE RESOLUTION LAW GROUP

                           By:    _____
                                  R. Geoffrey Broderick, Esq.
                                  Ian Berger, Esq.
                                  *Pro Hac Vice Applications Pending*
                                  The Resolution Law Group, P.C.
                                  100 Park Avenue – Suite 1600
                                  New York, NY 10017
                                  Tel: (203) 542-7275
                                  Fax: (866) 217-1003

Dated: _____                    THE RESOLUTION LAW GROUP

                          By:    _____
                                 Stephen R. Kopolow, Esq.
                                 *Pro Hac Vice Application Pending*
                                 Stephen R. Kopolow, P.C.
                                 1050 E. Flamingo Road - Suite W-146
                                 Las Vegas, NV 89119
                                 Tel: (866) 200-9360
                                 Fax: (702) 685-7237