# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| LEELA ABRAHAM, et al., | : | Case No. 12-cv-4686-WFK-JMA |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | DATE OF SERVICE: |
| | : | February 12, 2013 |
| AMERICAN HOME MORTGAGE SERVICING, | : | |
| INC., et al., | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW OF DEFENDANT STATE FARM REALTY MORTGAGE, LLC IN SUPPORT OF ITS MOTION TO SEVER AND TO DISMISS PLAINTIFFS' <u>SECOND AMENDED COMPLAINT AS ALLEGED AGAINST STATE FARM</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF THE ALLEGATIONS ................................................................................... 3

ARGUMENT .............................................................................................................................. 5

I.      PLAINTIFFS' CLAIMS ARE MISJOINED UNDER FEDERAL RULE OF
CIVIL PROCEDURE 20 ................................................................................................. 5

II.     STANDARD FOR MOTION TO DISMISS .................................................................. 7

III.    PLAINTIFFS' COMPLAINT FAILS TO MEET THE REQUIREMENTS OF
FEDERAL RULES OF EVIDENCE 8(A)(2) AND 9(B) AND THE PLEADING
STANDARDS ESTABLISHED BY *TWOMBLY* AND *IQBAL* ......................................... 8

IV.    MR. MATCHLER FAILS TO STATE ANY COGNIZABLE CLAIM FOR
RELIEF ........................................................................................................................... 10

      A.    Mr. Matchler's Fraud-Based Claims Fail As A Matter Of Law .......................... 10

           1.    Mr. Matchler's Fraud Allegations Lack The Requisite Specificity .......... 10

           2.    Mr. Matchler Cannot Properly Allege Either The "But-For"" Or
Proximate Cause Of His Purported Fraud-Based Loss .......................... 12

                  a.    The Loss of Value to Mr. Matchler's Property ............................. 13

                  b.    Plaintiff's Complaint Does Not And Cannot Properly
Allege The Cause of Any Additional Damages Purportedly
Sustained By Mr. Matchler ........................................................... 15

           3.    Mr. Matchler's Fraudulent Concealment Claim Fails Because State
Farm Did Not Owe Him A Duty Of Disclosure ........................................ 15

      B.    Mr. Matchler's Negligent Misrepresentation Claim Fails As A Matter Of
Law In The Absence Of A Special Relationship With State Farm ........................ 17

      C.    Mr. Matchler's Claim For Violations Of The GBL Fails As A Matter Of
Law ...................................................................................................................... 17

      D.    Mr. Matchler's Breach Of Contract/Constructive Fraud Claim Fails As A
Matter Of Law ..................................................................................................... 18

E.      Mr. Matchler's Constructive Trust/Third Party Beneficiary Claim Fails As
        A Matter Of Law ............................................................................................... 20

F.      Mr. Matchler's Negligence Claim Fails As A Matter Of Law .............................. 20

G.      Mr. Matchler's Slander Of Title Claim Fails As A Matter Of Law ...................... 21

H.      Mr. Matchler's Ejectment Claim Fails As A Matter Of Law ................................ 22

I.      Mr. Matchler Fails To State A Joint Enterprise Claim .......................................... 22

J.      Mr. Matchler's Unjust Enrichment Claim Fails As A Matter of Law ................... 25

CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

*101 McMurray, LLC v. Porter,*
  2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) .......................................... 20

*Aaberg v. ACandS Inc.,*
  152 F.R.D. 498 (D. Md. 1994) ............................................................... 7

*Abdelhamid v. Altria Group, Inc.,*
  515 F. Supp. 2d 384 (S.D.N.Y. 2007) .................................................. 23

*Acciai Speciali Terni USA, Inc. v. Momene,*
  202 F. Supp. 2d 203 (S.D.N.Y. 2002) .................................................. 24

*Achtman v. Kirby, McInerney & Squire, LLP,*
  464 F.3d 328 (2d Cir. 2006) ................................................................. 7

*Aequitron Medical, Inc. v. Dyro,*
  999 F. Supp. 294 (E.D.N.Y. 1998) ...................................................... 22

*Alnwick v. European Micro Holdings, Inc.,*
  281 F. Supp. 2d 629 (E.D.N.Y. 2003) ................................................. 11

*Altschuler v. University of Pennsylvania Law School,*
  1997 WL 129394 (S.D.N.Y. Mar. 21, 1997),
  *aff'd mem.* 201 F.3d 430 (2d Cir. 1999) ............................................. 12

*Arthur Properties, S.A. v. ABA Gallery, Inc.,*
  2011 WL 5910192 (S.D.N.Y. Nov. 28, 2011) ...................................... 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................. 1, 2, 7, 8, 22

*Atlantic Gypsum Co., Inc. v. Lloyds International Corp.,*
  753 F. Supp. 505 (S.D.N.Y. 1990) ...................................................... 13

*Atmosphere Sciences, LLC v. Schneider Advanced Technologies, Inc.,*
  2012 WL 4240759 (S.D.N.Y. Sept. 19, 2012) ..................................... 11

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.,*
  679 F. Supp. 2d 474 (S.D.N.Y. 2010) ................................................. 10

*Bank Leumi Trust Co. of New York v. Block 3102 Corp.,*
  180 A.D.2d 588, 580 N.Y.S.2d 299 (1992) ......................................... 20

*Bank of America Corp. v. Superior Court,*
  198 Cal. App. 4th 862 (2011) .............................................................. 14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................. 1, 7, 8, 9, 22, 23

*Burtch v. Milberg Factors, Inc.,*
  662 F.3d 212 (3d Cir. 2011), *cert. denied,* 132 S. Ct. 1861 (2012) ......... 23

*Cervantes v. Countrywide Home Loans, Inc.*,
   2009 WL 3157160 (D. Ariz. Sept. 24, 2009),
   *aff'd*, 656 F.3d 1034 (9th Cir. 2011) ................................................................. 24

*City of Cleveland v. Ameriquest Mortgage Securities, Inc.*,
   621 F. Supp. 2d 513 (N.D. Ohio 2009) *aff'd*, 615 F.3d 496 (6th Cir. 2010),
   *cert. denied*, 1315 S. Ct. 1861 (2012) ........................................................... 14, 15

*Cruz v. FXDirectDealer, LLC*,
   855 F. Supp. 2d 89 (S.D.N.Y. 2012)................................................................. 17

*Dexia SA/NV v. Deutsche Bank AG*,
   2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) ......................................................... 12

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987)........................................................................... 11

*DM Research, Inc. v. College of American Pathologists*,
   170 F.3d 53 (1st Cir. 1999)................................................................................. 9

*Dorsey v. Fisher*,
   2010 U.S. Dist. LEXIS 49564 (N.D.N.Y. May 19, 2010),
   *aff'd*, 468 F. App'x 25 (2d Cir. 2012)................................................................. 9

*E*TRADE Financial Corp. v. Deutsche Bank AG*,
   631 F. Supp. 2d 313 (S.D.N.Y. 2009)............................................................... 20

*Ellison v. American Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999)................................................................. 11

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*,
   375 F.3d 168 (2d Cir. 2004)............................................................................. 10

*Fagan v. AmerisourceBergen Corp.*,
   356 F. Supp. 2d 198 (E.D.N.Y. 2004)............................................................... 10

*Ferrone v. Brown & Williamson Tobacco Corp.*,
   1998 WL 846783 (E.D.N.Y. Sept. 25, 1998) .................................................... 24

*FLB, LLC v. 5Linx*,
   821 F. Supp. 2d 548 (W.D.N.Y. 2011) ............................................................. 19

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
   592 F. Supp. 2d 283 (N.D.N.Y. 2008), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) ........................ 23

