UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                   :
Leela ABRAHAM, *et al.*,                           :
                                                   :        MEMORANDUM AND ORDER
                        Plaintiffs,                :
                                                   :        12-cv-4686 (WFK) (JMA)
        -against-                                  :
                                                   :
AMERICAN HOME MORTGAGE SERVICING,  :
INC., *et al.*,                                    :
                                                   :
                        Defendants.                :
                                                   :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

      Plaintiffs, a group of several hundred current and former homeowners, brought this action

against several dozen mortgage originators and servicers (collectively "Defendants"), alleging

Defendants, *inter alia*, induced Plaintiffs to enter into mortgages based on inflated appraisals;

purposefully avoided local recordation statutes, thereby clouding Plaintiffs' titles; transferred,

bundled, packaged and sold their mortgages to investors while simultaneously betting against

those mortgages; and failed to use TARP funds to help Plaintiffs, as required under law.  As a

result, Plaintiffs claim they lost equity in their homes, suffered damage to their credit ratings, and

incurred unnecessary costs and expenses.  Plaintiffs bring claims for fraud, deceit, and fraudulent

concealment; intentional misrepresentation; negligent misrepresentation; unlawful and deceptive

trade practices; breach of contract and constructive fraud; constructive trust / third-party

beneficiaries; negligence; slander of title; ejectment for wrongful possession of claim on land;

concert of action and member liability in a joint enterprise; and unjust enrichment.

Defendants have filed several motions to sever and dismiss under Rule 12 of the Federal Rules of Civil Procedure, asserting that, *inter alia*, Plaintiffs are misjoined, have failed to state a claim, have not demonstrated that Defendants owed them a duty of care, have failed to demonstrate causation, and have failed to establish personal jurisdiction over certain Defendants. Plaintiffs have moved to file a third amended complaint. For the reasons stated below, the Court grants Defendants' motion to sever, and dismisses without prejudice all Plaintiffs except the first named Plaintiff. With regard to the claims of the first named Plaintiff, the Court finds that Ms. Abraham has failed to state a claim under Rule 12(b)(6) and dismisses her claims in their entirety.

## BACKGROUND

Mortgage Electronic Registration Systems, Inc. is a wholly owned subsidiary of MERSCORP (collectively "MERS"). *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, MDL No. 09-2119-JAT, 2011 WL 4550189, at \*3 (D. Ariz. Oct. 3, 2011) (Teilborg, J.). MERS owns and operates the MERS System, a "national electronic registry system that tracks the changes in servicing rights and beneficial ownership interests in mortgage loans that are registered on the registry." MERS, *About Us*, http://www.mersinc.org/about-us/about-us (last visited May 22, 2013).

In their second amended complaint, Plaintiffs allege "[t]he mortgage industry created MERS to allow financial institutions to evade county recording fees, avoid publicly recording mortgage transfers, and facilitate the rapid sale and securitization of mortgages en masse." Second Am. Compl. ("Compl.") at ¶ 455. Under this system, financial institutions designate MERS as the mortgagee of the loan in local public records and then log all mortgage transfers in

the private MERS registry. *Id.* Because MERS remains the nominal mortgagee, financial institutions need not publicly record subsequent sales or transfers. *Id.*

MERS is designated as the mortgagee on tens of millions of mortgages throughout the country. *Id.* at ¶ 457. MERS requires members to pay an annual membership fee and also charges a modest fee to register a mortgage in the system and to register transactional changes associated with that mortgage. *Id.* at ¶ 444. MERS has few employees, but has designated over 20,000 employees of its members as MERS "certifying officers" to act on behalf of MERS. *Id.* at ¶ 457. These certifying officers are authorized to assign MERS mortgages, to execute paperwork necessary to foreclose on properties secured by MERS mortgages, and to submit proofs of claims and affidavits on behalf of MERS in bankruptcy proceedings. *Id.*

Defendants are members, subscribers, or participants in the MERS System. *Id.* at ¶ 444. Plaintiffs allege Defendants participated in the MERS System without disclosing that MERS would be used to avoid local recordation statutes, which failure to properly record Plaintiffs' mortgages created a cloud on the titles of Plaintiffs' properties. *Id.* at ¶ 442. Defendants then transferred, bundled, packaged, and sold these mortgages to investors, while simultaneously betting against the viability of these mortgages. *Id.* at ¶ 443. In addition, Defendants sold notes and deeds of trust pertaining to Plaintiffs' properties to nominees who were not authorized under law to own mortgages, misrepresented Plaintiffs' true financial condition and the true values of Plaintiffs' homes and mortgages, and further misled investors by selling collateralized mortgage pools at an inflated value. *Id.* at ¶ 470. MERS failed to ensure that its records were accurate and up-to-date, and did not enforce its requirement that transfers be recorded in a timely manner. *Id.* at ¶ 465.