*Goshen v. Mutual Life Insurance Co. of New York*,
   98 N.Y.2d 314, 774 N.E.2d 1190 (2002)........................................................... 17

*Holmes v. Securities Investor Protection Corp.*,
   503 U.S. 258 (1992)......................................................................................... 13

*Iannuzzi v. American Mortgage Network, Inc.*,
   727 F. Supp. 2d 125 (E.D.N.Y. 2010) ............................................................... 16

*Kunin v. Costco Wholesale Corp.*,
   2011 U.S. Dist. LEXIS 140567 (E.D. Mich. Dec. 7, 2011).................................... 6

iv

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) ................................................................................ 13

*Malmsteen v. Berdon, LLP*,
477 F. Supp. 2d 655 (S.D.N.Y. 2007) ................................................................. 11

*McAnaney v. Astoria Financial Corp.*,
665 F. Supp. 2d 132 (E.D.N.Y. 2009) ................................................................. 25

*In re Metropolitan Securities Litigation*,
532 F. Supp. 2d 1260 (E.D. Wash. 2007) ............................................................. 9

*In re Mid-Island Hospital, Inc.*,
276 F.3d 123 (2d Cir. 2002) ................................................................................ 19

*In re Mortgage Electronic Registration Systems (MERS) Litigation*,
744 F. Supp. 2d 1018 (D. Ariz. 2010) ................................................................. 24

*In re MRU Holdings Securities Litigation*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011) ................................................................. 17

*In re Nassau County Consolidated MTBE (Methyl Tertiary Butyl Ether)
Products Liability Litigation*, 2010 WL 4400075 (N.Y. Sup. Nov. 4, 2010) .......................... 18

*Nichols v. Metropolitan Life Insurance Co.*,
180 F. Supp. 2d 413 (W.D.N.Y. 2001) .................................................................. 9

*In re NVIDIA Corp. Securities Litigation*,
2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ...................................................... 11

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
85 F. Supp. 2d 282 (S.D.N.Y. 2000) *aff'd*, 2 F. App'x 109 (2d Cir. 2001) .............................. 11

*Pandit v. Saxon Mortgage Services, Inc.*,
2012 WL 4174888 (E.D.N.Y. Sept. 17, 2012) .................................................... 19

*Patel v. Contemporary Classics of Beverly Hills*,
259 F.3d 123 (2d Cir. 2001) .................................................................................. 7

*Picini v. Chase Home Financial LLC*,
854 F. Supp. 2d 266 (E.D.N.Y. 2012) ................................................................. 19

*Pittman ex rel. Pittman v. Grayson*,
149 F.3d 111 (2d Cir. 1998) ................................................................................ 23

*PNCEF, LLC v. OZ General Contracting Co., Inc.*,
2012 WL 4344538 (E.D.N.Y. Aug. 2, 2012) ................................................. 11, 12

*Quail Ridge Associates v. Chemical Bank*,
162 A.D.2d 917, 558 N.Y.S.2d 655 (1990) .................................................... 20, 21

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995) .......................................................................... 15, 16, 20

*Richards v. Deutsche Bank National Trust Co.*,
2012 U.S. Dist. LEXIS 115302 (C.D. Cal. Aug. 15, 2012) .................................. 5, 6

*Rivera v. Bank of America Home Loans*,
  2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. Apr. 21, 2011) ...................................................... 19

*Scott v. Saxon Loan Services*,
  2010 WL 1529281 (E.D.N.Y. Apr. 9, 2010) .................................................................... 21

*Sinclair Broadcast Group, Inc. v. Bank of Montreal*,
  1995 WL 70577 (S.D.N.Y. Feb. 21, 1995)........................................................................ 21

*Sorrentino v. ASN Roosevelt Center LLC*,
  579 F. Supp. 2d 387 (E.D.N.Y. 2008) ............................................................................... 18

*Stewart v. Victoria's Secret Stores, LLC*,
  851 F. Supp. 2d 442 (E.D.N.Y. 2012) ................................................................................. 9

*Trevino v. Merscorp, Inc.*,
  583 F. Supp. 2d 521 (D. Del. 2008)............................................................................... 24-25

*TVT Records v. Island Def Jam Music Group*,
  412 F.3d 82 (2d Cir. 2005)............................................................................................... 15

*United Magazine Co. v. Murdoch Magazines Distribution, Inc.*,
  146 F. Supp. 2d 385(S.D.N.Y. 2001) *aff'd sub nom. United Magazine Co. v. Curtis
  Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008)................................................................. 9

*United States v. Jolly*,
  102 F.3d 46 (2d Cir. 1996)............................................................................................... 20

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y. 2011).............................................................................. 18

*Weaver v. Indymac Federal Bank, FSB*,
  2010 WL 7634134 (S.D.N.Y. June 8, 2010) ................................................................... 8, 9

*Weil v. Long Island Savings Bank, FSB*,
  77 F. Supp. 2d 313 (E.D.N.Y. 1999 ) ............................................................................... 16

*Wilson v. Merrill Lynch & Co., Inc.*,
  671 F.3d 120 (2d Cir. 2011)........................................................................................... 7, 8

*In re Worldcom, Inc. Securities Litigation*,
  456 F. Supp. 2d 508 (S.D.N.Y. 2006), *aff'd sub nom. Holmes v. Grubman*,
  383 F. A'ppx 18 (2nd Cir. 2010)..................................................................................... 13

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 20(a)(1)(A) ................................................................................................ 1, 5

Fed. R. Civ. P. 9(b) ........................................................................................................... 10

## PRELIMINARY STATEMENT

This "mass action" is brought against 38 Defendants on behalf of hundreds of Plaintiffs, from around the country, each of whom allegedly purchased mortgages in unrelated transactions over a nine-year period between January 1, 2001, and December 31, 2009.  In their Second Amended Complaint ("Complaint"), Plaintiffs offer a litany of vague allegations against the 38 different Defendants.  Only one of the hundreds of Plaintiffs in this suit is alleged to bear any relationship to Defendant State Farm Realty Mortgage, LLC ("State Farm") – William Matchler, who allegedly secured a mortgage from State Farm Bank.[1]

Severance and dismissal of Mr. Matchler's claims is required because Plaintiffs cannot establish the necessary precondition of a "mass action" – that the injury or injuries they allege arise out of the "same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(1)(A).  Plaintiffs' claims are the purported result of hundreds of individual loan transactions spread out over nearly a decade, involving dozens of lenders, each of whom had its own loan products, qualifications, and standards of review.  Plaintiffs' attempt to join together the claims of numerous individuals who were involved in discrete and disparate transactions contravenes Federal Rule of Civil Procedure 20(a)(1).  In accord with well-reasoned authority, the Court should sever and dismiss the claims of all but the first-named Plaintiff, which would result in the dismissal of State Farm from this action in its entirety.