Plaintiffs separately allege Defendants induced them to enter into mortgages based, in part, upon appraisals Defendants knew were inflated. *Id.* at ¶ 440. Further, these inflated appraisals were produced with the knowledge, acquiescence, or insistence of Defendants, who coerced inflated appraisals from the appraisers. *Id.* Defendants also failed to comply with the underwriting guidelines intended for use in originating Plaintiffs' loans. *Id.* at ¶ 443.

As a result of Defendants' actions, Plaintiffs lost equity in their homes, suffered damage to their credit ratings and histories, and incurred other costs and expenses. *Id.* at ¶ 451. Plaintiffs claim Defendants knew or should have known that the scale of Defendants' lending, which was based on inflated property values and insufficient income verification, and which violated loan underwriting guidelines, would lead to widespread declines in property values, which would in turn cause Plaintiffs to lose the equity they had invested in their homes and prevent Plaintiffs from refinancing or selling their homes except at a loss. *Id.* at ¶ 453.

Plaintiffs filed this action on May 3, 2012 in the Supreme Court of New York, Kings County, and filed a first amended complaint before that court on July 30, 2012. Notice of Removal, Dkt. No. 1, Ex. A. On September 19, 2012, PNC Bank, National Association, one of the Defendants in the action, removed the case to this Court. Notice of Removal, Dkt. No. 1. Plaintiffs filed a second amended complaint before this Court on November 8, 2012. Compl., Dkt. No. 94.

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must

4

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## LEGAL ANALYSIS

### I.      Joinder

Rule 20 of the Federal Rules of Civil Procedure provides that multiple individuals may join in one action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). "The purpose of Rule 20 is to promote trial convenience and to expedite the final determination of disputes." *Vanderzalm v. Sechrist Indus., Inc.*, 875 F. Supp. 2d 179, 183 (E.D.N.Y. 2012) (Spatt, J.) (internal quotation marks omitted).

Whether claims by multiple plaintiffs arise out of "the same transaction, occurrence, or series of transactions or occurrences" must be determined "on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., USA*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (McMahon, J.) (citing 7 C. Wright and A. Miller, *Federal Practice and Procedure* § 1653, at 270 (1972)). "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (Payson, M.J.) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974); *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989) (Goettel, J.)). "As the Second Circuit has observed in the Rule 13

5

context, to determine whether a counterclaim arises out of the same transaction as the original

claim, the court must assess the logical relationship between the claims and determine whether

the 'essential facts of the various claims are so logically connected that considerations of judicial

economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id.* (quoting *United*

*States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).  If a party has been misjoined, a court may

drop the misjoined party.  Fed. R. Civ. P. 21.

### A. Plaintiffs' Claims Are Based on Separate Mortgages and Therefore Do Not Arise Out of the Same Transaction or Occurrence Under Rule 20(a)

According to the allegations in the complaint, Plaintiffs engaged in separate loan

transactions with different lenders in different offices in different states over a nine-year period.

*See* Compl. ¶¶ 2–357.  It is well established that separate loan transactions by different lenders

do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those

separate transactions generally cannot be joined in a single action.  *See, e.g.*, Tr. of Civil Cause

for Mot. Hearing at 12:2–21, *Abeel v. Bank of America, N.A.*, No. 12-cv-4269, Dkt. No. 49

(E.D.N.Y Nov. 9, 2012) (Weinstein, J.) (granting motion to sever claims brought by hundreds of

mortgage borrowers because, *inter alia*, "Plaintiffs are unrelated to each other, the defendants are

unrelated, the facts differ in each case and the vast majority [of plaintiffs and defendants] are not

in New York"); *Adelphia Recovery Trust v. Bank of Am., N.A.*, 05 Civ. 9050, 2009 WL 636719,

at *5 (S.D.N.Y. Mar. 5, 2009) (McKenna, J.) (finding that claims against three banks had been

misjoined because the loans provided by these banks were issued by different banks at different

times to parties different from the other loans at issue in the case); *see also Michaels Bldg. Co. v.*

*Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) (affirming trial court's decision to

dismiss certain defendants because their loan transactions involved "different banks, different

contracts and different terms" from the loans issued by other defendants).  Indeed, even claims

6

by plaintiffs who engaged in separate loan transactions by the *same lender* cannot be joined in a

single action. *See, e.g., Banks v. GMAC Mortg. Corp.*, 04-CV-02477, Dkt. No. 19, at 15 (C.D.