Plaintiffs' Complaint should be dismissed for the additional reason that it fails to allege a cognizable claim.  First, Plaintiffs' allegations do not satisfy the pleading requirements set forth in Federal Civil Procedure Rule 8(a)(2), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

---

[1] Paragraph 394 of the Complaint incorrectly alleges that State Farm Realty Mortgage, LLC is "also known as State Farm Bank, FSB."  State Farm Realty Mortgage, LLC and State Farm Bank are, in fact, different companies.  Accordingly, State Farm Realty Mortgage, LLC also reserves the right to move for dismissal at the appropriate time on that basis.

and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  According to the Complaint, Defendants, including State Farm, conspired with one another by inflating real estate appraisals, adopting lenient underwriting standards, and utilizing an electronic registry, called the Mortgage Electronic Registration System ("MERS").[2]  However, Plaintiffs do not allege ***any*** facts or details about the origin, the nature, or the mechanics of the purported industry-wide collusion.  And Plaintiffs do not identify a single individual loan issued by State Farm to Mr. Matchler (or any other Plaintiff) that allegedly involved an inflated appraisal or lax underwriting standards.  Furthermore, even if Plaintiffs' allegations did not fail under Rule 8(a)(2), *Twombly*, and *Iqbal*, their claims for fraudulent concealment, intentional misrepresentation, and negligent misrepresentation fall well-short of the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

In addition, Plaintiffs have failed to provide sufficient factual allegations to support essential elements of their claims against State Farm.  For example, Plaintiffs do not, and cannot, allege the basic elements of causation for their fraud-related claims as to Mr. Matchler (or any other Plaintiff).  Further, Mr. Matchler's claims for fraudulent concealment, negligent misrepresentation, and negligence each fail because his arm's-length relationship with State Farm did not give rise to a duty, which is a required element of those claims.  In addition, Mr. Matchler's unjust enrichment claim fails as a matter of law because quasi-contractual remedies are unavailable where, as here, there is an existing contract between the parties.

Mr. Matchler's claims suffer from a number of additional defects:

- Mr. Matchler, who is a resident of Philadelphia, Pennsylvania (SAC ¶ 205), does not have standing to sue State Farm under section 349 of the New York General Business Law (the "GBL") because the GBL applies only to

---

[2]  MERS is operated by an independent corporation called Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.").

transactions that occur in the state of New York. Mr. Matchler does not, and cannot, allege that his transaction occurred in New York.

- Mr. Matchler does not identify any contractual provisions allegedly breached by State Farm, as required for a claim of breach of contract.

- Mr. Matchler's claims for constructive fraud, constructive trust, and as a third party beneficiary each fail as a matter of law because: (i) he is not a third-party beneficiary of any relevant contract; and (ii) the borrower-lender relationship between Mr. Matchler and State Farm does not constitute a fiduciary or confidential relationship.

In short, given Plaintiffs' misjoinder of the claims of hundreds of disparate Plaintiffs, the Court should sever and dismiss the claims of all but the first-named Plaintiff, which would result in the dismissal of State Farm from this action in its entirety. In addition, Plaintiffs' claims are ill-pled and fail to state a cognizable claim against State Farm. For these reasons and those set forth below, Plaintiffs' Complaint against State Farm should be dismissed with prejudice.

## SUMMARY OF THE ALLEGATIONS

Three-hundred-and-sixty-three Plaintiffs from across the United States have brought this "mass action" against 38 largely distinct and discrete companies, including many of the nation's largest financial institutions, for losses allegedly sustained in the housing market's collapse in 2007. (Second Amended Complaint ("SAC") ¶¶ 439-475.)[3] This "mass action" includes only one Plaintiff who allegedly transacted with State Farm: William Matchler, of Philadelphia, Pennsylvania, who purportedly secured a mortgage from State Farm Bank.[4] (SAC ¶¶ 205, 431.)

---

[3] The Second Amended Complaint is attached as Exhibit A to the Declaration of Douglas E. Fleming.

[4] As noted above, the Complaint incorrectly alleges that Defendant State Farm Realty Mortgage, LLC is also known as State Farm Bank. (*See* SAC ¶ 394.) Although this Motion focuses on the numerous deficiencies with respect to Mr. Matchler's claims, to the extent that Plaintiffs attempt to allege generally that State Farm was part of a "joint enterprise" that injured Plaintiffs who did not transact with State Farm, those claims also fail for the reasons stated herein.

Plaintiffs allege, in total, eleven claims.  All Plaintiffs, including Mr. Matchler, purport to assert all claims against all Defendants. (SAC ¶¶ 402-37; *see generally* SAC.)  Those claims are: (1) fraudulent concealment; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) violations of the GBL; (5) breach of contract/constructive fraud; (6) constructive trust/third party beneficiaries; (7) negligence; (8) slander of title; (9) ejectment for wrongful possession of claim on land; (10) concert of action/member liability in joint enterprise; and (11) unjust enrichment.  Although Mr. Matchler is identified by name, Plaintiffs' Complaint provides no factual details about his loan, and no factual details about his purported injury or the allegations against Defendant State Farm beyond an assertion that, sometime between 2001 and 2009, Mr. Matchler "executed a Promissory Note in favor of the Defendants . . . which was secured by a Mortgage on his real estate."  (SAC ¶¶ 205, 431.)

Plaintiffs' claims are predicated in large part on the general allegation that the 38 individual banks "participated in a common plan and scheme . . . in the origination of loans, servicing of loans and/or acquisition of loans."  (SAC ¶¶ 439, 471.)  Plaintiffs do not provide any factual allegations about how the banks purportedly coordinated their efforts, how that alleged coordination actually operated, or how it impacted Mr. Matchler or any other Plaintiff.  The only specific point of common connection between the Defendants identified in the Complaint is wholly manufactured:  Plaintiffs allege that the fact that Defendants "log[ged] all of their mortgage transfers in a private electronic registry" operated by MERS, "instead of publicly recording the transfer[s] in the local county clerk's office[s]" is evidence of a "collected effort" or "joint enterprise."  (SAC ¶¶ 455, *see generally* ¶¶ 439-475.)  According to Plaintiffs, the use of MERS constituted, in and of itself, both a breach of contract and a tortious act.  (*See, e.g.*, SAC ¶¶ 531, 540, 546, 558.)

4

Plaintiffs do not allege any facts regarding Mr. Matchler's – or any other Plaintiff's – purportedly inflated appraisal.  Plaintiffs do not allege any facts regarding how the origination of Mr. Matchler's – or any other Plaintiff's – loan deviated from any relevant underwriting standards.  In fact, the Complaint provides no insight whatsoever into what those standards might have required or how any purported subversion of underwriting standards impacted Defendant's decision to lend money to Mr. Matchler or any other Plaintiff.  Mr. Matchler does not allege how or when his loan purportedly changed hands through the MERS system, or how any MERS-based transaction caused him injury.  In fact, he cannot:  no matter how many times his mortgage was sold (though he has not adequately alleged that it ever was) his obligations under the loan would nonetheless remain unchanged.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS ARE MISJOINED UNDER FEDERAL RULE OF CIVIL PROCEDURE 20

Severance and dismissal of Mr. Matchler's claims is required because Plaintiffs cannot satisfy the necessary precondition of a "mass action" – that the injury or injuries they allege arise out of the "same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(1)(A).  In this case, the claims of the numerous Plaintiffs are the alleged result of hundreds of individual loan transactions spread out over a nine-year period, involving dozens of lenders, each of whom had its own loan products, qualifications, and standards of review.

In considering the propriety of such mortgage mass actions, courts have overwhelming held that plaintiff-borrowers who obtained mortgage loans in different transactions cannot be joined in a single action.  As the court stated in *Richards v. Deutsche Bank National Trust Co.*, 2012 U.S. Dist. LEXIS 115302 (C.D. Cal. Aug. 15, 2012), "Plaintiffs' wholly unsupported and speculative allegation that the various Defendants conspired to defraud each individual Plaintiff does not satisfy the requirement that Plaintiffs' claims arise out of the same transaction,

occurrence, or series of occurrences, nor does it obviate the need for separate proof as to each individual claim." *Id.* at *2; *see also, e.g.*, *Abeel v. Bank of America, N.A.*, No. 12-cv-04269-JBW-RML, Transcript at 11-13 (E.D.N.Y. Nov. 9, 2012) (Weinstein, J.) (severing and dismissing hundreds of claims except for those of first-named plaintiff); *Laverde v. Bank of New York Mellon*, CV 12-4567-JFW (FMOx), Dckt. # 22 (C.D. Cal. Aug. 1, 2012) (finding misjoinder where parties "own different properties, obtained loans from different banks, have different servicing companies, and were subject to different foreclosure proceedings").[5]

Moreover, even assuming that this action arose out of the same transaction or series of transactions (which it does not), joinder would still be improper.  With hundreds of individual Plaintiffs, this case, if allowed to proceed as a mass action, would create insurmountable problems of manageability and would irreparably prejudice State Farm and the other Defendants and contravene their due process rights.  As the court explained in *Kunin v. Costco Wholesale Corp.*, 2011 WL 6090132 (E.D. Mich. Dec. 7, 2011), "[i]nstead of one cohesive trial with common questions of law and fact predominating, there would be [numerous] mini-trials rolled into one.  This would inevitably lead to jury confusion, delay, and prejudice to one or both sides." *Id.* at *7.