Cal. Sept. 16, 2004) (Baird, J.) ("The 33 individual plaintiffs in this case secured 23 separate

loans from Ditech. The facts surrounding each loan transaction are separate and distinct. The

court finds that each loan represents a separate transaction or occurrence and the loans are not

sufficiently related to constitute a series of transactions or occurrences within the meaning of

Fed. R. Civ. P[.] 20(a).") (internal citations omitted); *Null v. GMAC Mortg. Corp.*, 6:03-cv-1858,

Dkt. No. 46, at 2–3 (M.D. Fla. Aug. 20, 2004) (Conway, J.) ("[T]his case involves 60 plaintiffs

and arises from 37 different loans made over a period of 11 months. The loans were secured by

parcels of real property located in counties ranging from North Florida to South Florida. In the

Court's view, each of these loans represents a separate transaction or occurrence, and the loans

are insufficiently related to constitute a 'series of transactions or occurrences' within the

meaning of Fed. R. Civ. P. 20(a)."). Here, several hundred Plaintiffs have asserted claims

against several dozen mortgage originators and servicers regarding different mortgages issued in

different states over a nine year period. *See* Compl. ¶¶ 2–357. This Court finds Plaintiffs'

separate mortgage transactions do not constitute a single transaction or occurrence under Rule 20

of the Federal Rules of Civil Procedure.

### B. Plantiff's Allegations of Conspiracy Are Insufficient to Permit Joinder

Plaintiffs appear to argue that their claims arise out of a common series of transactions

because "Defendants were involved in a common scheme and plan." Pls.' Opp. Br. at 4. While

allegations of joint action or conspiracy across otherwise unrelated mortgage transactions might,

in some cases, be sufficient to permit joinder under Rule 20, "unsupported and speculative

allegation[s] that the various Defendants conspired to defraud each individual Plaintiff does not

satisfy the requirement that Plaintiffs' claims arise out of the same transaction, occurrence, or series of occurrences, nor does it obviate the need for separate proof as to each individual claim." *Richards v. Deutsche Bank Nat'l Trust Co.*, 2012 U.S. Dist. LEXIS 115302, CV 12-4786, at *2 (C.D. Cal. Aug. 15, 2012); *see also* Tr. of Civil Cause for Mot. Hearing at 12:2–21, *Abeel*, No. 12-cv-4269, Dkt. No. 49, at 8:7–13, 9:8–22, 12:2–21 (granting motion to sever despite allegations that defendant financial institutions had conspired amongst themselves).

In this case, Plaintiffs allege, *inter alia*, Defendants induced Plaintiffs to enter into mortgages based, in part, upon appraisals Defendants knew were inflated and that were produced with the knowledge, acquiescence, or insistence of Defendants; Defendants coerced inflated appraisals from the appraisers; Defendants failed to comply with their own underwriting guidelines; Defendants participated in MERS without disclosing that MERS would be used to avoid local recordation statutes, thereby creating a cloud on the title of Plaintiffs' property; and Defendants transferred, bundled, packaged, and sold these mortgages to investors, while simultaneously betting against the viability of these mortgages. *Id.* at ¶¶ 440, 442, 443. As in *Richards*, these allegations are wholly unsupported and speculative. Plaintiffs have not provided any factual allegations supporting these contentions, such as evidence that Plaintiffs' individual mortgages were based on inflated appraisals or specific omissions by particular employees responsible for issuing Plaintiffs' mortgages. Although this Court must accept the factual allegations set forth in Plaintiffs' complaint as true, "threadbare recitals" and "conclusory statements" unsupported by specific facts are not entitled to such credence. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Consequently, this Court finds Plaintiffs have failed to "plead sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This insufficiency is especially true because Plaintiffs' conspiracy allegations are based on underlying acts of alleged fraud. Thus, in order to state a conspiracy claim that is plausible on its face and that would be sufficient to permit joinder based solely on allegations of conspiracy, Plaintiffs would have to meet the heightened pleading requirements for fraud-based claims under Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requirement applies to claims of fraud, intentional misrepresentation, negligent misrepresentation, constructive fraud, and unjust enrichment. *See, e.g., B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (Holwell, J.) (applying Rule 9(b) to claims of fraud and intentional misrepresentation); *Woori Bank v. Citigroup Inc.*, 12 Civ. 3868, 2013 WL 1235648, at *5 (S.D.N.Y. Mar. 27, 2013) (Swain, J.) ("District courts in this Circuit have determined that Rule 9(b) is applicable to negligent representations premised on fraud."); *Watson v. Riptide Worldwide, Inc.*, No. 11 Civ. 0874, 2013 WL 417372, at *4 (S.D.N.Y. Feb. 4, 2013) (Crotty, J.) ("Negligent misrepresentation 'is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard.'"); *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (Buchwald, J.) (noting "courts in the Second Circuit have applied Rule 9(b) to any cause of action that bears a close legal relationship to fraud or mistake," including constructive fraud); *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) (Spatt, J.) ("[U]njust enrichment must be pled with specificity when the underlying acts are allegedly fraudulent.").