In sum, Plaintiffs' attempt to join together in one action the claims of numerous individuals who were involved in discrete and disparate transactions is manifestly inappropriate.  Consistent with well-reasoned authority, the Court should sever and dismiss the claims of all but the first-named Plaintiff, which would result in the dismissal of State Farm from this action in its

---

[5] *Accord, e.g., Gutierrez v. U.S. Bank, NA.,* 2:12-cv-04713-GHK, Dckt. # 8 (C.D. Cal. June 28, 2012) Dckt. # 21 (C.D. Cal. July 23, 2012); *Sugay v. Wells Fargo Bank, NA.,* 2:2012-cv-04712-JFW, Dckt. # 18 (CD. Cal. July 12, 2012); *Murillo v. Bank of Am., NA.,* 2:12-cv-04507-DDP, Dckt. # 9 at 2 n.1 (C.D. Cal. June 5, 2012); *Lifesavers Concepts Ass'n v. Bank of Am.,* 1:12-cv-00923-TWT, Dckt. # 2 (ND. Ga. Apr. 3, 2012).

entirety.  *See Aaberg v. ACandS Inc.,* 152 F.R.D. 498, 501 (D. Md. 1994) (dismissing claims of "all but the first named plaintiff"); *Abeel*, transcript at 12-13 (same).[6]

## II.     STANDARD FOR MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim is appropriate if the plaintiff has failed to plead factual allegations sufficient to make the asserted claim "plausible on its face." *Twombly*, 550 U.S. at 570.  Although the Court "accept[s] all allegations in the complaint as true and draw[s] all inferences in the non-moving party's favor," *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001), "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'"  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in the original; citation omitted).

Plaintiffs must allege facts sufficient and specific enough to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "'A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (citation omitted; emphasis added).  Where, as here, a plaintiff has not or cannot "nudg[e] [his] claims" into plausibility, dismissal is

---

[6] Any contention by Plaintiffs that State Farm's misjoinder argument "contradicts" Co-Defendant PNC's removal under 28 U.S.C. § 1332(d)(2) ("CAFA") and (d)(11)(B)(i) would be mistaken.  CAFA allows for the removal of lawsuits "in which monetary relief claims of 100 or more persons are *proposed* to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).  It is undisputed that over 300 Plaintiffs *propose* trying their cases together in this case.  It is not the burden of State Farm or any other Defendant to prove the legality, propriety, or availability of that "proposed" "mass action" before removing it.

warranted.  *Twombly*, 550 U.S. at 570.  The "'plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Wilson*, 671 F.3d at 128 (citation omitted).

## III.   PLAINTIFFS' COMPLAINT FAILS TO MEET THE REQUIREMENTS OF FEDERAL RULES OF EVIDENCE 8(A)(2) AND 9(B) AND THE PLEADING STANDARDS ESTABLISHED BY *TWOMBLY* AND *IQBAL*

Plaintiffs' Complaint fails to satisfy the requirements of Rule 8(a)(2) and the pleading standards set forth by the United States Supreme Court in *Twombly* and *Iqbal*.  Plaintiffs fail to provide ***any*** specific facts regarding Mr. Matchler or any other Plaintiff, let alone sufficient facts, that "nudg[e] [their] claims" into the realm of plausibility.  *Twombly*, 550 U.S. at 570.  Plaintiffs' allegations stand in stark contradiction to not only the reality of the housing and mortgage securities market but also basic common sense.  *See Iqbal*, 556 U.S. at 679.

Plaintiffs allege no facts to support their assertion that State Farm originated any loans based upon an inflated appraisal or flawed underwriting standards, that State Farm misused the MERS system, that State Farm failed to assist any specific borrowers with loan modifications, or that State Farm filed any specific false documents involving any Plaintiff's mortgage ownership.  Such "'naked assertion[s]' devoid of 'further factual enhancement'" cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (alteration in the original; citation omitted).

At the core of this suit is Plaintiffs' allegation that dozens of unrelated and unaffiliated Defendants "followed each other's direction" because they were "controlled and dominated by each other."  (SAC ¶ 471.)  Although this is a central and necessary element of Plaintiffs' suit, the Complaint provide no specifics about how this purported control and domination came into being, or even how it operated within the housing and mortgage securitization markets.  Instead, Plaintiffs provide only vague characterizations of "unequal economic and/or legal relationship[s]" between Defendants that somehow resulted in control, domination, and collusion.  (*Id.*)  "Claims premised upon 'conclusory, vague, or general allegations of conspiracy'

8

cannot survive a motion to dismiss." *Weaver v. Indymac Fed. Bank, FSB*, 2010 WL 7634134, at

\*5 (S.D.N.Y. June 8, 2010) (citation omitted), *aff'd* 2012 WL 5870791 (2d Cir. Nov. 21, 2012);

*see also Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012);

*Nichols v. Metro. Life Ins. Co.*, 180 F. Supp. 2d 413, 419 (W.D.N.Y. 2001).

In the place of specific factual allegations regarding specific Plaintiffs, including Mr.

Matchler, or specific Defendants, including State Farm, Plaintiffs assert nebulous, generic

allegations against Defendants as a whole.   Plaintiffs' "shotgun" approach to pleading

impermissibly substitutes "'a great web of scattered, vague, redundant, and often irrelevant

allegations'" about the market as a whole for the specificity required under the Federal Rules.  *In

re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1277 (E.D. Wash. 2007) (citation omitted); *see also

Dorsey v. Fisher*, 2010 U.S. Dist. LEXIS 49564, at \*29 (N.D.N.Y. May 19, 2010) ("conclusory

allegations against multiple defendants . . . do [ ] not state a plausible claim for relief, nor does it

give fair notice of the actual claim to any defendant."), *aff'd*, 468 Fed. App'x 25 (2d Cir. 2012).

As noted above, the allegations of "control" and "domination" at the center of Plaintiffs'

Complaint are belied by the fact that Defendant businesses are directed by discrete and

independent executives and boards of directors who guide the Defendant businesses in

***competition with one another***.   Competitive, market-based behavior, even when superficially

similar or parallel, does not constitute conspiracy or collusion.  *Twombly*, 550 U.S. at 556-577

("[Allegations] must be placed in a context that raises a suggestion of a preceding agreement, not

merely parallel conduct that could just as well be independent action.").  Plaintiffs cannot ignore

economic reality and still proffer "plausible" allegations.  *See, e.g., DM Research, Inc. v. College

of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999); *United Magazine Co. v. Murdoch

Magazines Distribution, Inc.*, 146 F. Supp. 2d 385, 401-02 (S.D.N.Y. 2001), *aff'd sub nom.*

*United Magazine Co. v. Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008).  Their claims

fail to meet the pleading requirements of Rules 8(a) and 9(b) and thus must be dismissed.