"Conclusory allegations . . . will not survive Rule 9(b)'s heightened pleading standard, and therefore, will be subject to dismissal at the motion to dismiss stage." *Hughes v. Ester C Co.*, No. 12-CV-0041, 2013 WL 1080533, at *5 (E.D.N.Y. Mar. 15, 2013) (Bianco, J.).

Generally, to comply with Rule 9(b)'s specificity requirements, "the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

In this case, the second amended complaint does not specify a single fraudulent statement.  The second amended complaint does not identify a single speaker.  The second amended complaint does not state where or when a single fraudulent statement was made.  Rather, the second amended complaint alleges, in a general fashion, that Defendants "induced Plaintiffs to enter into mortgages based, in part, upon inflated appraisals" while the "fact that the appraisals were inflated was not known by the Plaintiffs and not disclosed to the Plaintiffs by the Defendants." Compl. ¶ 440.  Similarly, Plaintiffs allege Defendants "participated in MERS[] and never disclosed to Plaintiffs that MERS would be used to avoid local recordation statutes." *Id.* ¶ 442.  Plaintiffs further allege that Defendants "misrepresent[ed] intentions to arrange loan modifications for Plaintiffs, while in fact creating abusive roadblocks to deprive Plaintiffs of their legal rights." *Id.* ¶ 452.  None of these allegations indicates when or where such statements or omissions occurred, or which employees of which Defendants were responsible for such statements or omissions.  These allegations are therefore insufficient to meet the requirements of Rule 9(b), and therefore fail to state a claim for their fraud-based allegations of joint action and conspiracy.  Because Plaintiffs' sole argument for joinder is premised on their claims of joint action and conspiracy, joinder of the Plaintiffs in this case is inappropriate.

### C.  The Removal of This Action Does Not Prevent Defendants From Arguing Misjoinder

This action was removed to federal court by one of the Defendants, PNC Bank, National Association, on September 19, 2012.  Notice of Removal, Dkt. No. 1.  In its notice of removal,

PNC Bank argued that federal jurisdiction over this action was proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.

CAFA grants federal courts original subject matter jurisdiction over certain class actions and "mass actions." 28 U.S.C. §§ 1332(d)(2), (11). Subject to a handful of exceptions not applicable here, a "mass action" is any civil action "in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id.* § 1332(d)(11)(B). Like class actions, mass actions filed in state court may be brought in or removed to federal court if there is at least minimal diversity between plaintiffs and defendants and the amount-in-controversy exceeds $5,000,000. *Id.* §§ 1332(d)(2), (11)(A), 1453.

Plaintiffs argue Defendants waived their ability to contest the commonality of Plaintiffs' claims, and thus whether joinder is appropriate, by removing this action under CAFA. Pls. Opp. Br. at 4–7. According to Plaintiffs, although "Defendants never specifically stated in their Notice of Removal that there is a common question of law or fact which would satisfy the CAFA mass action jurisdictional requirement, commonality was their basis for removal" and Defendants stated that "all 383 named Plaintiffs propose to try their monetary relief claims jointly on the ground that they involve common questions of law and fact." *Id.* at 6 (internal quotation marks omitted). Yet in their motion to dismiss, Defendants argue that this action is not a proper mass action. According to Plaintiffs, Defendants contradictory positions in their notice of removal and motion to dismiss on whether Plaintiffs' claims involve common questions of law and fact are "procedurally indefensible." *Id.* Further, Plaintiffs argue Defendants' "remove then sever" strategy "smacks of gamesmanship and bad faith" and should be rejected by this

11

Court. *Id.* at 7 (quoting *Visendi v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 181300, No. 2:11-cv-2413, at *20 (E.D. Cal. Dec. 20, 2012) (England, J.)).

Defendants counter that they[1] never conceded in the Notice of Removal that Plaintiffs' claims actually involve "common questions of law or fact." Defs.' Joint Reply at 1. Instead, Defendants stated, using the language of CAFA: "Plaintiffs *propose* to try their monetary relief claims jointly on the ground that their claims involve common questions of law and fact." *Id.* Moreover, Defendants contend that their arguments for misjoinder include grounds other than the lack of a common question of law or fact, namely that Plaintiffs' claims do not arise out of the "same transaction, occurrence, or series of transactions and occurrences" and that fundamental fairness justifies dismissal. *Id.* at 2. Finally, Defendants argue that challenging a removed mass action for improper joinder is no different than removing a proposed class action under CAFA and then opposing class certification. *Id.* at 1.

Defendants are correct. The plain language of CAFA permits removal of a mass action in which the "monetary relief claims of 100 or more persons are *proposed* to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B) (emphasis added). The statute does not require that a removing defendant or the court determine that plaintiffs' claims can *actually* be tried together. Moreover, any such determination at the removal stage could be premature, since plaintiffs may request permission to amend a complaint after removal. *See* Fed. R. Civ. P. 15(a). Thus, in *Abeel*, after the defendants removed the case as a mass action under CAFA, this Court determined that the plaintiffs had been impermissibly joined. *Abeel*, No. 12-cv-4269, Dkt. Nos. 3 and 49. The Court therefore severed and dismissed the claims of all but the first named plaintiff. *Id.*, Dkt. No. 49.