## IV.   MR. MATCHLER FAILS TO STATE ANY COGNIZABLE CLAIM FOR RELIEF
### A.   Mr. Matchler's Fraud-Based Claims Fail As A Matter Of Law

Mr. Matchler's claims for fraudulent concealment, intentional misrepresentation, and

negligent misrepresentation fail in form and substance to meet the requirements of the Federal

Rules.  Specifically, Mr. Matchler has not pled any allegations against State Farm with the

specificity mandated by Rule 9(b).  Fed. R. Civ. P. 9(b).  Indeed, Mr. Matchler *cannot* plead

sufficient facts to establish a plausible "but-for" or proximate cause of his purported (but as yet

unspecified) injuries. Even if he could, however, his claims of fraudulent concealment and

negligent misrepresentation are unavailable where, as here, there exists only an arm's-length,

borrower-lender relationship.

### 1.   Mr. Matchler's Fraud Allegations Lack The Requisite Specificity

Under Federal Rule of Civil Procedure 9(b), a properly pled allegation of fraud must

"state with particularity the circumstances constituting fraud."  To satisfy this requirement, Mr.

Matchler's fraudulent concealment claim (Count I), intentional misrepresentation claim (Count

II), and – according to a number of district courts in the Second Circuit – negligent

misrepresentation claim (Count III) must be alleged with factual specificity.  *See B & M Linen,*

*Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 484 (S.D.N.Y. 2010) (applying Rule

9(b) to intentional misrepresentation); *Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198,

218 (E.D.N.Y. 2004) (applying Rule 9(b) to fraudulent concealment); *Eternity Global Master*

*Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 188 (2d Cir. 2004) ("District

court decisions in th[e] Circuit have held that the Rule is applicable to [negligent representation]

claims.").  They are not.

10

The fact that Mr. Matchler is but one of hundreds of Plaintiffs levying allegations against dozens of Defendants does not absolve him of meeting the fundamental, threshold requirements of Rule 9(b).  "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.*, *Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 639 (E.D.N.Y. 2003).  "Rule 9(b) is 'not satisfied by a complaint in which "defendants are clumped together in vague allegations."'" *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999) (citations omitted); *see also Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293-94 (S.D.N.Y. 2000), *aff'd*, 2 Fed App'x 109 (2d Cir. 2001).

To properly plead a claim for fraud, Mr. Matchler's allegations must identify "'(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud.'" *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (citation omitted).  Thus, a plaintiff pleading fraud "must give particulars regarding 'the fraudulent content of the speech, the time and place at which the statements were made, and the identity of individuals making the fraudulent statements.'" *Atmosphere Scis, LLC v. Schneider Advanced Techs., Inc.*, 2012 WL 4240759, at *5 (S.D.N.Y. Sept. 19, 2012).  In other words, Rule 9(b) requires Mr. Matchler to "plead the 'who, what, where, when, and how' of the alleged misconduct."  *In re NVIDIA Corp. Sec. Litig.*, 2011 WL 4831192, at *2 (N.D. Cal. Oct. 12, 2011).

Mr. Matchler's allegations of intentional and negligent misrepresentation must meet this same standard.  *See PNCEF, LLC v. OZ General Contracting Co., Inc.*, 2012 WL 4344538, at *8 (E.D.N.Y. Aug. 2, 2012) ("'[A]llegations of misrepresentation, whether styled as intentional

misrepresentation or negligent misrepresentation, sound in fraud and therefore must satisfy the pleading requirements of Rule 9(b).'") (citation omitted); *see also Dexia SA/NV v. Deutsche Bank AG*, 2013 WL 98063, at *4 (S.D.N.Y. Jan. 4, 2013).

None of Mr. Matchler's fraud-based allegations meet this heightened standard.  The Complaint asserts only generic allegations against all Defendants collectively, and thus fails to address any specific actions by State Farm (or any other Defendant).  (SAC ¶¶ 476-523.)  The Complaint likewise fails to identify any specific omissions or misrepresentations that Mr. Matchler alleges resulted in his purported injury.  *See Altschuler v. Univ. of Pa. Law Sch.*, 1997 WL 129394, at *15 (S.D.N.Y. Mar. 21, 1997) (requiring "identif[ication] of . . . particular, specific misrepresentation[s]" to meet Rule 9(b)'s particularity requirement), *aff'd mem.* 201 F.3d 430 (2d Cir. 1999).  In the place of this necessary information, the Complaint alleges simply that *all* Defendants – without distinction – concealed and misrepresented facts about inflated appraisals, deviation from internal underwriting standards, and disregard of unspecified local recording statutes.  (SAC ¶¶ 476-523.)  The Complaint does not purport to identify any State Farm employee or agent who engaged in any specific concealment, how that unspecified concealment misled Mr. Matchler, the reason for State Farm's concealment or what State Farm gained from the purported concealment.  In other words, Plaintiffs have failed to identify the necessary "who, what, when, where, and why."

## 2.    Mr. Matchler Cannot Properly Allege Either The "But-For"" Or Proximate Cause Of His Purported Fraud-Based Loss

Even if Mr. Matchler could meet the heightened pleading standards of Rule 9(b), his claims for fraudulent concealment, intentional misrepresentation, and negligent misrepresentation still fail because they are not based on sufficient, plausible allegations that State Farm's actions were the cause of an identifiable and cognizable injury to Mr. Matchler.

12

Properly alleging proximate cause is a two-step process. "Proximate cause requires proof that 'but for' the wrongful act the injury would not have occurred, and proof that the injury 'can be traced directly' to the wrongful act." *In re Worldcom, Inc. Securities Litigation*, 456 F. Supp. 2d 508, 514 (S.D.N.Y. 2006) (citation omitted) *aff'd*, 383 F.App'x 18 (2d Cir. 2010). Only if Mr. Matchler can sufficiently allege "but-for" causation does the analysis then turn to proximate causation, which "limit[s] a wrongdoer's liability only to those harms that have a reasonable connection to his actions." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999). This requirement of directness is crucial to determining a plaintiff's actual damages "as distinct from other, independent, factors." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269 (1992).

Plaintiffs' Complaint provides only vague and generalized allegations that unspecified concealment and misrepresentations by State Farm were the proximate cause of a "loss of equity in [his] house[ ]," Mr. Matchler's payment of "expenses related to protecting" himself, lower credit scores, the inability to obtain credit, and other injuries resulting from his alleged loss of credit-worthiness. (SAC ¶¶ 488, 511, 523.) The Complaint provides no details in support of any of these allegations.

### a. The Loss Of Value To Mr. Matchler's Property

#### (1) Plaintiffs' Complaint Does Not And Cannot Properly Allege That State Farm's Actions Were The "But-For" Cause Of Mr. Matchler's Loss

Mr. Matchler's allegation that "but-for" State Farm's lending activities his property would not have declined in value ignores the economic reality of the housing and mortgage securities markets. *See, e.g.*, *Atl. Gypsum Co. v. Lloyds Int'l. Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990) (dismissing claim where "[p]laintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent"). The "injuries" alleged are

13

indistinguishable from those of millions of other individuals, each of whom sustained losses as a result of turbulence and instability in the housing and mortgage markets.

As a California appellate court explained, rejecting nearly identical allegations to those Plaintiffs make here, "[t]he defect . . . is that homeowners who did not obtain loans from [defendant] likewise suffered a decline in property values, a decline in their home equity, and reduced access to their home equity lines of credit." *Bank of Am. Corp. v. Superior Court*,  198 Cal. App. 4th 862, 873 (Cal. Ct. App. 2011).   As a result, "[i]rrespective of whether a homeowner obtained a loan from [defendant], or obtained a loan through another lender, or whether a homeowner owned his or her home free and clear, *all* [homeowners] suffered a loss of home equity due to the generalized decline in home values."  *Id.* (emphasis added).  In other words, Plaintiffs cannot distinguish *Mr. Matchler's* alleged injury from losses sustained by millions of both similarly- and differently-situated individuals.  As such, Mr. Matchler cannot sufficiently allege "but-for" causation.