---

[1] In fact, as Defendants note, only PNC Bank, National Association, filed the notice of removal. Because this Court does not base its decision on whether one or all of Defendants removed this action, for simplicity this Court will treat the assertions made in the removal notice as if they were made on behalf of all Defendants.

This interpretation is consistent with case law regarding federal jurisdiction over class actions removed from state court. In class action cases under CAFA, whether a federal court has jurisdiction over the proposed class action is a question separate from whether class certification is appropriate. *Compare United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 549 F.3d 1204, 1208–09 (9th Cir. 2008) (holding proposed class action was properly removed from state court), *with United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010) (affirming denial of class certification but holding that federal court retained jurisdiction over action). Thus, if an action was properly removed under CAFA, the subsequent denial of class certification does not divest the federal court of jurisdiction to continue with the action. *See, e.g., Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 396 (7th Cir. 2011); *United Steel*, 602 F.3d at 1092; *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n. 12 (11th Cir. 2009).

Under CAFA, a mass action is "deemed to be a class action" and removable under CAFA's class action provisions if it otherwise meets the statutory requirements. 28 U.S.C. § 1332. Thus, as in class actions, the determination of whether a mass action is properly removable to federal court is separate from the determination of whether the action may go forward as a group.

In this case, Plaintiffs' complaint before the state court included claims by more than three hundred individuals. Notice of Removal, Dkt. No. 1, Ex. 1 at ¶¶ 6–381. In the complaint, Plaintiffs alleged "Defendants, jointly and severally, their agents, servants, employees, or others with whom they acted in concert, intentionally and/or negligently participated in a common plan and scheme (hereafter 'THE ENTERPRISE'), concealing material facts from the Plaintiffs."

Notice of Removal, Dkt. No. 1, Ex. 1 at ¶ 438. Specifically, Plaintiffs alleged Defendants, *inter*

*alia*, "induced Plaintiffs to enter into mortgages based upon valuations which the Defendants

knew or should have known to be inaccurate," "never disclosed to Plaintiffs that MERS would

be used to avoid local recordation statutes and real estate trade custom," and "bet[] against the

viability of [Plaintiffs' and others'] mortgages." *Id.* Plaintiffs therefore sought "remedies for the

Defendants [sic] improper activities, jointly and severally." *Id.* at ¶ 5. All of Plaintiffs' causes

of action were brought against all Defendants, including a claim for concert of action and

member liability in a joint enterprise. *Id.* at ¶¶ 628–54. The allegations of Defendants' joint

action in a common plan or scheme clearly met CAFA's requirement that the "claims of 100 or

more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve

common questions of law or fact." *Id.* § 1332(d)(11)(B). The fact that Plaintiffs' vague and

conclusory allegations of conspiracy are ultimately insufficient to permit joinder does not change

the nature of those allegations.

**D. Conclusion**

Plaintiffs' claims are based on hundreds of mortgage loan transactions that were

conducted with several dozen mortgage originators and servicers over a nine-year period. *See*

Compl. ¶¶ 2–357. These separate mortgage transactions do not constitute a single transaction or

occurrence under Rule 20 of the Federal Rules of Civil Procedure. Further, Plaintiffs'

unsupported and speculative allegation that Defendants conspired with one another is insufficient

to establish a related series of transactions or occurrences so as to permit joinder. This Court

therefore finds that Plaintiffs' claims are misjoined under Rule 20, and grants Defendants'

motions to sever the Plaintiffs' claims. *See Abeel*, No. 12-cv-4269, Dkt. No. 50 (E.D.N.Y Nov.

27, 2012) (severing claims brought by hundreds of mortgage borrowers and dismissing the

claims of all but the first named Plaintiff). The Court therefore dismisses all but the first named Plaintiff, Leela Abraham.

## II.   The Claims of Leela Abraham are Dismissed

### A. Fraud, Intentional Misrepresentation, Negligent Misrepresentation, Constructive Fraud, and Unjust Enrichment

Ms. Abraham brings claims for fraud, deceit, and fraudulent concealment; intentional misrepresentation; negligent misrepresentation; constructive fraud; and unjust enrichment. As discussed *supra*, each of these claims is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Moreover, for the reasons described above, these claims are insufficient to meet Rule 9(b)'s particularity requirement. Ms. Abraham has not identified a single fraudulent statement made to her. Ms. Abraham has not identified a single speaker who made a fraudulent statement or material omission. Ms. Abraham has not indicated where or when any fraudulent statements or material omissions were made. For these reasons, Ms. Abraham has not met the pleading requirements of Rule 9(b), and this Court dismisses her claims for fraud, intentional misrepresentation, negligent misrepresentation, and unjust enrichment.