> **(2)      Plaintiffs' Complaint Does Not And Cannot Properly Allege That State Farm's Actions Were The Proximate Cause Of Mr. Matchler's Loss**

Mr. Matchler's failure to allege sufficient facts to establish "but-for" causation is fatal to his fraud-based claims.  Even assuming, *arguendo*, that he could establish that "but-for" some (unspecified) deceptive statement by State Farm his property would not have declined in value, he nonetheless fails to establish the "directness" necessary to properly allege proximate causation.  As noted above, Mr. Matchler's alleged injuries are indistinguishable from market-based losses experienced by millions of other when the housing market declined.  As a matter of basic economics, "the broad decline in the housing market . . . was the product of a myriad of factors occurring in unknown and unknowable proportions."  *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513 (N.D. Ohio 2009), *aff'd*, 615 F.3d 496, 535 (6th Cir.

14

2010), *cert. denied*, 1315 S.Ct. 1685 (2011).  Mr. Matchler cannot sufficiently allege proximate

cause by isolating *his* mortgage and holding it apart from the "myriad" intertwined factors that

contributed to his, and others', losses.

> **b.    Plaintiff's Complaint Does Not And Cannot Properly Allege
> The Cause of Any Additional Damages Purportedly Sustained
> By Mr. Matchler**

Mr. Matchler's allegations that State Farm's conduct caused him additional injuries

beyond the decline in the value of his property – including "expenses related to protecting

[himself]," lower credit scores, the inability to obtain credit, and other injuries resulting from an

alleged loss of credit-worthiness – are equally insufficient and unavailing.  (SAC ¶¶ 488, 511,

523.)  As above, Mr. Matchler attempts to isolate his borrower-lender relationship with State

Farm as the source of a variety of purported injuries.  But, as explained above and below, the

economic harms he identifies are the product of complex market forces and cannot be directly

tied to his mortgage, let alone any misrepresentation or deception by State Farm.  Because the

collapse of the housing market affected the country *as a whole*, the "injuries" Mr. Matchler

generically invokes do not differ from those suffered by many others, ***whether or not they were***

***mortgagors***.  Further, to the extent he alleges that he "individually" expended money to prevent

his foreclosure (a foreclosure he offers no details about) or that he experienced some unspecified

credit-related damages, his allegations are, in fact, unrelated to his claims here – those "injuries"

are the result of his failure to pay his mortgage, not the actions of State Farm.

> **3.    Mr. Matchler's Fraudulent Concealment Claim Fails Because
> State Farm Did Not Owe Him A Duty Of Disclosure**

Fraudulent concealment claims are available only in those instances where a non-

disclosing party has a duty to disclose.  *See, e.g.*, *TVT Records v. Island Def Jam Music Grp.*,

412 F.3d 82, 90-1 (2d Cir. 2005); *Remington Rand Corp. v. Amsterdam Rotterdam Bank, N.V.*,

68 F.3d 1478, 1483 (2d Cir. 1995).   As a general rule, this duty arises in the context of a fiduciary relationship.   But the relationship between a mortgage lender and a borrower is not fiduciary.   *See Weil v. Long Island Sav. Bank, FSB*, 77 F. Supp. 2d 313, 323 (E.D.N.Y. 1999) (stating that there is no fiduciary relationship between banks and "normal mortgage consumers"); *see also Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010).

Where, as here, there is no fiduciary relationship, a duty to disclose is limited to those instances where: "(1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, or (2) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Remington Rand*, 68 F.3d at 1484 (citations omitted).   Mr. Matchler has not alleged ***any*** facts establishing State Farm's duty to disclose – including any partial misrepresentations or superior knowledge – and, as a result, his allegations of fraudulent concealment fall well-short of the requirements of Rule 9(b) as well as fail as a matter of law.

In the place of specificity, Mr. Matchler merely restates the elements of his allegation, vaguely alleging that State Farm "made partial (though materially misleading) statements" regarding "[its] prominence and underwriting standards in public releases, on [its] web sites, in [its] literature, and/or at [its] branch offices."   (SAC ¶ 478.)   In doing so, he fails to identify any specific, purported partial statements made by State Farm, fails to identify any State Farm employees or agents who made partial statements, fails to identify when or where those statements may have been made, and provides no detail as to why those alleged  representations were incomplete.   (*Id.*)   Similarly, he generically alleges that State Farm possessed "exclusive knowledge" that was "not accessible or disclosed" to him. (SAC ¶ 477).   Mr. Matchler's failure to provide the necessary facts underlying his claims, including the identity of any individual who

16

misrepresented any fact or possessed "superior knowledge" (or even the specific nature of that "superior knowledge"), is fatal to his claim.[7]

### B.   Mr. Matchler's Negligent Misrepresentation Claim Fails As A Matter Of Law In The Absence Of A Special Relationship With State Farm

A claim of negligent misrepresentation can only be sustained in the presence of a special relationship that gives rise to a duty to give correct information.  *See, e.g.*, *Arthur Props., S.A. v. ABA Gallery, Inc.*, 2011 WL 5910192, at *5 (S.D.N.Y. Nov. 28, 2011).  Under New York law, a borrower-lender relationship like that at issue here "does not support a cause of action for negligent misrepresentation."  *Id.* at *4.  Accordingly, Mr. Matchler's claim for negligent misrepresentation is not cognizable.

### C.   Mr. Matchler's Claim For Violations Of The GBL Fails As A Matter Of Law

Mr. Matchler's GBL claim (Count IV) fails for a variety of reasons.  As a threshold matter, Mr. Matchler resides in Pennsylvania (SAC ¶ 205), and he does not provide any factual allegation that he secured his mortgage in New York state.  (SAC ¶¶ 205, 431.)  To qualify as a prohibited act under the statute, however, the underlying transaction must occur in New York. *Cruz v. FXDirectDealer, LLC*, 855 F. Supp. 2d 89, 100 (S.D.N.Y. 2012); *Goshen v. Mutual Life Ins. Co. of New York*,  98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (N.Y. 2002).

Even if he was not foreclosed by location, Mr. Matchler's GBL claim would still fail. The alleged but unidentified "deception" on which he bases his GBL claim, and the alleged injuries rising out of that deception, are indistinguishable from those asserted in his poorly pled claims for fraud and misrepresentation.  *(Compare* SAC ¶ 529 *with* SAC ¶¶ 488, 511, 523.)  Mr.

---

[7] There is no independent duty to disclose the commission of wrongful conduct.  *See In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 515 (S.D.N.Y. 2011) ("It is 'rather circular to say that the Individual Defendants committed fraud by concealing their intent to commit fraud.'" (internal quotations and citation omitted)).

Matchler could not establish a sufficient causal relationship for his fraud and misrepresentation claims, and he cannot establish that link to his GBL claims.

"To successively state a claim pursuant to GBL § 349, a plaintiff must plead and prove: (1) a consumer oriented transaction; (2) deceptive acts by the defendant; and (3) injury caused by such deceptive acts."   *Sorrentino v. ASN Roosevelt Center LLC*, 579 F.Supp.2d 387, 391 (E.D.N.Y. 2008)   "[A]llegations that do not detail the materially misleading or deceptive acts of defendants are insufficient to plead a cause of action under GBL § 349."   *In re Nassau County Consol. MTBE (Methyl Tertiary Butyl Ether) Prods. Liab. Litig.*, 2010 WL 4400075, at *17 (N.Y. Sup. Nov. 4, 2010).  Mr. Matchler's failure to sufficiently allege any plausible, direct link between the actions he purports to identify and any alleged injuries mandates dismissal. *Sorrentino*, 579 F.Supp.2d at 391.