### B. Unlawful and Deceptive Trade Practices

Ms. Abraham's fourth cause of action is for unlawful and deceptive trade practices in violation of New York General Business Law ("GBL") § 349. Pursuant to GBL § 349, it is unlawful to engage in any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*." GBL § 349 (emphasis added).

In this case, Ms. Abraham has not alleged that the majority of Defendants engaged in any activities declared unlawful by GBL § 349 *in New York.* Although Ms. Abraham is a New York resident, Compl. ¶ 2, at most, this fact permits the inference that Ms. Abraham's mortgage was issued in New York. Other than activities by her mortgage originator, Ms. Abraham has not

established that any activity by any Defendant took place in New York. Consequently, Ms. Abraham's claims against all but her mortgage issuer fail as a matter of law. *See Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 265–66 (S.D.N.Y. 2001) (Schwartz, J.) (failure to plead activity in New York required dismissal of claims under GBL § 349).

With respect to her claim against the mortgage originator, Ms. Abraham has not pled causation. In an action under GBL § 349, each Plaintiff must individually plead that the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures. *See, e.g., Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 74–75 (S.D.N.Y. 2006) (Marrero, J.); *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) (Pauley, J.). "The causation element is essential: The plaintiff must show that the defendant's material deceptive act caused the injury." *Newman*, 238 F.R.D. at 74 (internal editing and quotation marks omitted). "[T]o show causation, each plaintiff will have to show that [Defendants'] disclosures . . . were inadequate, thus deceiving plaintiffs into" an agreement with Defendants. *Id.* at 74–75. Yet, in this case, the complaint contains only general allegations about disclosures to all Plaintiffs, and does not contain any allegations about the specific disclosures Ms. Abraham did or did not receive. Ms. Abraham thus has failed to plead that *she* was injured as a result of any Defendant's actions. This Court therefore dismisses Ms. Abraham's claim under GBL § 349.

### C. Breach of Contract

Under New York law, a plaintiff bringing a breach of contract claim must allege "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Schlessinger v. Valspar Corp.*, 817 F. Supp. 2d 100, 105 (E.D.N.Y. 2011) (Hurley, J.) (quoting *RCN Telecom Servs., Inc. v. 202 Centre Street Realty LLC*, 156 F. App'x 349, 350–51 (2d Cir. 2005)) (internal quotation marks

16

omitted).  To survive a motion to dismiss a contract claim, the "Plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011) (Sand, J.) (internal quotation marks omitted).

In this case, Ms. Abraham alleges at least two breach of contract claims.  First, Ms. Abraham alleges Defendants' failure "to disclose to Plaintiffs that they and/or MERS did and would systematically fail to comply with local recording statutes and local real estate custom regarding recordation of transfers of interests in Plaintiffs' mortgages, and fail[ure] to disclose the inflated appraisals upon which the mortgages were based, . . . breach[ed] their contract with the Plaintiffs." Compl. ¶ 531.  Second, Ms. Abraham alleges she was a third-party beneficiary of contracts between Defendants and the Troubled Asset Relief Program ("TARP") and that Defendants breached those contracts by failing to use TARP funds for her benefit.  *Id.* ¶¶ 533–34.  However, Ms. Abraham has not provided the terms of any agreement between her and any Defendant, nor has she provided the terms of any agreement between TARP and any Defendant. Having failed to adequately plead the terms of any contract or contracts, Ms. Abraham's breach of contract claims fail as a matter of law.  *See Valentini*, 837 F. Supp. 2d at 327.

### D. Constructive Trust / Third-Party Beneficiaries

Ms. Abraham claims she is entitled to a constructive trust for two reasons.  First, Ms. Abraham alleges "Defendants breached their basic contract obligations to [Plaintiffs] when they failed to disclose the inflated appraisals upon which their mortgages were based. Pls.' Opp. Br. at 20.  Second, Ms. Abraham alleges "Defendants breached their obligation to Plaintiffs as Third Party beneficiaries of the contracts between the United States Government and Defendants to provide Plaintiffs with loan modifications." *Id.*

17

It is well established that the existence of a contract precludes a claim for a constructive trust. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004); *see also Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 514 (S.D.N.Y. 2012) (Swain, J.). Because Ms. Abraham alleges the existence of contracts—indeed, one of her other claims is for breach of these contracts—she is precluded from asserting a claim for a constructive trust. The Court therefore dismisses this cause of action.