###    D.    Mr. Matchler's Breach Of Contract/Constructive Fraud Claim Fails As A Matter Of Law

Mr. Matchler's allegations supporting his conflated claim for breach of contract and constructive fraud (Count V) are vague, insufficient, and suffer from intrinsic and unavoidable factual and legal flaws.  As such, his claim should be dismissed.

To properly plead a claim of breach of contract, Mr. Matchler "'must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.'"   *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) (citation omitted).  Where, as here, a Plaintiff "do[es] not provide any evidence, or factual allegations, in support of this claim," including, but not limited to "where [the relevant] contractual provision can be found," the Plaintiff's "[v]ague and conclusory allegations . . . are insufficient to make out a claim for breach of contract that can survive a motion to dismiss."   *Id.*

Instead of providing any relevant contractual provision that was breached by State Farm, Mr. Matchler alleges that State Farm breached its contract with him by "fail[ing] to disclose" that it was not complying with local recording statutes or customs, and likewise failed to disclose its use of "inflated appraisals." (SAC ¶ 531.) But any "duty to disclose" sounds in tort, not contract (and, as explained *supra* at 15-16, does not exist here). Absent an identified contract provision mandating this disclosure, Mr. Matchler's allegations are insufficient to state a claim for breach of contract.

Further, Mr. Matchler's attempts to reanimate and rehabilitate previously rejected borrower suits based upon purported violations of Servicer Participation Agreements ("SPAs") with Fannie Mae under the Home Affordable Modification Program ("HAMP") are unavailing. Because Mr. Matchler "is not the intended third party beneficiary of the Agreement," he "lacks standing to assert a breach of contract claim against defendant." *Rivera v. Bank of Am. Home Loans*, 2011 U.S. Dist. LEXIS 43138, at *21 (E.D.N.Y. Apr. 21, 2011). For this, and other reasons, "the vast majority of courts, including those in this Circuit . . . have rejected third-party breach of contract claims arising out of HAMP and SPAs." *Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 272 (E.D.N.Y. 2012); *see also Pandit v. Saxon Mortg. Servs., Inc.*, 2012 WL 4174888, at *3 (E.D.N.Y. Sept. 17, 2012). For all of the above reasons, Mr. Matchler's breach of contract claim fails as a matter of law.

To state a claim for constructive fraud, a fiduciary or confidential relationship between parties is, as a general rule, a necessary prerequisite. *See In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002); *FLB, LLC v. 5Linx*, 821 F. Supp. 2d 548, 559 (W.D.N.Y. 2011). Here, where the relationship between Mr. Matchler and State Farm was **not** fiduciary but instead an "arm's-length business negotiation," and where Mr. Matchler has not, and cannot, establish a

confidential relationship, his claim for constructive fraud fails as a matter of law. *E*Trade Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 388 (S.D.N.Y. 2009). Dismissal is warranted.

**E.    Mr. Matchler's Constructive Trust/Third Party Beneficiary Claim Fails As A Matter Of Law**

Mr. Matchler (with other Plaintiffs) contends that "[a] constructive trust exists in favor of the Plaintiffs as the Defendants have a confidential or fiduciary relationship with Plaintiffs." (SAC ¶ 539) (Count VI). But, as discussed above, borrower-lender relationships are not fiduciary or confidential in nature and, "absent special circumstances, a lender does not incur fiduciary obligations toward its debtor." *Remington Rand*, 68 F.3d at 1483; *see also United States v. Jolly*, 102 F.3d 46, 48 (2d Cir. 1996); *Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*, 180 A.D.2d 588, 589 N.Y.S.2d 299 (N.Y. App. 1st Div. 1992). Mr. Matchler has not identified the factual basis of any special relationship. Indeed, the fact that Plaintiffs assert generic claims for a constructive trust on behalf of all Plaintiffs against all Defendants, without distinction, belies any purported "specialness." Mr. Matchler's "failure to set forth facts from which the Court can infer that any of the Defendants stood in a confidential or fiduciary capacity with respect to Plaintiff 'is fatal to [his] claim for a constructive trust.'" *101 McMurray, LLC v. Porter*, 2012 WL 997001, at *14 (S.D.N.Y. Mar. 26, 2012) (citation omitted).[8]

**F.    Mr. Matchler's Negligence Claim Fails As A Matter Of Law**

To sustain a claim for negligence (Count VII), Mr. Matchler is required to identify both a duty of care on the part of State Farm that existed independent of his contract with State Farm and a breach of that duty. "It is well-settled that 'a tort may accompany a breach of contract . . .

---

[8] Plaintiffs' repeated assertion that they are third party beneficiaries under the SPAs are equally unavailing. (SAC ¶ 543.) As explained earlier, Plaintiffs are not third party beneficiaries under the SPAS. (*See supra* at 19.) To the extent Mr. Matchler's claim for a constructive trust is based on his status as third-party beneficiaries, it should be dismissed.

only where the contract creates a relation out of which springs a duty, *independent of the contract obligation*, and that independent duty is also violated.'"   *Quail Ridge Assocs. v. Chemical Bank*, 162 A.D.2d 917, 919 (N.Y. App. 3d 1990) (citation omitted); *see also Sinclair Broad. Grp., Inc. v. Bank of Montreal*, 1995 WL 70577, at *6-7 (S.D.N.Y. Feb. 21, 1995). Borrower-lender relationships, like that between Mr. Matchler and State Farm, are commercial and arm's-length and "courts have consistently rejected the notion that a lender owes a duty of care to a prospective borrower."   *Sinclair Broadcast Grp*., 1995 WL 70577, at *6-7.   Mr. Matchler has not alleged cognizable basis for any such independent duty.   As such, his negligence claim fails as a matter of law.

### G.    Mr. Matchler's Slander Of Title Claim Fails As A Matter Of Law

Plaintiffs' Complaint alleges, generally, that unidentified Defendants "filed papers with various courts claiming to be the holder of a mortgage and/or Note for the Plaintiffs [*sic*] property (or some of them) when Defendants (or some of them) were not in possession of either the mortgage or the Note."   (SAC ¶¶ 551.)   The Complaint does not identify the papers filed, courts within which papers were filed, or the holders of those "mortgage[s] and/or Note[s]."

This failure to plead any relevant factual detail is fatal to Mr. Matchler's claim for slander of title (Count VIII).   Under New York law, a properly stated claim for slander of title requires that Mr. Matchler sufficiently allege (1) a communication falsely casting doubt on the validity of a title, (2) that is reasonably calculated to cause harm, and (3) that results in special damages. *See Scott v. Saxon Loan Servs.*, 2010 WL 1529281, at *10 (E.D.N.Y. Apr. 9, 2010).   To meet that requirement Mr. Matchler must sufficiently allege not only State Farm's malicious intent or reckless disregard for truth or falsity (he has not), but also how State Farm's purported false communications rendered his title "unmarketable" or cast doubt on the validity of his title (he has not). *Id.*

21

Mr. Matchler's cursory recitation of the elements of his slander of title claim amounts to nothing more than a "'naked assertion[]' devoid of 'further factual enhancement." *Iqbal*, 556 U.S. at 678 *(*quoting *Twombly*, 550 U.S. at 557). Mr. Matchler does not identify any malice or recklessness. And he ***cannot*** establish the means by which any purported "false communication" rendered the title to his home "unmarketable" or called into question the validity of its title. Mr. Matchler's status as a mortgagor, with its attendant obligations, would remain unchanged ***even if*** the alleged but unidentified "false communications" were made.[9]

### H.     Mr. Matchler's Ejectment Claim Fails As A Matter Of Law

Plaintiffs' Complaint is evasive about the basis and context of Plaintiffs' claims for ejectment (Count IX). Instead, Mr. Matchler (and Plaintiffs) generically invoke unspecified "wrongful, improper and/or illegal claims" made by State Farm and other Defendants and, based on these unspecified claims, "assert [a] right to re-enter and take possession of their property." (SAC ¶ 555.)[10] Once again, the rote invocation of the elements of a claim – without "factual enhancement" – is insufficient to satisfy Rule 8(a) and the standards established in *Iqbal* and *Twombly*. *See, e.g.*, *Iqbal*, 556 U.S. at 678. The claim for ejectment should be dismissed.