### E. Negligence

"To prevail on a claim of negligence under New York law, a plaintiff must show that there was (1) a duty owed to the plaintiff by the defendant, (2) breach of that duty by the defendant, and (3) injury sustained by the plaintiff substantially as a result of the breach." *Qin Chen v. United States*, 494 F. App'x 108, 109 (2d Cir. 2012) (Koeltl, J.). Ms. Abraham alleges Defendants were negligent because they breached "express and implied duties to [her], arising from [her] mortgage agreement[]." Compl. ¶ 545. However, "[w]here the only duty owed to the plaintiff arises from a valid contract, a negligence claim does not lie." *Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 512 (S.D.N.Y. 2012); *see also Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (N.Y. 1987) ("It is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."). Ms. Abraham's contract-based negligence theory fails as a matter of law because it explicitly arises from her mortgage agreement. To the extent Ms. Abraham alleges Defendants breached some duty other than those contained in any contract she had with them, such a claim would also fail. It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties. *See, e.g., Grimes v. Fremont Gen. Corp.*, No. 08-CV-1024, 2013 WL 1187474, at *15

(S.D.N.Y. Mar. 22, 2013) (Karas, J.) (citing *Genna v. Sallie Mae, Inc.*, No. 11–CV–7371, 2012 WL 1339482, at *4 (S.D.N.Y. Apr. 17, 2012) (Sand, J.)); *cf. Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 217 (2d Cir. 2002) ("[A] lender has no duty of care toward a loan applicant."). Consequently, this Court dismisses Ms. Abraham's claim for negligence.

### F. Slander of Title

To state a claim for slander of title under New York law, a plaintiff must allege "(1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." *Int'l Grp., LLC v. Padilla*, No. 11-CV-6622, 2012 WL 5398674, at *7 (W.D.N.Y. Nov. 2, 2012) (Siragusa, J.) (quoting *Fink v. Shawangunk Convercancy, Inc.*, 15 A.D.3d 754, 756, 790 N.Y.S.2d 249, 251 (N.Y. App. Div. 3d Dep't 2005)). In this case, the complaint states "Defendants . . . filed papers with various courts claiming to be the holder of a mortgage and/or Note for the Plaintiffs [sic] property (*or some of them*) when Defendants (or some of them) were not in possession of either the mortgage or the Note, or both, and their filing was therefore improper and unlawful." Compl. ¶ 551 (emphasis added). The complaint does not allege that any Defendant filed any papers in court with respect to Ms. Abraham's property. Because there is no allegation of a false communication with respect to Ms. Abraham's property, this claim is dismissed.

### G. Ejectment for Wrongful Possession of Claim on Land

As with the slander of title claim, the complaint in this action generally alleges that "[f]or the Plaintiffs who have been dispossessed of their property . . . Plaintiffs have been damaged by the Defendants [sic] wrongful, invalid, improper, and/or illegal claims made which claims served to dispossess or eject said Plaintiffs." *Id.* at ¶¶ 555–56. The complaint does not include an allegation that Ms. Abraham was dispossessed of her property. Accordingly, this claim is dismissed.

**H. Concert of Action and Member Liability in a Joint Enterprise**

Under New York law, "[t]he elements of concerted-action liability are (1) an express or tacit agreement to participate in a common plan or design to commit a tortious act, (2) tortious conduct by each defendant, and (3) the commission by one of the defendants, in pursuance of the agreement, of an act that constitutes a tort." *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, No. 05-CV-6176, 2006 WL 3370696, at *8 (W.D.N.Y. Oct. 30, 2006) (Siragusa, J.) (quoting *Pittman by Pittman v. Grayson*, 149 F.3d 111, 122–23 (2d Cir. 1998)). However, "[t]here is no independent tort of conspiracy in New York." *McCall v. Chesapeake Energy Corp.*, No. 11-4164-cv, 2013 WL 335981, at *2 (2d Cir. Jan. 30, 2013). If all of the underlying torts of which defendants are accused are dismissed, a claim for concerted-action liability "must also fail as a matter of law." *Id.* In this case, the Court has dismissed all of Ms. Abraham's substantive claims. Consequently, her claim for concert of action is likewise dismissed.

**III.    Plaintiffs' Motion to Amend**

On February 22, 2013, Plaintiffs requested a pre-motion conference, pursuant to this Court's individual rules, to file a motion to further amend their complaint. Letter Mot. to Amend Compl., Dkt. No. 280. A proposed third amended complaint ("TAC") was attached to the request. *Id.*, Ex. 1. On February 28, 2013, this Court denied Plaintiffs' request for the pre-motion conference, consequently denying Plaintiffs' motion to amend. This opinion supplements that order.

Leave to file an amended complaint should be "freely" given "when justice so requires," Fed. R. Civ. P. 15(a), and "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility," *Milanese v. Ruse-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). While granting leave to amend is generally favored, "it is within the sound discretion of the court whether to

grant leave to amend." *John Hancock Mut. Life. Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).