### I.     Mr. Matchler Fails To State A Joint Enterprise Claim

Mr. Matchler (with all Plaintiffs) generally alleges that State Farm and the other Defendants, "jointly and severally, specifically including the members, subscribers and/or participants of MERS, had an express or tacit agreement to participate in a common plan to commit a tortious acts [sic]." (SAC at ¶ 558) (Count X). The purported tortious acts

---

[9] Further, to the extent Plaintiffs' claim for slander of title is based upon unidentified "statements" made to courts in the context of litigation, these statements are privileged and thus not a proper basis for their claim. *Aequitron Med., Inc. v. Dyro*, 999 F. Supp. 294, 297-98 (E.D.N.Y. 1998).

[10] Evidence of state court judgments of foreclosure or eviction are barred by the *Rooker-Feldman* doctrine and/or principles of *res judicata* and collateral estoppel.

conclusorily alleged include a "failure to disclose" a lack of compliance with local recording statutes, local real estate trade customs, and Defendants' obligation to record transfer within the MERS system.  (*Id.*)  Plaintiffs assert that these "failures" were in "breach of their contract with and duties owing to the Plaintiffs."  (*Id.*)

To properly plead a claim for joint enterprise, however, Plaintiffs must provide ***some*** details regarding the purported "'common plan or design to commit a tortious act,'" who the parties were that "'actively [took] part in it,'" and the nature of the "'cooperation or request'" at its core.  *Pittman ex rel. Pittman v. Grayson*, 149 F.3d 111, 122 (2d Cir. 1998) (citation omitted); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 299 (N.D.N.Y. 2008) (dismissing "[m]ere conclusory allegations that a massive conspiracy occurred to steal the equity in Plaintiff's . . . absent any allegations of specific conduct evidencing this plot."), *aff'd*, 421 F.App'x 97 (2d Cir. 2011).  He does not and cannot.  *See, e.g.*, *Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011).

Even assuming, *arguendo*, that Plaintiffs ***could*** sufficiently allege the necessary whys and wherefores of a joint enterprise claim – and they cannot – their claims nonetheless still fail.  "A claim based on joint enterprise liability will fail if the plaintiff does not allege that a participant in a joint enterprise could control the other participants with respect to the particular course of conduct that caused the plaintiff's injury."  *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 395 (S.D.N.Y. 2007).  Here, the assertion that "unequal economic or legal relationships" (SAC ¶ 471) were the source of domination and control is in contradiction with the requirement that each member of a joint enterprise have "an equal right to direct or control the other members."  *Id* at 395.  Mutual and equal control is not the "plausible" result of economic and legal inequality.

In addition, Plaintiffs' failure to sufficiently allege their *other* tort claims is fatal to their joint enterprise claim, which must be predicated on an underlying intentional tort. *See Ferrone v. Brown & Williamson Tobacco Corp.*, 1998 WL 846783, at *5 (E.D.N.Y. Sept. 25 1998).

To the extent that Plaintiffs allege that participation in, and contribution to, MERS by State Farm and other Defendants is the legal equivalent of a "concerted action," those allegations are skeletal and ill-defined. Plaintiffs' Complaint provides no details explaining how participation in MERS by *competing lenders* constitutes concerted action, nor does it identify any intentional tort underlying MERS-related activities. The court presiding over the multidistrict litigation concerning MERS rejected the very premise that the use of MERS was inherently fraudulent or misleading. *See In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 744 F. Supp. 2d 1018, 1029 (D. Ariz. 2010) (rejecting claims that lenders conspired to commit fraud through the use of MERS). Nor is MERS intrinsically harmful to borrowers. Because "[t]he original mortgage between the borrower and the lender, which lists MERS as the beneficiary, is recorded in the public land records," the fact that subsequent sales are not recorded "does not alter Plaintiffs' obligations under the mortgages." *Cervantes v. Countrywide Home Loans, Inc.*, 2009 WL 3157160, at *11 (D. Ariz. Sept. 24, 2009), *aff'd*, 656 F.3d 1034 (9th Cir. 2011). Mr. Matchler (and every other Plaintiff) has failed to allege any material change in obligation or any injury directly resulting from State Farm's participation in MERS.[11]

---

[11] Although it is not alleged in depth or detail, to the extent Mr. Matchler seeks to pursue claims against Defendant State Farm simply because it is a "stakeholder" in MERSCORP Holdings, Inc., the parent corporation of MERS, his claims are equally impermissible. (SAC ¶ 383.) To impose such liability under Delaware law – applied here because "[t]he law of the state of incorporation determines when the corporate form will be disregarded," *Acciai Speciali Terni USA, Inc. v. Momene*, 202 F. Supp. 2d 203, 207 (S.D.N.Y. 2002) (alteration in original) (citation omitted), and both MERSCORP and MERS are Delaware corporations – Mr. Matchler must provide "adequately pled facts" that the corporate form was used to "'defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'" *Trevino v. MERSCORP,*
*(cont'd)*

**J.      Mr. Matchler's Unjust Enrichment Claim Fails As A Matter of Law**

Mr. Matchler's claim that State Farm has been unjustly enriched by collecting mortgage payments also fails as a matter of law (Count XI).  If a contract, like a mortgage note, governs a particular subject, a remedy in quasi-contract is precluded. *See, e.g.*, *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 175 (E.D.N.Y. 2009) ("The theory of unjust enrichment lies as a quasi-contractual claim.  It is an obligation the law creates *in the absence of any agreement.*") As a result, Mr. Matchler's claim for unjust enrichment fails as a matter of law.

## <u>CONCLUSION</u>

For all the foregoing reasons, State Farm respectfully requests that this Court grant its motion to sever and dismiss, and dismiss with prejudice Plaintiffs' Second Amended Complaint against State Farm.

Dated: New York, New York   Respectfully submitted,
   February 12, 2013

         /s/ Douglas E. Fleming III
         Douglas E. Fleming II(Douglas.Fleming@skadden.com)
         Douglas W. Dunham (Douglas.Dunham@skadden.com)
         *Of Counsel*
         Spencer R. Short (Spencer.Short@skadden.com)
         *Of Counsel*
         SKADDEN, ARPS, SLATE,
         MEAGHER & FLOM LLP
         Four Times Square
         New York, New York 10036
         (212) 735-3000
         *Attorneys for Defendant State Farm*
         *Realty Mortgage, LLC (incorrectly listed as also known*
         *as State Farm Bank, FSB)*

---

*(cont'd from previous page)*
*Inc.*, 583 F. Supp. 2d 521, 529 (D. Del. 2008) (refusing to pierce the veil between MERSCORP and MERS and dismissing claims) (citation omitted).  As explained at length above, Mr. Matchler has failed to sufficiently plead any such factual allegations.