A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, a court must deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (Spatt, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (denying motion to add claims for malicious prosecution as futile); *see also Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 202–03 (E.D.N.Y. 2012) (Dearie, J.) (denying motion to add new claims and a new defendant as futile); *Scottrade, Inc. v. BroCo Investments, Inc.*, 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011) (Holwell, J.) (denying motion to add claims for securities fraud as futile).

Without addressing every change in Plaintiffs' 193-page proposed TAC, this Court finds that the proposed amendments would be futile. For example, the TAC proposes to add claims under various state consumer protection laws for each state in which Plaintiffs reside or in which their loans originated or were serviced. TAC ¶¶ 471–513. Plaintiffs also propose to add a cause of action for violation of Section 131(g) of the Truth in Lending Act, 15 U.S.C. § 1641(g). Letter Mot. to Amend Compl. at 2; TAC ¶¶ 514–16. However, since this Court has already concluded that Plaintiffs were misjoined, the addition of new claims for these Plaintiffs would be futile. With regard to Ms. Abraham, there is no allegation that any state's consumer laws, other than that of New York, which was addressed *supra*, should be applied to her. Nor is there any allegation that Ms. Abraham's loan was transferred after May 19, 2009, the effective date of the

21

Truth in Lending Act. *See* TAC ¶¶ 465–70. Consequently, the addition of these claims would also be futile as to Ms. Abraham.

Plaintiffs contend that the proposed TAC resolves Defendants' concerns about joinder by providing greater specificity by "detail[ing] Defendants' wrongful conduct through their use of the MERS System and how the Plaintiffs were damaged or otherwise injured by Defendants' participation and use of the MERS System." Letter Mot. to Amend Compl. at 2. For example, the proposed TAC alleges the "MERS System effectively eliminated the homeowners' and the public's ability to trac[k] the purchase and sale of properties through the traditional public records system." TAC ¶ 418. By "concealing the identity of the true owner of a residential mortgage," the MERS System "makes it over[]ly burdensome, if not impossible, for any homeowner to learn the identity of the entity or individual having a security interest in his or her property." *Id.* ¶ 422. Plaintiffs assert that this concealment has injured them in a number of ways. *Id.* ¶¶ 425–30. Plaintiffs also include a number of additional paragraphs regarding MERS and Defendants' use of the MERS System. *See, e.g., id.* ¶¶ 446–48. For example, Plaintiffs allege "Defendants, through their members in the MERS Enterprise and use of the MERS System have committed unfair, misleading, or deceptive practices in the conduct of trade or commerce by," *inter alia,* "[i]nstituting foreclosure actions," "[a]ssigning mortgages after the commencement of foreclosure proceedings," and "[i]nhibiting the ability of Plaintiffs and others to negotiate a loan modification." *Id.* ¶ 448.

These proposed amendments do not alter this Court's joinder analysis. None of these amendments can change the fact that Plaintiffs' claims are based on hundreds of mortgage loan transactions that were conducted with several dozen mortgage originators and servicers over a nine-year period and therefore do not constitute a single transaction or occurrence under Rule 20

of the Federal Rules of Civil Procedure.  Further, Plaintiffs new allegations regarding MERS and Defendants' use of its system, like their earlier allegations, are not supported by any factual allegations, such as specific foreclosure actions instituted against particular plaintiffs or specific mortgages that were assigned after the commencement of such foreclosure proceedings.  Even assuming that some or all of Defendants engaged in these practices, these allegations do not support Plaintiffs' more general contention that Defendants conspired with one another in the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). Consequently, the proposed amendments are insufficient to establish that joinder of the Plaintiffs in this action was proper, and the proposed amendments are futile.

Finally, the proposed TAC includes some greater specificity regarding Ms. Abraham's loan. However, the proposed TAC does not amend the provisions that resulted in the dismissal of Ms. Abraham's claims for lack of specificity.  For example, the proposed TAC does not include the provisions of any contract between Ms. Abraham and any Defendant.  Nor does the TAC include any allegation that a false communication was made with respect to Ms. Abraham's property or that Ms. Abraham was dispossessed of her property.  Consequently, the proposed amendments as to Ms. Abraham would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and are therefore futile.

For all of these reasons, Plaintiffs' request for permission to amend their complaint is denied.

## IV.    Conclusion

For the reasons discussed above, this Court grants Defendants' motions to sever and dismisses all of the Plaintiffs except the first named Plaintiff, Ms. Abraham.  With respect to Ms. Abraham, this Court finds that she has failed to state a claim and therefore dismisses all of her

23

claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because no claims in this case survive the motion to dismiss, the Clerk is directed to close this case.

**<u>SO ORDERED</u>**

Dated: Brooklyn, New York
     May 23, 2013

                                   s/WFK

                            HON. WILLIAM F. KUNTZ, II
                            United States District Judge